**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WENDY DOLIN, Individually and as Independent Executor of the ESTATE OF STEWART DOLIN, deceased, <br><br> Plaintiff, <br><br> v. <br><br> SMITHKINE BEECHAM CORPORATION D/B/A GLAXOSMITHKINE, a Pennsylvania Corporation; MYLAN INC., a Pennsylvania Corporation; and H.D. SMITH WHOLESALE DRUG CO., a Delaware Corporation with its principal place of business in Illinois, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No.  12-CV-06403 <br><br> Judge James B. Zagel |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO REMAND**

This matter does not belong in federal court.  When the Defendants removed the case, the Court lacked proper subject-matter jurisdiction.  The Defendants' attempt to bootstrap jurisdiction by having the Court ignore, and ultimately dismiss, Defendant H.D. Smith Wholesale Drug Co. ("H.D. Smith"), the non-diverse defendant, using a theory of fraudulent joinder is simply not supported by the law or the allegations in the Complaint.  The Defendants cannot meet their "heavy burden" of proving "no reasonable possibility" of success against Defendant H.D. Smith.  Defendant H.D. Smith was properly included as a defendant in this action.  Absent complete diversity between the parties, the Court cannot and should not retain jurisdiction.  This case, which deals with complicated and novel issues of state law, belongs in state court.  The Plaintiff respectfully moves for an order remanding the case to the court in which it was originally filed, the Circuit Court of Cook County, Illinois.

## **BACKGROUND**

On July 15, 2010, Stewart Dolin, a prominent attorney and partner at Reed Smith, leaped in front of a moving Chicago Transit Authority Blue Line platform train to his death. Mr. Dolin is survived by his wife, Plaintiff Wendy Dolin, and two adult children. Six days before Mr. Dolin's passing, he started taking paroxetine, a generic version of Paxil. While Paxil/paroxetine, is designed to treat depression, it can also cause an adverse reaction called akathisia; a neurobiological phenomenon marked by profound inner restlessness and agitation that has long been associated with suicidal behavior. GSK's own clinical studies show the drug increases the risk of suicidal behavior in adults of all ages more than six times over placebo. In the few days before his death, Mr. Dolin experienced worsening anxiety and depression, difficulty sleeping, extreme thoughts, and akathisia which ultimately led to his suicide.

Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") is incorporated in Pennsylvania and is based in Philadelphia, Pennsylvania. GSK is the creator and manufacturer of Paxil. Defendant Mylan Inc. ("Mylan") is also incorporated in Pennsylvania and is based in Canonburg, Pennsylvania. Mylan manufactured the generic paroxetine Mr. Dolin ingested prior to his death. Defendant H.D. Smith is incorporated in Delaware but has its principal place of business in Springfield, Illinois. H.D. Smith was the distributor of the paroxetine Mr. Dolin ingested prior to his death.

On July 9, 2012, Plaintiff filed a Complaint in the Circuit Court of Cook County, Illinois. The Complaint alleges thirty-eight counts (eighteen of which are survivor counts) against Defendants GSK, Mylan, and H.D. Smith. The Complaint alleges, among other things, that Defendants were aware of the dangers associated with Paxil/paroxetine and deliberately chose to conceal those dangers from Mr. Dolin and his doctor.

On August 13, 2012, Defendant GSK filed a "Notice of Removal" (Doc. 1) removing the case to this Court. A week later, on August 20, 2012, Defendant H.D. Smith filed a Motion to Dismiss (Doc. 16). The next day, Defendant Mylan filed a separate Motion to Dismiss (Doc. 22). On August 24, 2012, Defendant Mylan filed a "Supplemental Notice of Removal" (Doc. 29).

## STANDARD OF REVIEW

The removal of a case to federal court is proper only when the case falls within the Court's original jurisdiction. 28 U.S.C. § 1441(c). Federal Courts are courts of limited jurisdiction, and "the district court must jealously guard its jurisdiction against abuse by parties who may not comprehend the constitutional importance of federal jurisdiction." *Stemmons v. Toyota Tsusho Am., Inc.*, 802 F. Supp. 195, 197 (N.D. Ill. 1992); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (Courts possess "only that power authorized by Constitution and statute[.]"). Thus, when a defendant removes a case, the Court must "remain vigilant to ensure the presence of jurisdiction even though the parties may disregard the subject (or, worse, try to sneak one by the judge)." *In re Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992).

