IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WENDY B. DOLIN, Individually and as Independent Executor of the ESTATE OF STEWART DOLIN, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>SMITHKLINEBEECHAM CORPORATION D/B/A GLAXOSMITHKLINE, a Pennsylvania Corporation; MYLAN, INC., a Pennsylvania Corporation; and H.D. SMITH WHOLESALE DRUG CO., a Delaware Corporation with its principal place of business in Illinois,<br><br>Defendants. | Case No. 1:12-cv-06403 |

**DEFENDANT GLAXOSMITHKLINE LLC'S MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

### I.  INTRODUCTION

Defendant GlaxoSmithKline LLC ("GSK") properly removed this case to this federal forum because Plaintiff Wendy Dolin ("Plaintiff") fraudulently joined a non-diverse defendant, Illinois citizen H.D. Smith Wholesale Drug Co. ("H.D. Smith"), to this lawsuit. Nothing in Plaintiff's Motion to Remand ("Plaintiff's Motion") changes this conclusion.

Plaintiff's Motion offers no response whatsoever to GSK's overarching argument that Plaintiff failed to allege any facts in her Complaint that support her claims against H.D. Smith. Instead, Plaintiff merely refers to the wholly insufficient and conclusory allegations in her Complaint.[1] Nor does Plaintiff offer any response to GSK's showing in its Notice of Removal that she cannot recover against H.D. Smith given that her representations against GSK make it

---

[1] Notably, H.D. Smith has raised the issue of whether it actually distributed the generic paroxetine allegedly ingested by Mr. Dolin. (*See* Affidavit of Lew Soars on Behalf of H.D. Smith Wholesale Drug Co., ¶¶11-14, Exhibit B to Docket No. 48 (Oct. 18, 2012), attached as Exhibit 1.) If H.D. Smith did not distribute the medication, there can be no question that HD Smith was fraudulently joined.

impossible for her to do so. Beyond these overarching reasons, each of Plaintiff's four claims against H.D. Smith also fails under Illinois law. Finally, Plaintiff cannot avoid that the U.S. Supreme Court's decision in *PLIVA v. Mensing* bars any claims against H.D. Smith.[2] For each of these independent reasons, Plaintiff's Motion must be denied.[3]

## II.  ARGUMENT AND CITATION OF AUTHORITY

In determining whether an in-state defendant was fraudulently joined, a district court must determine whether there is "any reasonable possibility that a state court would rule against the non-diverse defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). While the Seventh Circuit has described this as a "heavy burden," the removing party "need not negate any possible theory that [a plaintiff] might allege in the future: only his present allegations count." *Id.* at 74 (citation omitted). Measuring the allegations in Plaintiff's Complaint against this standard and the other evidence submitted by the named Defendants, GSK submits that it met (and surpassed) its burden that Plaintiff fraudulent joined H.D. Smith.

### A.  Plaintiff Has Not Alleged *Any Facts* Supporting Her Claims Against H.D. Smith.

Plaintiff asserts four Counts against H.D. Smith —Strict Liability (failure to warn and design defect), Negligence, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2. Plaintiff's Complaint, however, fails to allege *any* facts that would even circumstantially support Plaintiff's assertions that H.D. Smith is somehow liable under any of these theories. A review of the "General Allegations" alleged in Plaintiff's Complaint makes this abundantly clear. In that section, Plaintiff provides extensive allegations about GSK which span 106 paragraphs and 19 pages. (*See* Compl. ¶¶ 14-119.) These same paragraphs contain only a *single* reference to H.D. Smith in stark contrast to the 78

---

[2] Plaintiff does not deny that her claims exceed the jurisdictional amount of $75,000.
[3] GSK denies that it (or its medication Paxil) is in any way responsible for Mr. Dolin's death.