The parties seeking removal, in this case Defendants GSK and Mylan, bear the burden of demonstrating original jurisdiction. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763-64 (7th Cir. 2009). Failure to adequately establish original jurisdiction results in a remand for lack of subject-matter jurisdiction. *Hurley v. Motor Coach Indus.*, 222 F.3d 377, 378 (7th Cir. 2000). Due to the limited nature of federal jurisdiction and the desire to avoid excessive interpretation of state law, removal statutes are strictly construed against removal and in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). Factual disputes and unresolved

3

issues of substantive law are evaluated in the plaintiff's favor, *i.e.*, in favor of having the matter remanded to state court. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. Ind. 1993); *see, e.g.*, *CC Indus., Inc. v. Ing/Reliastar Life Ins. Co.*, 266 F. Supp. 2d 813, 817 (N.D. Ill. 2003).

## ARGUMENT

### I.    The Court Lacks Subject-Matter Jurisdiction Because There is a Lack of Diversity Among the Parties and Fraudulent Joinder is Not Applicable

On its face, there is no subject-matter jurisdiction in this case. Defendants GSK and Mylan have based removal on diversity jurisdiction. Diversity jurisdiction, however, only exists when there is complete diversity of citizenship. 28 U.S.C. § 1332(a)(1); *Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1314-15 (7th Cir. 1994)). Here, the parties do not dispute that Defendant H.D. Smith is a corporation with its principal place of business in Illinois, the state in which the Plaintiff is a citizen. This case, therefore, cannot remain in federal court with H.D. Smith as a defendant.

Recognizing the lack of diversity in this case, Defendants GSK and Mylan have put forward a theory of fraudulent joinder. Under the doctrine, the Court may ignore, and ultimately dismiss, the diversity-destroying defendant for the purposes of subject-matter jurisdiction when that defendant was named for the sole purpose of avoiding federal jurisdiction.[1] *Schur*, 577 F.3d at 763; *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). The burden rests on the removing party to prove fraudulent joinder. *Schur*, 577 F.3d at 763. It is, according to the Seventh Circuit, a "heavy burden," *Id.* at 764, and according to this Court, a "difficult" one, *Xiaofa Shi v. Am. Honda Motor Co.*, 11-cv-2682, 2011 U.S. Dist. LEXIS 128928, at *4 (N.D. Ill. Nov. 8, 2011). The Court starts with a strong presumption that a party was properly named and

---

[1]    Although fraudulent joinder emerged to prevent the naming of otherwise irrelevant parties for the purpose of destroying diversity, the term "fraudulent joinder" is a term of art. *Poulos & A.G.P. v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).

the burden rests on the removing party to prove there is no reasonable way the plaintiff could possibly prevail against that defendant. *Schur*, 577 F.3d at 763. All factual issues and questions of substantive law are evaluated in the Plaintiff's favor. *Poulos*, 959 F.2d at 73.

The standard for fraudulent joinder is more rigorous than the standard for a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006); *see Schur*, 577 F.3d at 764 (discussing how other courts use a less rigorous standard in fraudulent joinder); *see also Mayes*, 198 F.3d at 464; *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) ("This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss."); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (Rule 12(b)(6) inquiry "is more searching than that permissible when a party makes a claim of fraudulent joinder"). In a 12(b) motion, the Court evaluates factual assertions in the complaint to determine whether there is a "plausible" cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). In a fraudulent joinder analysis, however, plausibility is not the issue—the Court evaluates a cause of action to determine whether there is *any reasonable possibility* that the claims will survive.[2] *Schur*, 577 F.3d at 763-64; *Poulos*, 959 F.2d at 73.