references to GSK. (*See id.* and ¶ 28 for the only reference to H.D. Smith.) As for Counts XVI-XIX, Plaintiff merely makes conclusory legal allegations against H.D. Smith without any facts about H.D. Smith's alleged conduct. This speaks volumes about why H.D. Smith is named in this lawsuit. *See Int'l Bhd. of Teamsters Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*, No. 97 C 8113, 1998 WL 242130, at *5 (N.D. Ill. May 8, 1998) (finding fraudulent joinder against a distributor where Complaint made only "wholly conclusory" allegations against the distributor that failed to "tie" the distributor to the wrong-doing alleged in the Complaint); *see also Askew v. DC Medical, LLC*, No. 1:11-cv-1245-WSD, 2011 WL 1811433, at *2-7 (N.D. Ga. May 12, 2011) (finding fraudulent joinder of medical device distributor where plaintiff sought to rely on "general, conclusory allegations" in support of her claims and failed to offer evidence disputing declaration offered by medical device manufacturer); *Moore v. Smith*, No. 2:11-CV-1224, 2012 WL 1123756, at *3 (W.D. La. April 2, 2012) (denying remand motion and stating that "conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to defeat a properly supported claim of fraudulent joinder.") (citations omitted) (internal quotation marks omitted).[4] Plaintiff's Complaint reflects that H.D. Smith is simply the vehicle Plaintiff chose in a transparent attempt to prevent GSK (and Mylan) from removing this case to federal court.

---

[4] Plaintiff's failure to satisfy the pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), also supports removal. *See Street v. Cottrell, Inc.*, No. 09-cv-946, 2010 WL 750027, at *5 (S.D. Ill. Mar. 3, 2010) ("Federal courts evaluate a complaint, even a removed complaint, using liberal federal notice pleading standards because pleading standards are procedural."); *Rockwood Retaining Walls, Inc. v. Patterson, Thuente, Skaar & Christensen, P.A.*, No. 09-2493 (DWF/FLN), 2009 WL 5185770, at *6 n.6 (D. Minn. Dec. 22, 2009) (in removed cases "complaint must satisfy the current federal pleading standard as defined by the U.S. Supreme Court's decisions in *Twombly* and *Iqbal*") (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 134-35 (1992)). "[L]abels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). In determining whether a plaintiff has satisfied these standards, a court should not give any weight to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). Rather, a court must look beyond such conclusory allegations and "determine whether the remaining factual allegations" establish a plausible cause of action. *Id.*

Plaintiff's Motion seeks to fill this glaring hole by attempting to re-write her Complaint. Citing Count XVI and ¶ 28, Plaintiff claims that she alleged that "H.D. Smith worked with Defendants GSK and Mylan to market, sell, and distribute a drug it knew was not marketable." (Pl.'s Mem. at 7.) But neither reference contains any such allegation or fact to support this claim. Likewise, Plaintiff represents that her Complaint "gives specific details" about how GSK allegedly made false statements and that H.D. Smith "knew these statements were false." (*Id.*) Yet, in reality, her Complaint contains not one shred of a *factual* allegation that supports a claim about (a) what H.D. Smith knew about the alleged risks of Paxil (or paroxetine); (b) how H.D. Smith knew this information; (c) when H.D. Smith supposedly knew this; or (d) what H.D. Smith supposedly represented that was inaccurate. Plaintiff chose to provide none of this information, apparently hoping that this decision would avoid scrutiny yet still result in remand. It should not. Her Motion should be denied.

In stark contrast, GSK provided evidence in its Notice of Removal that H.D. Smith did not manufacture Paxil or paroxetine and that "H.D. Smith Wholesale Drug Co. did not have knowledge or information regarding any alleged defect in paroxetine." (*See* Exhibit C to GSK's Notice of Removal, August 13, 2012 Declaration of Thomas Twitty ("Twitty Decl.") ¶¶ 8, 12-13, attached as Exhibit 2.) A plaintiff cannot rest on conclusory allegations in her Complaint once confronted with evidence in the removal papers or opposition to remand refuting the allegations. *Bergman v. U.S. Silica*, No. 06-cv-356-DRH, 2006 WL 2982136, at *5-6 (S.D. Ill. Oct. 17, 2006); *Lundy v. Cliburn Truck Lines, Inc.*, 397 F. Supp. 2d 823, 827 (S.D. Miss. 2005) (same); *Askew*, 2011 WL 1811433, at *6-7 (same). Yet, that is all Plaintiff does here. Therefore, H.D. Smith was fraudulently joined and must be dismissed from this lawsuit.