### A. Fraudulent Joinder is Not Proper Because There is a Reasonable Possibility Defendant H.D. Smith is Liable for at Least One Count Alleged in the Complaint

Plaintiff has alleged four Counts against Defendant H.D. Smith: (1) Count XVI, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act; (2) Counts XVII and

---

[2] In its Notice of Removal (Doc. 1), GSK states that the Complaint fails to state a claim against Defendant H.D. Smith pursuant to Rule 12(b)(6). Similarly, Defendant Mylan makes an identical argument in its Supplemental Notice of Removal and attempts to incorporate its pending Rule 12(b)(6) Motion to Dismiss (Doc. 22) into the removal filing. Since the standard applicable to a Rule 12(b)(6) Motion to Dismiss is different than the standard applicable to a Motion to Remand, this motion does not directly respond to Defendants GSK's and Mylan's 12(b)(6) arguments. They are not applicable to the question of remand.

XVIII, strict Product Liability for design defect and failure to warn; and (3) Count XIX, negligence. For each Count, there is a reasonable possibility the claim will survive. However, if even a single Count alleged against Defendant H.D. Smith has a reasonable possibility of surviving, fraudulent joinder does not exist and the matter must be remanded for lack of complete diversity.

>    **1.    There is a Reasonable Possibility Defendant H.D. Smith is Liable for Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**

Count XVI of the Complaint alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 Ill. Comp. Stat. 505/1. Defendants GSK and Mylan argue that Count XVI fails to plead a Consumer Fraud Act violation against Defendant H.D. Smith with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b).

As a threshold matter, this argument is premature and flawed. Discussing whether a Complaint meets the Rule 9(b) particularity requirements presupposes jurisdiction in the first place. *See United States v. Tittjung*, 235 F.3d 330, 339 (7th Cir. 2000) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)). If the complaint fails to plead with sufficient particularity a claim under the Consumer Fraud Act, it is an issue best decided by the state court. *See, e.g.*, *Waterloo Coal Co. v. Komatsu Mining Sys.*, 2003 U.S. Dist. LEXIS 411 (S.D. Ohio Jan. 6, 2003) (leaving issue of particularity to the state court). Moreover, if the Consumer Fraud Act claim turns out to be insufficient, the claim would be dismissed without prejudice and the Plaintiff would be given an opportunity to file an amended complaint. The involuntary dismissal of a non-diverse defendant generally

precludes removal because there remains a reasonable possibility of the defendant returning to the case at a later date and divesting the federal court of jurisdiction. *Poulos*, 959 F.2d at 72. Thus, even if Count XVI is insufficiently stated pursuant to Rule 9(b), that reason, by itself, would be an insufficient ground for fraudulent joinder.

More importantly, the issue in a fraudulent joinder analysis is not whether the complaint has sufficiently stated a Consumer Fraud Act violation under federal pleading standards, but whether Defendants GSK and Mylan can prove there is no reasonable possibility of prevailing on the claim. *See, e.g.*, *Candy v. 474 Club LLC*, CV-06-400-S-EJL , 2007 U.S. Dist. LEXIS 7524, at *8-9 (D. Idaho Jan. 31, 2007). Count XVI, in conjunction with the many other allegations in the Complaint, states that Defendant H.D. Smith worked with Defendants GSK and Mylan to market, sell, and distribute a drug it knew was not marketable. (Complaint at ¶¶ 28, 243-46.) The sixty-page Complaint gives specific details of the false statements made by Defendant GSK in marketing Paxil and alleges that Defendant H.D. Smith knew these statements were false when it acted as Defendant GSK's agent in distributing these unmarketable drugs in Illinois. (Complaint at ¶¶ 13, 22, 243-46.) Defendant H.D. Smith participated in a comprehensive scheme to deceive consumers. In the face of these allegations, Defendants GSK and Mylan cannot prove there is *no reasonable possibility* of prevailing on Count XVI. Absent some proof to the contrary, this fact alone defeats fraudulent joinder.

## 2. Counts XVII and XVIII: There is a Reasonable Possibility Defendant H.D. Smith is Liable under a Theory of Strict Product Liability

Counts XVII and XVIII of the Complaint state claims for strict products-liability (defect and failure to warn) against Defendant H.D. Smith. Illinois law provides for a "seller's exception" in strict Product Liability actions. 735 Ill. Comp. Stat. 5/2-621 ("Section 2-621"). Section 2-621 allows for the dismissal of any non-manufacturer defendant who has not contributed to the

alleged defect in the product.[3]  Defendants GSK and Mylan argue that Defendant H.D. Smith qualifies as a non-manufacturer defendant under Section 2–621 and is, therefore, immune from liability.