  **B.** **Plaintiff's Own Irreconcilable Claims Establish<br>No Reasonable Possibility Of Recovery Against H.D. Smith.**

4

Even looking past Plaintiff's failure to plead any facts against H.D. Smith, her allegations against GSK establish that she fraudulently joined H.D. Smith. Plaintiff spends page after page of her Complaint alleging how GSK *alone* "concealed" information from the "public" and the "medical community" as a whole. (*See* Compl. ¶¶ 19-171.) These allegations include how GSK "concealed adverse information"; "defrauded the medical profession"; "[f]ailed to inform the medical and research communities" about clinical trial data on patients harming themselves; and "[f]raudulently concealed paroxetine's association with suicidal behavior." (*See, e.g.*, Compl. ¶¶ 124, 125, 125(i); 135(a); *see also* GSK's Notice of Removal at 14-18.) Taking Plaintiff at her own word, she cannot on the one hand claim that GSK somehow deceived and concealed information from everyone about the alleged risks of paroxetine, while on the other hand claim that H.D. Smith — a mere wholesaler distributor — is at fault for failing to warn about these risks which GSK supposedly withheld from everyone.[5]

In similar circumstances, courts have repeatedly ruled that non-diverse defendants were fraudulently joined. *See, e.g.*, *In re Baycol Prods. Litig.*, No. 03-4954, 2004 WL 1118642, at *2 (D. Minn. May 17, 2004) (plaintiffs' claim that medical defendants failed to warn them of risks associated with prescription medication failed as a matter of law when plaintiffs also alleged that the medication's manufacturer failed to warn doctors and hospitals (i.e., the medical defendants)); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D. W.Va. 2003) (finding fraudulent joinder of doctor when plaintiff alleged that the doctor should have known of the dangers of the medication at issue while also alleging that the manufacturer prevented anyone from knowing those dangers); *Flores v. Merck & Co.*, No. C-03-362, 2004 U.S. Dist. LEXIS 28017, at *3 (S.D. Tex. March 12, 2003) (finding the prescribing doctor fraudulently joined

---

[5] Further, as set out in GSK's Notice of Removal, Plaintiff is not pleading in the alternative. (*See* GSK's Notice of Removal at 18-19.) Rather, she takes one set of facts and asserts two mutually exclusive theories of recovery.

"when the plaintiffs' own petition states that [the doctor], as a member of the health care industry, was not made aware of the risks of the ingestion of the drug"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) (finding plaintiffs' allegations that pharmacists failed to warn were "purely tendentious" when plaintiffs also alleged that the manufacturer defendants hid the alleged dangers of the medication at issue from "everyone"); *Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:00CV102LN, 2000 U.S. Dist. LEXIS 22694, at *6 (S.D. Miss. Sept. 25, 2000) (finding fraudulent joinder when plaintiffs failed to allege "any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware").

Importantly, nowhere does Plaintiff allege *how* H.D. Smith "knew or should have known" about all of the alleged GSK internal analyses and decisions about Paxil that she details in her Complaint. Nor does she ever allege that H.D. Smith concealed the alleged risks of Paxil or paroxetine. Instead, Plaintiff devotes all of her "General Allegations" and her Counts against GSK to detail how no one else knew about GSK's alleged acts. Paragraphs 27 and 28 of Plaintiff's Complaint expose the hypocrisy of Plaintiff's Motion. In ¶ 27, Plaintiff alleges that "GSK has been aware of Paxil's association with an increased risk of suicidality in adults for over 20 years, but ***concealed the risk***." (Compl. ¶ 27 (emphasis added).)[6] In the very next breath Plaintiff's Complaint alleges that "H.D. SMITH knew or should have known of this risk." (*Id.* at ¶ 28.)[7] These two paragraphs alone should dispose of Plaintiff's Motion. In sum,

---

[6] Paxil was first approved for marketing in the U.S. by the FDA in December 1992 so the alleged concealment extends to the present.

[7] Notably, ***this*** is the single reference in the "General Allegations" section of Plaintiff's Complaint that GSK referenced in § II.A., *supra*.

6

Plaintiff's Complaint is chock-full of representations that show she has no "reasonable possibility" of recovering against H.D. Smith. This is another reason to deny her Motion.

    **C.    Analyzing Plaintiff's Individual Claims Against H.D. Smith Further Confirms That She Has No "Reasonable Possibility" of Prevailing on Any.**

Even if the Court undertakes a further analysis beyond the fundamental flaws discussed above, additional reasons exist for why each of Plaintiff's individual claims against H.D. Smith cannot be sustained under Illinois law.