Section 2-621(c), however, contains several exceptions to the sellers' immunity. *See* 735 Ill. Comp. Stat. 5/2-621(c).  Section 2-621(c)(2), in particular, limits sellers' immunity when the non-manufacturing defendant "had actual knowledge of the defect in the product which caused the injury, death, or damage[.]"  *See Brobbey v. Enter. Leasing Co.*, 935 N.E.2d 1084, 1092 (Ill. App. Ct. 2010).  Here, the Complaint alleges that Defendant H.D. Smith had knowledge of the dangers associated with Paxil/paroxetine, *i.e.*, that the drug substantially increases the risk of suicidal behavior.  When a non-manufacturing defendant knows of the potential danger or risks associated with the product, sellers' immunity under Section 2-621 does not apply. *Id.* (quoting *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 576 (Ill. App. Ct. 2008).  Despite Defendant GSK's and Mylan's assertions to the contrary, there is a reasonable possibility that Defendant H.D. Smith would be subject to strict product-liability based on the allegations in the complaint.

Moreover, even if Defendant H.D. Smith was entitled to sellers' immunity pursuant to Section 2-621(a), as this Court noted in *Xiaofa*, it is currently unsettled law whether removal is ever appropriate when a non-diverse defendant has been dismissed under Section 2-621. *Compare Scheinman v. BMW of N. Am., LLC*, 10-CV-4848, 2010 U.S. Dist. LEXIS 106640, at *9-10 (N.D. Ill. Sept. 30, 2010) *with Whelchel v. Briggs & Stratton Corp.,* 850 F.Supp.2d 926,

---

[3] In 1995, the Illinois legislature enacted the Civil Justice Reform Amendments of 1995, 1995 Ill. Laws 7 (1995), which amended Section 2-621 to apply to any products liability action, not just strict liability cases.  In 1997, the Illinois Supreme Court held that the Civil Justice Reform Amendments of 1995 were unconstitutional.  *Best v. Taylor Machine Works*, 689 N.E.2d 1057 (Ill. 1997).  Thus, the only operative statute is the pre-1995 version, which limits seller immunity to strict product liability actions.  *See Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 572 n. 2 (Ill.App.2008).

933-34 (N.D. Ill. 2012).   Section 2-621(b) provides for several circumstances wherein a non-manufacturing defendant can be reinstated after dismissal.  *See* 735 Ill. Comp. Stat. 5/2-621(b).  When a party is capable of being returned to the case, federal courts have generally refrained from finding jurisdiction in removed cases.  *See Poulos*, 959 F.2d at 72.  In *Poulos*, the Seventh Circuit explained that "[r]emoval following an involuntary dismissal may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court.  We are anxious to avoid this sort of yo-yo effect."  *Id.* (citations omitted).  Thus, it is unclear whether a dismissal of Defendant H.D. Smith pursuant to Section 2-621, as Defendant GSK and Mylan argue, would permit removal.  The Court, however, need not resolve an unsettled legal issue at this time.  Because there is a real question of law and fact, ones where reasonable minds can and have disagreed, the Court should strictly construe the removal statute and resolve any "doubts concerning removal . . . in favor of remand."  *Doe*, 985 F.2d at 911.

There is a reasonable possibility that Defendant H.D. Smith could be liable under a theory of strict product liability as alleged in Counts XVII and XVIII.  Because there is a reasonably possible cause of action against H.D. Smith, fraudulent joinder is unavailable.