    **1.    Strict Liability**

There is no reasonable possibility of prevailing on any strict liability claim against H.D. Smith because Illinois's Distributor Statute, 735 Ill. Comp. Stat. 5/2-621, mandates dismissal of these claims. In pertinent part, the Distributor Statute provides that "[i]n any product liability action based in whole or in part on the doctrine of strict liability in tort," a Court "shall order the dismissal" of the distributor once that distributor "file[s] an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage"; the manufacturer of the product "[has] answered or otherwise pleaded"; and none of the exceptions of section (c) apply. *See* 735 Ill. Comp. Stat. 5/2-621.[8] Here, H.D. Smith certified the identity of the manufacturer of the generic paroxetine at issue —Mylan. (*See* Exhibit 2, Twitty Decl. ¶ 9; *see also* Compl. ¶ 3 (admitting that Mylan manufactured the paroxetine allegedly ingested by Mr. Dolin).) Mylan also filed its responsive pleading. (*See* Docket No. 22.) Thus, the only remaining issue is whether an exception under section (c) applies.

Agreeing that the Distributor Statute applies here, Plaintiff relies on a *single* exception under section (c) in an attempt to salvage her Motion. Plaintiff argues that ***"based on the allegations in the complaint"*** the exception under (c)(2) applies because "H.D. Smith had

---

[8] Historical and Statutory Notes to 735 Ill. Comp. Stat. 5/2-621 provide the pre-amendment 1995 language of subsections (a) and (b).

knowledge of the dangers associated with Paxil/paroxetine, *i.e.*, that the drug substantially increases the risk of suicidal behavior." (Pl.'s Mem. at 8 (emphasis added).)[9] But as discussed *supra*, the allegations in Plaintiff's Complaint are her Achilles Heel. Her Complaint fails to allege any facts to support her claim, and instead shows that it cannot be maintained. *See Poulos*, 959 F.2d at 73-74 (in finding fraudulent joinder of parent-company, court disregarded conclusory allegation that the parent-company "controlled" the defendant-subsidiary because plaintiff failed to allege requirements to show this). This means that the evidence at the time of removal establishes that "H.D. Smith Wholesale Drug Co. did not have knowledge or information regarding any alleged defect in paroxetine." (*See* Exhibit 2, Twitty Decl. ¶ 12.) This renders Plaintiff's efforts to invoke the exception at § 5/2-621(c)(2) a nullity.

Citing *Poulos* and § 5/2-621(b) of the Distributor Statute, Plaintiff also argues that removal is inappropriate because § 5/2-621(b) includes certain grounds where H.D. Smith might be reinstated as a defendant following dismissal. (*See* Pl.'s Mem. at 9.) Importantly, Plaintiff does not assert that any of the enumerated grounds for reinstatement apply here. Plaintiff also ignores that *Poulos* specifically rejected the argument that a plaintiff can avoid a finding of fraudulent joinder because "some facts might turn up" later. 959 F.2d at 74. In doing so, the Seventh Circuit made clear that the removing party "need not negate any possible theory that [plaintiff] might allege in the future: only his present allegations count." *Id.* Thus, Plaintiff's speculation of what might happen later is not the yardstick by which GSK's removal must be measured.

As discussed in *Steel v. Ford Motor Co.*, a plaintiff cannot avoid removal pursuant to the Distributor Statute based on mere speculation that an exception to the statute might apply or that

---

[9] The statute prohibits dismissal of a non-manufacturer defendant if the plaintiff can show "[t]hat the defendant had actual knowledge of the defect in the product which caused the injury." 735 Ill. Comp. Stat. 5/2-621(c)(2).

8

reinstatement of the non-manufacturer defendant is theoretically possible. *See* No. 11 C 00460, 2011 WL 1485380, at *4-5 (N.D. Ill. Apr. 19, 2011) (Chang, J.). Rather, a plaintiff must either show that one of the exceptions in § 5/2-621(c) applies or that a ground for reinstatement in § 5/2-621(b) would allow recovery against the non-manufacturer defendant. *Id*. To hold otherwise would lead to the anomalous result that "no case involving . . . dismissal [under the Distributor Statute] would be removable, no matter the remoteness of the possibility of recovery against the non-diverse Illinois distributor." *Id*. at *5. Such a result would run contrary to established Seventh Circuit precedent requiring a finding of fraudulent joinder where there is no "reasonable possibility" of recovery against a defendant. *Id*. (citing *Poulos*, 959 F.2d at 72); *see also Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d 926, 933-34 (N.D. Ill. Feb. 7, 2012) (Pallmeyer, J.); *Xiaofa Shi v. Am. Honda Motor Co.*, No. 11 C 2682, 2011 WL 5403618, at *2 (N.D. Ill. Nov. 8, 2011) (Zagel, J.).[10]