### 3.     Count XIX:  There is a Reasonable Possibility Defendant H.D. Smith is Liable for Negligence

Count XIX states a claim for negligence against Defendant H.D. Smith.  Defendants GSK and Mylan argue that Defendant H.D.  Smith cannot be liable for negligence because of the learned intermediary rule.[4]   The learned intermediary rule "provides that manufacturers of

---

[4] Defendants GSK and Mylan also seem to argue that any negligence claim against H.D. Smith is duplicative of the strict product liability claims.  This argument, however, fundamentally misapprehends the distinction between a strict product liability claim and negligence.  "Unlike negligence, the elements of a strict product liability action generally do not include knowledge or culpable fault."  *Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 203 (Ill. 1980).

prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients." *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392 (Ill. 1987). Defendants GSK and Mylan argue that, under the learned intermediary rule, Defendant H.D. Smith (a distributor) did not owe a duty to Mr. Dolin to warn of potential dangers associated with paroxetine and, therefore, cannot be subject to a negligence claim. The doctrine, however, clearly states that it "doesn't permit distributors to conceal a drug's adverse side effects from physicians, pharmacies, and consumers." *Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011). When a distributor knows of a potential defect or danger in a drug, it has an obligation to warn the consumer directly or through physicians. *Id.* at 1000-01. Here, Plaintiff alleges that Defendant H.D. Smith knew or should have known of the risks posed by paroxetine and that the risks were deliberately concealed from consumers and physicians. (Complaint at ¶ 264(i).) Accordingly, the learned intermediary rule does not bar a negligence claim against Defendant H.D. Smith.

There is a reasonable possibility that Defendant H.D. Smith is liable for negligence. As there is a reasonably possible cause of action against H.D. Smith, fraudulent joinder is not applicable.

**B.** **Federal Preemption Goes to the Merits of the Case and Should Not be Considered before Jurisdiction is Established**

In *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567 (2011), the United States Supreme Court held that state-law failure to warn cases against generic drug manufacturers are preempted by federal law. The Court held that, because federal regulations require the labels of generic drugs to match corresponding brand-name drugs, any state law that requires additional labeling would conflict with federal regulations. *Mensing*, 131 S. Ct. at 2577-78. Defendants GSK and Mylan argue

10

that Defendant H.D. Smith has been fraudulently joined because, under their reading of *Mensing*, any claims against Defendant H.D. Smith are preempted by federal law.

In a fraudulent joinder inquiry, the Court must focus on the narrow issue of jurisdiction and avoid addressing "the merits of the action as an entirety." *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 153 (1914). A fraudulent joinder inquiry focuses on "whether the plaintiff truly [has] a cause of action" and not on "whether those defendants could propound defenses to an otherwise valid cause of action." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.1998). Under *Mensing*, a defendant seeking preemption must establish that it would be impossible for it comply with the duty imposed by state law and federal regulations. *Mensing*, 131 S. Ct. at 2577-78. Preemption under *Mensing* is, therefore, an affirmative defense by a party to an otherwise valid cause of action. *See Wyeth v. Levine*, 555 U.S. 555, 573 (U.S. 2009) ("[P]re-emption is a demanding defense."). It assumes that a valid cause of action exists against the defendant but that, because of federal preemption, the defendant is not subject to state law liability. Thus, to state a *Mensing* preemption defense, a defendant will need to address the merits of the case. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) ("The preemption defense . . . goes to the merits of the plaintiff's case."); *Hughes v. Mylan Inc.*, 2011 U.S. Dist. LEXIS 123544, at *25-26 (E.D. Pa. Oct. 25, 2011) (holding that *Mensing* preemption issues go to the merits of a case).

A determination of whether claims against H.D. Smith are preempted (which they are not) is not appropriate in a fraudulent joinder inquiry. The sole issue here is whether there is a reasonable possibility of stating a claim against Defendant H.D. Smith, the only non-diverse defendant. Delving into whether *Mensing* preemption exists would impermissibly turn a jurisdictional question into a decision on the merits of the case. *See In re Darvocet, Darvon &*

11

*Propoxyphene Prods. Liab Litig.*, 11-md-2226-DCR, 2012 U.S. Dist. LEXIS 101955, at *14-17 (E.D. Ky. July 17, 2012) (discussing how *Mensing* preemption should not be addressed in a fraudulent joinder analysis).

Moreover, the common defense exception to fraudulent joinder expressly prohibits a finding of fraudulent joinder in this case. *See Walton*, 643 F.3d at 1001. The common defense exception states:

> [W]here colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court.

*Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 113 (3rd Cir. 1990); *Walton*, 643 F.3d at 1001 ("[A] plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the non[-]diverse defendant is no weaker than his claim against the diverse defendants."). Here, Defendant Mylan, a diverse defendant, has put forward the identical *Mensing* preemption defense as Defendant H.D. Smith. By exercising a common defense with Defendant H.D. Smith, Defendant Mylan proves that Defendant H.D. Smith was not fraudulently joined. *See Walton*, 643 F.3d at 1001. It indicates that Defendant H.D. Smith was not named as a defendant solely to avoid diversity jurisdiction.

## II. The Court Should Consider the Prudential Considerations of Comity and State Sovereignty in Deciding Whether it Will Exercise Jurisdiction

Comity is central to the proper functioning of the United States' system of federalism. Federal Courts are often asked to interpret state law as it applies to a given case or controversy. Federal Courts give deference to state court interpretations of state law, much in the same way state courts give deference to federal interpretations of federal law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). When a federal court is presented with a novel issue of state law, it must decide

whether it has the authority to rule on the issue. For example, a court may decline to exercise supplemental jurisdiction over a case when it involves novel issues of state law. 28 U.S.C. § 1367(c)(1); *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir. 1985); *Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, 819 F. Supp. 2d 727, 738-39 (N.D. Ill. 2011). However, when the court is forced to resolve a novel issue of state law, the federal court is required to predict how the state's highest court would rule. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).

Sometimes, however, a matter of state law is so important and "intimately involved with sovereign prerogative" that federal courts can refrain from hearing the case altogether. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959). Courts can stay proceed-ings, dismiss cases, or even remand matters when it becomes clear that federal decision-making on a case treads on the sovereign right of a state to determine its regulatory scheme. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-23 (1996). While Plaintiff does not seek to invoke an abstention doctrine here, the inherent principles of comity and federalism warrant consideration.

This case belongs in state court. Several important and novel issues of state-law are likely to arise throughout the course of litigation. Most notably, the Court will need to determine whether a brand-name manufacturer can be vicariously liable for defects contained in generic products. This issue has recently been addressed by several courts in different jurisdictions. *Compare Conte v. Wyeth, Inc.*, 85 Cal. Rptr. 3d 299, 314-315 (Cal. App. 2008) (holding that brand-name manufacturers owe a duty of care to consumers of generic versions of the drug) *with Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338, 1344-1345 (M.D. Fla. 2010) (rejecting *Conte*). The impact of this question is far-reaching. It directly affects not only the ability of Illinois con-

sumers to seek redress for wrongs arising out of the use of generic products, but consumer access to brand-name drugs in general. Resolution of such an important issue of state law should be done in state court. This is particularly true in light of the inability of federal courts in Illinois to certify legal questions to the Illinois Supreme Court. *See GDI, LLC v. Gallagher Sec. (U.S.A.), Inc.*, No. 10-cv-4946, 2011 U.S. Dist. LEXIS 47851, at *4-5 (N.D. Ill. May 4, 2011). The Plaintiff respectfully asks this Court to consider these comity considerations in determining whether it will exercise jurisdiction over the case.

**III.    The Briefing Schedule on Defendants' Motions to Dismiss Should be Deferred**

Plaintiff respectfully requests that the briefing schedule set for Defendant H.D. Smith's Motion to Dismiss (Doc. 16) and Defendant Mylan's Motion to Dismiss (Doc. 22) be continued until resolution of this Motion to Remand.

## CONCLUSION

For all of the reasons stated in this Memorandum of Law, the Plaintiff respectfully requests an order remanding this case to the Circuit Court of Cook County, Illinois.

Dated:  September 12, 2012         By:  /s/ Bijan Esfandiari
Bijan Esfandiari, Esq. (*pro hac vice*)
Michael L. Baum, Esq. (*pro hac vice*)
Frances M. Phares, Esq. (*pro hac vice*)
R. Brent Wisner, Esq. (*pro hac application to be submitted*)
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
(310) 207-3233
(310) 207-4204 (fax)

and

Joshua L. Weisberg, Esq.
Lindsey A. Epstein, Esq.

14

RAPOPORT LAW OFFICES, P.C.
20 North Clark Street, Suite 3500
Chicago, IL 60602
(312) 327-9880
(312) 327-9881 (fax)

*Attorneys for Plaintiff, Wendy Dolin*