## 2. **Negligence**

In order to establish a negligence cause of action, Plaintiff must "allege and prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries." *Gray v. Nat'l Restoration Sys., Inc.*, 820 N.E.2d 943, 956, 354 Ill. App. 3d 345, 289 Ill. Dec. 868 (1st Dist. 2004). Because H.D. Smith

---

[10] GSK recognizes that certain decisions in this District have called into question whether the Distributor Statute can serve as a basis for fraudulent joinder because of the conditional ability of a plaintiff to move to reinstate the distributor if one of the grounds set out at Section 5/2-621(b) has been established. *See, e.g.*, *Scheinman v. BMW of N. Am., LLC*, No. 10 C 4848, 2010 WL 3937489, at *3 (N.D. Ill. Sept. 30, 2010) (Conlon, J.); *Rubino v. Keller Ladders, Inc.*, No. 98 C 262, 2000 WL 220510, at *1 (N.D. Ill. Feb. 18, 2000) (Gettleman, J.). GSK respectfully submits that, under the allegations as pled by Plaintiff, the decisions in *Steel*, *Whelchel*, and *Xiaofa* — which adhere to the established "reasonable possibility" standard in addressing questions of fraudulent joinder — present the correct interpretation of this issue. *See Steel*, 2011 WL 1485380, at *4; *Whelchel*, 850 F. Supp. 2d at 933-34; *Xiaofa*, 2011 WL 5403618, at *2. As the Court in *Whelchel* recently opined, "[t]o allow the conditional nature of a [Distributor Statute] dismissal to defeat diversity jurisdiction in all cases where a distributor is nondiverse would change the [Seventh Circuit] 'reasonable possibility' test into an 'any possibility' test." 850 F. Supp. 2d at 934. GSK respectfully submits that the mere fact that the Distributor Statute contains grounds for reinstatement at Section 5/2-621(b) is not dispositive for purposes of the fraudulent joinder analysis.

did not have a duty to warn with respect to Paxil or paroxetine, Plaintiff's negligence claim fails as a matter of law.

Under the learned intermediary doctrine, the only duty to warn in prescription medication cases flows from the manufacturer to the prescribing physician. *See Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392-93, 117 Ill. 2d 507, 111 Ill. Dec. 944 (1987) (adopting learned intermediary doctrine for prescription medication cases). Other parties in the chain of distribution do not have a duty to warn. *See Walton v. Bayer Corp.*, 643 F.3d 994, 1000-01 (7th Cir. 2011). In fact, Plaintiff's own Complaint charges that it is the *pharmaceutical manufacturer*, not H.D. Smith or the distributor, who "'**bears the responsibility for the content of its label at all times**.'" (Compl. ¶ 118 (citation omitted).) In other words, Plaintiff alleges that it is pharmaceutical manufacturers, not distributors, who have control over the content of warnings about a medication's alleged side-effects and a duty to warn about them. Thus, case law and Plaintiff's Complaint establish that H.D. Smith had no duty to warn with respect to paroxetine.

Plaintiff attempts to avoid this straightforward result by arguing that the learned intermediary doctrine "clearly states that it 'doesn't permit distributors to conceal a drug's adverse side effects from physicians, pharmacies, and consumers.'" (Pl.'s Mem. at 10 (quoting *Walton*, 643 F.3d at 1001).) However, Plaintiff's Complaint claims only that **GSK** concealed the alleged effects of GSK's Paxil or paroxetine; it contains no allegation that **H.D. Smith** ever did. Plaintiff's Motion also omits that *Walton* explicitly stated that "[p]harmacies (and normally *other sellers in the chain of distribution* that runs from the manufacturer to the ultimate consumer) can't be expected to warn their customers of the possible defects and dangers of the prescription drugs they sell." *Id.* at 1000 (emphasis added). Under *Walton*, a pharmacy only has a duty to

10

warn a customer or his physician where the pharmacy "knows . . . without investigation" that a medication is contraindicated for a particular customer. *Id.* Here, Plaintiff makes no allegation that H.D. Smith knew anything of the sort. Finally, *Walton* discusses how Plaintiff cannot advance conflicting arguments to succeed on a motion to remand. *Id.* at 1001 (rejecting plaintiff's "common-defense" argument because Plaintiff alleged in her Complaint that the manufacturer "concealed vital information" about the medication's side effects). Thus, *Walton* undermines (and cannot help) Plaintiff's arguments.

### 3. Violation of ICFA, 815 Ill. Comp. Stat. 505/2

Plaintiff cannot meet her obligation to plead her claim under the ICFA with particularity. (*See* GSK's Notice of Removal at 11-13.) Plaintiff cannot avoid this conclusion by proffering the bald claim that "H.D. Smith participated in a comprehensive scheme to deceive consumers."[11] (Pl.'s Mem. at 7.) To successfully plead fraud under the ICFA, a plaintiff must assert "specific allegations of facts from which fraud is the necessary or probable inference," including **"what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made."** *In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 692 F. Supp. 2d 1025, 1038 (S.D. Ill. 2010) (emphasis added) (quoting *Bd. Of Educ. v. A C & S, Inc.*, 546 N.E.2d 580, 593-94, 131 Ill. 2d 428, 137 Ill. Dec. 635 (1989)) (finding that "Plaintiff's ICFA count cannot succeed against [pharmacy] in light of Plaintiff's failure to meet her obligation of identifying with particularity the fraudulent conduct in which [pharmacy] allegedly engaged"). Nowhere does Plaintiff's Complaint provide any information about what H.D. Smith allegedly said; who said it; when it was said; to whom it

---

[11] Moreover, Plaintiff's claim that H.D. Smith acted as "GSK's agent in distributing [generic paroxetine] in Illinois" (Pl.'s Mem. at 7) also ignores that her Complaint concedes that "[a]t the time of his suicide, Stewart was under the influence of the generic version of an antidepressant, Paxil, known generically as 'paroxetine,' manufactured by MYLAN Inc." (*See* Compl. ¶ 3.)

11

was said; and how it was relied upon. *See DeBouse v. Bayer*, 922 N.E.2d 309, 316, 235 Ill. 2d 544, 377 Ill. Dec. 186 (2009) (finding that "[a] consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant"); *see also Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 219, 208 Ill. 2d 517, 281 Ill. Dec. 845 (2004) (finding that because homeowners were not deceived by any of manufacturer's advertisements, they could not maintain a cause of action under ICFA); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155, 201 Ill. 2d 134, 267 Ill. Dec. 14 (2002) (finding plaintiff's claim under ICFA failed "[b]ecause plaintiff does not allege that he saw, heard or read any of defendant's ads"). Nor does Plaintiff cite any ICFA cases. Instead, she relies upon one federal decision from Ohio that has nothing to do with the ICFA. (*See* Pl.'s Mem. at 6.)

   Plaintiff attempts to side-step this flaw by arguing two points. First, she argues that she provided detailed information about H.D. Smith's involvement with GSK in a "comprehensive scheme to deceive consumers." (*See id.* at 7.) As discussed *supra* at 2-7, her Complaint belies that claim. Second, Plaintiff argues that it is "premature" to assess this issue. (*See id.* at 6.) That argument is unavailing as well. In determining whether there is a reasonable possibility of a plaintiff prevailing on an ICFA claim, the Court looks to whether Plaintiff pleaded that claim with particularity as required by Illinois law. *See Jacobson v. Ford Motor Co.*, No. 98 C 742, 1999 WL 966432, at *6 (N.D. Ill. Sept. 30, 1999) (finding fraudulent joinder of defendant automobile seller where plaintiff failed to state her ICFA claim with particularity). "[T]he Court may find fraudulent joinder without deciding whether the problem in a plaintiff's complaint can be cured by amending it." *Hale v. China Online, Inc.*, No. 08 C 5548, 2009 WL 2601357, at *2 (N.D. Ill. Aug. 21, 2009). Despite Plaintiff's claims to the contrary, the failure to plead her

ICFA claim with particularity cannot be cured, especially given her representations about GSK's alleged "concealment" of Paxil's risks. Since Plaintiff cannot prove that there is any reasonable possibility of prevailing against H.D. Smith on her ICFA claim, H.D. Smith is fraudulently joined in this action.

### D. All of Plaintiff's Claims Against H.D. Smith Are Preempted.

Even if Plaintiff could somehow avoid these flaws in her claims against H.D. Smith, which she cannot, application of the United States Supreme Court's decision in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), would result in federal preemption of Plaintiff's claims against H.D. Smith. Under *Mensing*, tort-based claims involving generic prescription medications are preempted by federal law. *Id*. at 2577-78. Because a mere distributor of a generic prescription medication is no more able to change a medication's FDA-approved labeling than the generic manufacturer, there is no reasonable possibility that Plaintiff could prevail on any of her claims against H.D. Smith under *Mensing*.

Plaintiff attempts to avoid this conclusion by arguing that whether Plaintiff's claims are preempted under *Mensing* is a merits determination which is not appropriate for a fraudulent joinder inquiry. (*See* Pl.'s Mem. at 11.) However, federal preemption under *Mensing* has been used to deny a motion to remand. *Compare In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), 2012 WL 1118780, at *6 (D.N.J. Apr. 3, 2012) (denying plaintiff's motion to remand and dismissing all of plaintiffs' products liability claims against generic manufacturers as preempted under *Mensing*); *with In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, No. 2:11-md-2226-DCR, 2012 WL 2919270, at *3-4 (E.D. Ky. July 17, 2012) (finding that analysis of "the *Mensing* issue would be inappropriate" in a fraudulent joinder analysis). Given the dispositive nature of *Mensing*, which plainly bars all of

Plaintiff's claims against H.D. Smith, GSK respectfully submits that the Court can and should consider *Mensing*.

Plaintiff also argues that the "common-defense" exception to fraudulent joinder applies because both Mylan and H.D. Smith have asserted preemption under *Mensing*. However, the common-defense exception only applies where a defense is "common to ***all*** [of] the defendants" in a particular action. *Walton*, 643 F.3d at 1001 (emphasis added); *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 741 (N.D. Ill. 2011) ("[T]he [common defense] rule applies only in circumstances where 'the showing which forecloses [the plaintiffs'] claim against the non-diverse defendants necessarily and equally compels foreclosure of *all their claims* against *all* the diverse defendants.'") (second alteration in original) (citation omitted); *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 575 (5th Cir. 2004) (same); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 113 (3rd Cir. 1990) (remanding case to state court where "the dispositive defense . . . was raised by ***all*** three defendants.") (emphasis added). Because the Supreme Court's holding in *Mensing* does not apply to preempt Plaintiff's claims against GSK, Plaintiff cannot avail herself of this argument.

### E. The Principles of Comity and State Sovereignty Do Not Alter the Fraudulent Joinder Analysis.

In a last ditch effort to avoid federal court, Plaintiff claims that "the inherent principles of comity and federalism" counsel against federal jurisdiction in this case because "[s]everal important and novel issues of state-law are likely to arise throughout the course of litigation." (Pl.'s Mem. at 13.) Specifically, Plaintiff points to the issue of "whether a brand-name manufacturer can be vicariously liable for defects contained in generic products" as the most important issue of state law to be determined in this case. (*Id.*) Yet, as Plaintiff admits, she "does not seek to invoke an abstention doctrine here." (*Id.*) Moreover, Plaintiff points to no

14

authority that comity matters at all when it comes to deciding fraudulent joinder. Nor could she do so. If anything, Plaintiff's argument here tips her hand about *why* she fraudulently joined H.D. Smith in this lawsuit.

### III. CONCLUSION

For the foregoing reasons, GSK respectfully requests that this Court deny Plaintiff's Motion to Remand.

15

Dated: October 18, 2012

Respectfully submitted,

By: /s/ Alan S. Gilbert

Alan S. Gilbert (No. 953210)
Melissa Economy (No. 6282802)
SNR DENTON US LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606-6404
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Andrew T. Bayman (*pro hac vice*)
Todd P. Davis (*pro hac vice*)
David F. Norden (*pro hac vice*)
Christopher R. Benson (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for GlaxoSmithKline LLC*

## **CERTIFICATE OF SERVICE**

    It is hereby certified that on October 18, 2012, I electronically filed the foregoing DEFENDANT GLAXOSMITHKLINE LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

                                                      /s/ Alan S. Gilbert  
                                                      Counsel for Defendant GSK