IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WENDY B. DOLIN, Individually and as Independent Executor of the ESTATE OF STEWART DOLIN, Deceased, | ) ) ) ) | Case No. 1:12-cv-06403 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SMITHKLINEBEECHAM CORPORATION D/B/A GLAXOSMITHKLINE, a Pennsylvania Corporation; MYLAN, INC., a Pennsylvania Corporation; and H.D. SMITH WHOLESALE DRUG CO., a Delaware Corporation with its principal place of business in Illinois, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT GLAXOSMITHKLINE LLC'S
MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56(C) and Local Rule 56.1, Defendant GlaxoSmithKline LLC

("GSK") submits this Memorandum of Law in Support of Summary Judgment[1], respectfully

showing the Court as follows:

---

[1] At the January 10, 2013 status conference, the Court issued an oral ruling extending the page limitation set out at Local Rule 7.1 for purposes of the summary judgment briefings.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

I. INTRODUCTION ............................................................................................... 1

II. ARGUMENT AND CITATION OF AUTHORITY ................................................. 3

   A. Summary Judgment Standard ................................................................. 3

   B. This Court Should Follow the Majority Rule Prohibiting Claims Against Brand-Name
      Manufacturers, Such as GSK, for Injuries Caused by Generic Products ............................. 4

      1. Courts Across the Country Have Consistently Held that Brand-Name Manufacturers,
         Such as GSK, Be Held Liable for Injuries Caused by Generic Products ...................... 4

      2. Conte and its Rationale Has Been Rejected by Courts Across the Country ................. 7

      3. The Decision in PLIVA, Inc. v. Mensing Makes No Difference Here ......................... 9

   C. Under Illinois Law, GSK Cannot Be Held Liable For Injuries Allegedly Caused By
      Another Manufacturer's Product .................................................................... 11

      1. Illinois Law Requires a Product Liability Plaintiff to Prove that the Defendant
         Manufactured or Distributed the Product that Caused the Injury ............................. 12

      2. Plaintiff's Claims Fail Under Both Negligence and Strict Liability Theories ............. 15

         a. Strict Liability ................................................................................. 16

         b. Negligence ...................................................................................... 17

      3. Plaintiff Cannot Succeed on Her Remaining Claims ..................................... 19

   D. Holding GSK Liable For Injuries Allegedly Caused by Another Manufacturer's Product
      Would Violate the Fourteenth Amendment ......................................................... 22

III. CONCLUSION ................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advincula v. United Blood Services*, 678 N.E.2d 1009, 176 Ill. 2d 1, 223 Ill. Dec. 1 (1996) ...... 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................... 4

*Baymiller v. Ranbaxy Pharma., Inc.*, ___ F. Supp. 2d ___, Case No. 3:11-cv-858, 2012 WL 3929768 (D. Nev. September 6, 2012) ........................................................................... 5, 6, 8

*Beutella v. A.H. Robins Co., Inc.*, No. 05-CV-2372, 2001 WL 35669202 (Utah Dist. Ct. Dec. 10, 2001) ....................................................................................................................................... 7

*Burke v. Wyeth, Inc.*, No. G-09-00082, 2009 WL 3698480 (S.D. Tex. Oct. 7, 2009) ................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................ 3

*Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514 (E.D. Pa. 2006) ................................................. 6, 7

*Conte v. Wyeth*, 85 Cal. Rptr. 3d 299 (Cal. Ct. App. 2008) ............................................................ 7

*Couick v. Wyeth, Inc.*, 691 F. Supp. 2d 643 (W.D.N.C. 2010) ....................................................... 7

*Demahy v. Schwarz Pharma, Inc.*, No. 11-31073, 2012 WL 6698692 (5th Cir. Oct. 25, 2012) ...........................................................................................................................…6, 10

*Fields v. Wyeth*, 613 F.Supp.2d 1056 (W.D. Ark. 2009) ................................................................. 2

*Finnicum v. Wyeth, Inc.*, 708 F. Supp. 2d 616 (E.D. Tex. 2010) .................................................... 7

*Firkin v. U.S. Polychem. Corp.*, No. 91 C 3660, 1993 WL 271526 (N.D. Ill. July 19, 1993) ..... 12

*Fisher v. Pelstring*, No. 4:09-cv-00252, 2010 WL 2998474 (D.S.C. July 28, 2010) ............. 2, 7, 8

*Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342 (Minn. Ct. App. May 15, 2001) ................... 7

*Forman v. Richmond Police Dept.*, 104 F.3d 950 (7th Cir. 1997) ................................................. 4

*Foster v. American Home Products*, 29 F.3d 165 (4th Cir. 1994) ................ 2, 4, 5, 6, 8, 9, 10, 20

*Gibson v. American Cyanamid, Inc.*, 719 F. Supp. 2d 1031 (E.D. Wisc. 2010) ......................... 22

*Goldych v. Eli Lilly & Co.*, No. 5:04-CV-1477, 2006 WL 2038436 (N.D.N.Y. July 19, 2006) .... 7

*Gross v. Pfizer, Inc.*, No. 10-CV-00110, 2010 WL 4485774 (D. Md. Nov. 9, 2010) ................... 8

*Gross v. Pfizer*, No. 10-CV-00110, 2011 WL 4005266 (D. Md. Sept. 7, 2011) ........................... 7

*Hogue v. Pfizer, Inc.*, ___ F. Supp. 2d ___, No. 2:10-cv-805, 2012 WL 4466609 (S.D. Ohio Sept. 27, 2012) ................................................................................................................................. 6

*Huck v. Trimark Physicians Grp.*, No. LACV018947, 2009 WL 3760458 (Iowa Dist. Ct. Feb. 27, 2009) ....................................................................................................................................... 7

*In re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, MDL No. 11 -2226, 2012 WL 3842271 (E.D. Ky. Sept. 5, 2012) ........................................................................... 7

*In re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, MDL No. 11-2226, 2012 WL 3984871 (E.D. Ky. Sept. 10, 2012) ......................................................................... 8

*Kellerman v. Crowe,* 518 N.E.2d 116, 119 Ill. 2d 111, 115 Ill. Dec. 591 (1987)........................ 17

*Kellogg v. Wyeth*, 762 F.Supp.2d 694 (D. Vt. 2010) ..................................................... 7

*Kelly v. Wyeth*, No. 03-CV-3314, 2005 WL 4056740 (Mass. Super. May 6, 2005) ..................... 7

*Kirk v. Michael Reese Hosp. & Medical Ctr.*, 513 N.E.2d 387, 117 Ill. 2d 507, 111 Ill. Dec. 944 (1987)........................................................................................................ 16, 17, 18

*Lashley v. Pfizer*, No. 1:09-cv-749, 2012 WL 2459148 (S.D. Miss. June 27, 2012) ................... 7

*Lyman v. Pfizer*, No. 2:09-cv-262, 2012 WL 2970627 (D. Vt. July 20, 2012) ........................... 7

*Madden v. Teva Pharmaceuticals USA, Inc.*, No. 0087, 2012 WL 4757253 (Phila. Ct. C.P. Oct. 1, 2012) ......................................................................................................... 6

*Meade v. Parsley*, Civ. No. 09-388, 2009 WL 3806716 (S.D. W.Va. Nov. 13, 2009) ................. 7

*Mensing v. Wyeth, Inc.*, 588 F.3d 603 (8th Cir. 2009)..................................................... 2

*Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011).................................................... 10

*Meshes v. Warren & Sweat Mfg. Co.*, No. 98 C 50064, 2001 WL 1002410 (N.D. Ill. Aug. 28, 2001) ......................................................................................................... 12

*Metz v. Wyeth*, 830 F. Supp. 2d 1291 (M.D. Fla. 2011) ..................................... 7, 11, 21

*Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 231 Ill. 2d 516, 327 Ill. Dec. 1 (2008) .......... 16

*Moretti v. Wyeth, Inc.*, No. 2:08-cv-00396, 2009 WL 749532 (D. Nev. Mar. 20, 2009) . 2, 7, 8, 21

*Morris v. Wyeth, Inc.*, No. 09-0854, 2009 WL 4064103 (W.D. La. Nov. 23, 2009)..................... 7

*Morris v. Wyeth, Inc.*, No. 3:09-cv-00854, 2011 WL 4975317 (W.D. La. Oct. 19, 2011)........... 11

*Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 381 Ill. App. 3d 768, 320 Ill. Dec. 425 (1st Dist. 2008) ..................................................................................... 16

*Naden v. Celotex Corp.*, 546 N.E.2d 766, 190 Ill. App. 3d 410, 137 Ill. Dec. 821 (1st Dist. 1989) ........................................................................................................................ 13

*Nat'l Bank of Bloomington v. Westinghouse Elec. Corp.*, 600 N.E.2d 1275, 235 Ill. App. 3d 697, 175 Ill. Dec. 817 (4th Dist. 1992) ............................................................................ 18

*Neal v. Teva Pharms. USA, Inc.*, No. 09-cv-1027, 2010 WL 2640170 (W.D. Ark. July 1, 2010). 7

*Northern Trust Co. v. Upjohn*, 572 N.E.2d 1030, 213 Ill. App. 3d 390, 157 Ill. Dec. 566 (1st Dist. 1991) ......................................................................................................... 17

*Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 201 Ill. 2d 134, 267 Ill. Dec. 14 (2002)................ 19

*Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114 (D. Or. Apr. 24, 2012) ........................................ 7

*Phelps v. Wyeth, Inc.*, No. 09-6168, 2010 WL 2553619 (D. Or. May 28, 2010) ................... 8, 11

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007)...................................................... 22

*PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) ................................................... 2, 10

*Schmidt v. Archer Iron Works, Inc.*, 256 N.E.2d 6, 44 Ill. 2d 401 (1970).................................. 13

*Schrock v. Wyeth, Inc.*, 601 F. Supp. 2d 1262 (W.D. Okla. 2009) .............................................. 7

*Schultz v. Hennessy Indus., Inc.*, 584 N.E.2d 235, 222 Ill. App. 3d 532, 165 Ill. Dec. 56 (1st Dist. 1991) ................................................................................................................................ 16

*Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 208 Ill. 2d 517, 281 Ill. Dec. 845 (2004) .... 19

*Sheeks v. Am. Home Prods. Corp.*, No. 02CV337, 2004 WL 4056060 (Colo. Dist. Ct. Oct. 15, 2004) ................................................................................................................................... 7

*Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 137 Ill. 2d 222, 148 Ill. Dec. 22 (1990) ... 12, 13, 15, 18

*Smith v. Wyeth, Inc.*, 657 F.3d 420 (6th Cir. 2011) ............................................................ 6, 7, 10

*Sollami v. Eaton*, 772 N.E.2d 215, 201 Ill. 2d 1, 265 Ill. Dec. 177 (2002) ................................. 13

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ............................................ 22

*Strayhorn v. Wyeth Pharmaceuticals, Inc.*, No. 2:11-cv-2058, 2012 WL 3217672 (W.D. Tenn. Aug. 8, 2012) .................................................................................................................. 6

*Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351 (N.D. Ga. 2008) ............................................... 7

*Torres v. Wilden Pump & Eng'g Co.*, 740 F. Supp. 1370 (N.D. Ill. 1990) ........................... 13, 16

*Webber v. Armstrong World Indus., Inc.*, 601 N.E.2d 286, 235 Ill. App. 3d 790, 175 Ill. Dec. 889 (4th Dist. 1992) ....................................................................................................... 13

*Westerlund v. Wyeth*, No. MID-2174-05, 2008 WL 5592753 (N.J. Super. Ct. Law Div. Oct. 20, 2008) ........................................................................................................................ 7

*Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 79 Ill. 2d 26, 37 Ill. Dec. 304 (1980)............... 17

*Wyeth, Inc. v. Weeks*, No. 1:10-cv-602, slip op. (Ala. Jan. 11, 2013) ..................................... 7, 11

*Zimmer v. Celotex Corp.*, 549 N.E.2d 881, 192 Ill. App. 3d 1088, 140 Ill. Dec. 230 (1st Dist. 1989) ..................................................................................................................... 12

**Statutes**

810 Ill. Comp. Stat. Ann. 5/2-313(1) (West 1961) ..................................................................... 19

Fed. R. Civ. P. 56(a)................................................................................................................... 3

## I.     INTRODUCTION

This is a products liability action in which Plaintiff seeks damages from GSK and Mylan Pharmaceuticals Inc. ("Mylan")[2] arising from the alleged suicide of Plaintiff's decedent, Stewart Dolin.  Plaintiff's claims all arise out of Mr. Dolin's ingestion of the prescription medication paroxetine hydrochloride ("paroxetine") manufactured by co-defendant Mylan.  Plaintiff's Complaint includes eight claims against both GSK and Mylan.

GSK is entitled to summary judgment because Mr. Dolin was not taking GSK's product, Paxil® ("Paxil"), at the time of his death on July 15, 2010.  Rather, it is undisputed that Mr. Dolin was provided (and allegedly ingested) a generic form of the medication, paroxetine, manufactured by Mylan, prior to his death on July 15, 2010.[3]  Specifically, Mr. Dolin allegedly started taking generic paroxetine 10 mg, an immediate-release formulation of paroxetine manufactured and distributed by Mylan, on July 10, 2010. (See P's Compl. ¶ 15, Ex. 1 to GSK's Stmt. of Undisputed Material Facts ("Stmt. of Facts").)  GSK had no role in the manufacturing or distribution of this generic medication that Mr. Dolin received and allegedly ingested.

In the face of these undisputed facts, Plaintiff nonetheless asserts that GSK should be held liable for alleged injuries caused by a product manufactured and distributed by ***another*** company.  Yet, under well-settled principles of Illinois products liability law, a plaintiff must establish that the defendant manufactured the product that allegedly injured the plaintiff. Because Mr. Dolin did not ingest GSK's product Paxil, Paxil could not and did not cause his death.

This bedrock principle of Illinois products liability law aligns the state with jurisdictions across the country that have expressly rejected the proposition that manufacturers of brand-name

---

[2]      Plaintiff's Complaint named "Mylan, Inc." as a defendant.  As reflected in submissions made by defendant Mylan, their correct name is Mylan Pharmaceuticals Inc.  (See Docket No. 22 at n.1.)

[3]      GSK denies that Paxil or paroxetine hydrochloride caused Mr. Dolin's death.

medications (such as GSK) can be held liable, on theories of misrepresentation or otherwise, for injuries allegedly caused by the ingestion of generic medications manufactured by other companies (here Mylan). Indeed, in 70 decisions across 25 jurisdictions, courts have consistently rejected the proposition that manufacturers of brand-name prescription medications can be held liable on any theory of product liability —whether strict liability, negligence, failure to warn, breach of warranty, negligent misrepresentation, fraud, or otherwise— for injuries allegedly caused by the ingestion of generic medications manufactured by other companies.

The virtual unanimity of courts across the country is not surprising. As court after court has recognized, allowing liability in this context would:

- Upend the settled expectations of product manufacturers by subverting decades of black-letter precedent providing that manufacturers are liable only for injuries caused by their own products —not for injuries caused by other companies' products, *see, e.g.*, *Fisher v. Pelstring*, No. 4:09-cv-00252, 2010 WL 2998474, at *7 (D.S.C. July 28, 2010);

- "[S]tretch the concept of foreseeability too far" by imposing a duty on manufacturers to consumers with whom they have no relationship and from whom they derive no revenue, *Foster v. American Home Products*, 29 F.3d 165, 171 (4th Cir. 1994); *Mensing v. Wyeth, Inc.*, 588 F.3d 603, 614 (8th Cir. 2009), *rev'd in part on other grounds sub nom.*, *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011);

- Contradict the federal regulatory scheme governing prescription medications, which makes clear that manufacturers of prescription medications (like other product manufactures) are responsible only for their own products and not those of their competitors, *Moretti v. Wyeth, Inc.*, No. 2:08-cv-00396, 2009 WL 749532, at *4 (D. Nev. Mar. 20, 2009); and

- Violate public policy by subjecting brand-name manufacturers to ongoing, indefinite liability from the use of generic medications even after the branded medication has left the market, thereby reducing incentives for research, development and innovation, *Foster*, 29 F.3d at 170; *Fields v. Wyeth*, 613 F.Supp.2d 1056, 1061 (W.D. Ark. 2009).

Because there is no material dispute of fact regarding the manufacturer of the generic paroxetine Mr. Dolin allegedly took during the five days leading up to his death, the principles applied in

the landslide of well-reasoned authority from across the country require dismissal of all of Plaintiff's claims against GSK.

Knowing this, Plaintiff seeks to recast this case as one involving "misrepresentation" claims. But this is nothing more than a transparent effort to end-run the barrier to Plaintiff's product liability claims. Also, allowing such claims against GSK here would violate GSK's constitutional due process rights under the Fourteenth Amendment.

Accordingly, Plaintiff's claims against GSK fail as a matter of law.

## II.     ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's attempt to hold GSK liable for injuries allegedly caused by a competitor's medication has been rejected by nearly every court that has considered the issue. Further, imposing liability under these circumstances would be contrary to, and substantially undermine, fundamental principles of Illinois products liability law, and would violate GSK's constitutional due process rights. The landslide of opinions from courts across the country rejecting Plaintiff's claims, as well as basic tenets of Illinois product liability law, establish that summary judgment should be granted for GSK on all of Plaintiff's claims.

## A.     Summary Judgment Standard.

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the motion may not rest on the mere allegations or denials of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[N]either 'the mere existence of some alleged factual dispute between the parties' nor the demonstration of 'some metaphysical doubt as to the material facts,' will sufficiently demonstrate a genuine issue of material fact." *Forman v. Richmond Police Dept.*, 104 F.3d 950, 957 (7th Cir. 1997) (citations omitted).

**B.      This Court Should Follow the Majority Rule Prohibiting Claims Against Brand-Name Manufacturers, Such as GSK, for Injuries Caused by Generic Products.**

**1.      Courts Across the Country Have Consistently Held that Brand-Name Manufacturers, Such as GSK, Cannot Be Held Liable for Injuries Caused by Generic Products.**

Decision after decision issued from courts across the country have consistently held that a brand-name manufacturer cannot be held liable for a plaintiff's injury allegedly caused by a generic equivalent of that medication. The leading case addressing the issue of brand-name manufacturer liability is *Foster v. American Home Products Corp.*, a case involving the death of an infant who had taken the bioequivalent generic version of the prescription medication Phenergan. Despite the fact that they had not purchased or used brand-name Phenergan, plaintiffs nonetheless sued the brand-name manufacturer, alleging, among other claims, strict liability, negligence, breach of warranty, and misrepresentation. *Foster*, 29 F.3d at 167-68.

The Fourth Circuit Court of Appeals upheld the district court's summary judgment on *all* of the plaintiffs' claims against the brand-name manufacturer, holding that a brand-name manufacturer could not as a matter of law be held liable for *any* injuries caused by a bioequivalent generic product manufactured by a different company, even though the generic manufacturer had adopted the brand-name medication's labeling and warnings verbatim. *Foster*, 29 F.3d at 167. This, the court reasoned, is a fundamental tenet of products liability law. *Id.* at 168-71. The court held that "attempting to hold [the brand-name manufacturer] liable for injuries caused by another manufacturer's product" was impermissible under Maryland law

4

because it was an "effort to circumvent the necessity that a defendant be shown to have

manufactured the product that caused an injury prior to being held liable for such an injury." *Id.*

at 168. As the court reasoned:

> There is no legal precedent for using a brand-name manufacturer's statements
> about its own product as a basis for liability for injuries allegedly caused by other
> manufacturers' products, over whose production the brand-name manufacturer
> had no control. This would be especially unfair when, as here, the generic reaps
> the benefits of the brand-name manufacturer's statements by copying the labels
> and riding on the coattails of its advertising. The premarketing approval scheme
> Congress established for generic equivalents of previously-approved drugs cannot
> be construed to create liability of a brand-name manufacturer when another
> manufacturer's drug has been consumed.

*Id* at 170.

The *Foster* court also rejected plaintiffs' attempt to evade products liability law by

attempting to re-characterize their claims as various forms of misrepresentation. In so doing, the

court focused on the absence of any relationship between the plaintiff and the brand-name

manufacturer from which the required duty of care could arise. *See id.* at 171. The plaintiffs

asserted that such a duty existed "because it was foreseeable to Wyeth that misrepresentations

regarding Phenergan could result in personal injury to users of Phenergan's generic equivalents."

*Id.* The Fourth Circuit disagreed:

> We think to impose a duty in the circumstances of this case would be to stretch
> the concept of foreseeability too far. The duty required for the tort of negligent
> misrepresentation arises when there is such a relation that one party has the right
> to rely for information upon the other, and the other giving the information owes a
> duty to give it with care. There is no such relationship between the parties to this
> case, as Brandy Foster was injured by a product that Wyeth did not manufacture.
> As Wyeth has no duty to the users of other manufacturers' products, a negligent
> misrepresentation action cannot be maintained against it on the facts of this case.

*Id.* (internal citation and quotation omitted); *see also Baymiller v. Ranbaxy Pharma., Inc.*, ___ F.

Supp. 2d ___, Case No. 3:11-cv-858, 2012 WL 3929768, at *8-9 (D. Nev. September 6, 2012)

(granting summary judgment to GSK in case where generic equivalent medication and not Paxil

was ingested by the Plaintiff); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 539-41 (E.D. Pa. 2006) (granting summary judgment for GSK, in part, on the grounds that the plaintiff had used generic paroxetine manufactured by Apotex, Inc. rather than brand-name Paxil manufactured by GSK; "unfair consequences would result if we were to impose a duty upon GSK, when it obtained no benefit from the sale of Apotex's generic equivalent and had no control over the manufacturing or labeling of paroxetine hydrochloride, yet it bore the expense of developing Paxil from which Apotex materially benefits."), *aff'd on other grounds*, 521 F.3d 253 (3d Cir. 2008), *vacated and remanded*, 129 S. Ct. 1578 (2009), *vacated and remanded*, No. 06-3107 (3d Cir. 2009).

The *Foster* court's sound reasoning has been adopted by virtually every other court that has considered this issue, including the three other federal appellate courts addressing it. *See Smith v. Wyeth, Inc.*, 657 F.3d 420, 424 (6th Cir. 2011) ("As have the majority of courts to address this question, we reject the argument that a name-brand drug manufacturer owes a duty of care to individuals who have never taken the drug actually manufactured by that company."); *Mensing*, 588 F.3d at 613–14 (noting that "the overwhelming majority of courts considering this issue" have rejected the innovator-liability theory); *Demahy v. Schwarz Pharma, Inc.*, No. 11-31073, 2012 WL 6698692, at *1-4 (5th Cir. Oct. 25, 2012) (affirming dismissal of claims against branded manufacturers pursuant to *Foster*). In fact, 70 decisions applying the laws of 25 states have followed *Foster*'s lead in rejecting liability for brand-name manufacturers where a plaintiff's injuries allegedly resulted from using a generic competitor's equivalent product.[4] (*See* Appx. A (collecting cases).)

---

[4]    *See, e.g., Madden v. Teva Pharmaceuticals USA, Inc.*, No. 0087, 2012 WL 4757253 (Phila. Ct. C.P. Oct. 1, 2012) (applying Washington law); *Hogue v. Pfizer, Inc.*, ___ F. Supp. 2d ___, No. 2:10-cv-805, 2012 WL 4466609 (S.D. Ohio Sept. 27, 2012); *Baymiller*, 2012 WL 3929768; *Strayhorn v. Wyeth Pharmaceuticals, Inc.*, No. 2:11-cv-2058, 2012 WL 3217672 (W.D. Tenn. Aug. 8, 2012); *Lashley v.*

## 2. *Conte* and its Rationale Has Been Rejected by Courts Across the Country.

GSK anticipates that Plaintiff will point to a California state intermediate appellate court case, *Conte v. Wyeth*, 85 Cal. Rptr. 3d 299 (Cal. Ct. App. 2008), and a recent decision from the Alabama Supreme Court, *Wyeth, Inc. v. Weeks*, No. 1:10-cv-602, slip op. (Ala. Jan. 11, 2013) (attached as Ex. A), which followed *Conte*, as support for her position. *Conte*, decided under California law, set out the unprecedented theory that a plaintiff who ingests a generic medication is permitted to pursue misrepresentation claims against a brand-name manufacturer. Virtually every other reported decision to address this issue before or after this California case has rejected the reasoning of the *Conte* court.[5] *See, e.g., Gross v. Pfizer, Inc.*, No. 10-CV-00110, 2010 WL

_____

*Pfizer*, No. 1:09-cv-749, 2012 WL 2459148 (S.D. Miss. June 27, 2012); *Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114 (D. Or. Apr. 24, 2012); *Smith*, 657 F.3d 420 (applying Kentucky law); *Metz v. Wyeth*, 830 F. Supp. 2d 1291 (M.D. Fla. 2011); *Gross v. Pfizer*, No. 10-CV-00110, 2011 WL 4005266 (D. Md. Sept. 7, 2011); *Fisher*, 2010 WL 2998474; *Neal v. Teva Pharms. USA, Inc.*, No. 09-cv-1027, 2010 WL 2640170 (W.D. Ark. July 1, 2010); *Finnicum v. Wyeth, Inc.*, 708 F. Supp. 2d 616 (E.D. Tex. 2010); *Couick v. Wyeth, Inc.*, 691 F. Supp. 2d 643 (W.D.N.C. 2010); *Meade v. Parsley*, Civ. No. 09-388, 2009 WL 3806716 (S.D. W.Va. Nov. 13, 2009); *Morris v. Wyeth, Inc.*, No. 09-0854, 2009 WL 4064103 (W.D. La. Nov. 23, 2009); *Moretti*, 2009 WL 749532; *Huck v. Trimark Physicians Grp.*, No. LACV018947, 2009 WL 3760458 (Iowa Dist. Ct. Feb. 27, 2009); *Schrock v. Wyeth, Inc.*, 601 F. Supp. 2d 1262 (W.D. Okla. 2009); *Westerlund v. Wyeth*, No. MID-2174-05, 2008 WL 5592753 (N.J. Super. Ct. Law Div. Oct. 20, 2008); *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351 (N.D. Ga. 2008); *Goldych v. Eli Lilly & Co.*, No. 5:04-CV-1477, 2006 WL 2038436 (N.D.N.Y. July 19, 2006); *Colacicco*, 432 F. Supp. 2d 514; *Kelly v. Wyeth*, No. 03-CV-3314, 2005 WL 4056740 (Mass. Super. May 6, 2005); *Sheeks v. Am. Home Prods. Corp.*, No. 02CV337, 2004 WL 4056060 (Colo. Dist. Ct. Oct. 15, 2004); *Beutella v. A.H. Robins Co., Inc.*, No. 05-CV-2372, 2001 WL 35669202 (Utah Dist. Ct. Dec. 10, 2001); *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342 (Minn. Ct. App. May 15, 2001).

[5] Post-*Conte*, other than the Alabama Supreme Court in *Weeks*, only one court, applying Vermont law, has followed *Conte's* reasoning and found liability could attach for a brand-name manufacturer. *See Kellogg v. Wyeth*, 762 F.Supp.2d 694 (D. Vt. 2010). GSK submits that these two decisions reach an incorrect result and run contrary to the decisions of 25 other jurisdictions which have declined to hold a brand-name manufacturer liable where a plaintiff's purported injuries were allegedly caused by a generic form of the medication. Further, a more recent decision from the United States District Court of Vermont, *Lyman v. Pfizer*, calls into question the scope of the holding in *Kellogg*. No. 2:09-cv-262, 2012 WL 2970627 (D. Vt. July 20, 2012). Despite the fact that *Lyman* involved the same medication at issue in the *Kellogg* case, metoclopramide, the court granted summary judgment for the branded manufacturer on all of plaintiff's claims, including negligence and fraud. *See id.* at *16-19. In addition, a recent decision from the Eastern District of Kentucky followed *Conte* under the doctrine of *stare decisis* because the court found that California law controlled. *See In re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, MDL No. 11 -2226, 2012 WL 3842271, at *4-7 (E.D. Ky. Sept. 5, 2012) (applying

4485774, at *3 (D. Md. Nov. 9, 2010) (noting that *Conte* runs contrary to "the almost universal holding of both state and federal courts" that follow *Foster*); *Fisher*, 2010 WL 2998474, at *7 ("[T]he decision is in conflict with the law of this state and of this federal circuit. . . . *Conte* is in direct conflict with the weight of authority in the courts that have addressed the issue now before this Court."); *Phelps v. Wyeth, Inc.*, No. 09-6168, 2010 WL 2553619, at *2 (D. Or. May 28, 2010) (rejecting *Conte* and explaining that "I cannot find that a decision to hold a manufacturer liable for injury caused by its competitor's product is rooted in common sense."); *Burke v. Wyeth, Inc.*, No. G-09-00082, 2009 WL 3698480, at *3 (S.D. Tex. Oct. 7, 2009), adopted (S.D. Tex. Oct. 29, 2009) ("The California court's holding in *Conte* is anomalous."); *Moretti*, 2009 WL 749532, at *4 ("Simply put, *Conte* stands alone and is contrary to Nevada law and public policy."); *Baymiller*, 2012 WL 3929768, at *3-9 (rejecting argument to apply *Conte* in case where generic medication and not Paxil was ingested by the Plaintiff). Courts have done so because *Conte* allowed for liability by stretching the concept of "foreseeability" too far and did not consider that the branded medication was never ingested to cause the alleged harm.

Indeed *Conte*'s information-based liability could spread from brand-name manufacturers to insurers, professional organizations (*e.g.*, the American Psychiatric Association), and others who provide information to prescribers about medications, thus creating a vast and limitless dragnet for defendants in product liability cases. In addition to setting a dangerous precedent for

California law). However, the court's decision was based solely on a mechanical application of California law, and has no applicability to other jurisdictions. *See id.* at *4 ("The Court has previously found unpersuasive the argument that the manufacturer of a brand-name prescription drug may be held liable under a misrepresentation theory of liability to a plaintiff who ingested a generic product. However, this case implicates the laws of California.") (internal citation omitted); *see also In re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, MDL No. 11-2226, 2012 WL 3984871, at *1-2 (E.D. Ky. Sept. 10, 2012) (dismissing all claims brought against branded manufacturer by plaintiffs residing in Florida, Georgia, Michigan, Mississippi, New Hampshire, Oklahoma, South Carolina, Tennessee and Texas who failed to allege ingestion of the branded medication, but holding that two California plaintiffs could proceed under a theory of misrepresentation pursuant to California law).

the many different types of products that face generic competition and the sources providing information about them, adopting *Conte*'s rationale would discourage innovation within the pharmaceutical industry. *See, e.g., Foster*, 29 F.3d at 170. When a medication goes generic, revenues for the brand-name version of the medication drop precipitously within a short period of time. Often, branded companies stop selling the branded form of the medication altogether. But medications remain on the market for decades after they go generic. The decades' worth of policy supporting *Foster*'s application of products liability law properly ties the benefit of sales revenue to the duty of not generating sales of unreasonably dangerous products. While there is uncertainty about future claims of injury, *Foster* and traditional products liability law assume that a manufacturer is better able to insure against the risk involved with the medications that it manufactures. On the contrary, under the rationale of *Conte*, branded companies would remain potentially liable for as long as the generic forms are sold, even if they no longer manufacture or sell the medication themselves. The prospect of having to face this kind of indefinite liability would operate as a strong disincentive for vital research and development that branded companies conduct.

Thus, GSK submits that this Court should decline to create a "*Conte*" exception, and instead should follow the decisions from more than two dozen jurisdictions and four federal appellate courts rejecting liability for a brand-name manufacturer when the plaintiff's alleged injuries resulted from ingestion of a competitor's generic medication.

3.     **The Decision in *PLIVA, Inc. v. Mensing* Makes No Difference Here.**

GSK also anticipates that Plaintiffs will claim that the well-established law with respect to brand-name manufacturer liability set forth in *Foster* has been somehow called into question

by the Supreme Court's decision in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011). This argument is without merit.

In *Mensing*, the Supreme Court held that generic manufacturers of pharmaceutical products cannot be held liable under a failure to warn theory, because the FDA's current statutory labeling regime preempts any such cause of action. To be sure, it is now more difficult to bring failure to warn claims against manufacturers of generic drugs. But as found by a growing number of courts, *Mensing* did nothing to change the law with respect to **brand-name** pharmaceutical manufacturers' liability for injuries allegedly caused by a generic competitor's product. For example, the Eighth Circuit court that addressed *Mensing* on remand from the Supreme Court re-instated the part of its opinion that found no liability for the branded manufacturer for injuries allegedly caused by the generic medication. *Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011) (holding that the Supreme Court's *Mensing* decision did not undermine the part of its earlier opinion rejecting claims that a brand-named manufacturer can be held liable when a generic equivalent is ingested by the plaintiff and ordering reinstatement of judgment in favor of the brand-name manufacturers). In sum, *Mensing* did nothing to alter the reasoning of *Foster* given that *Mensing* focused solely on the question of whether federal law preempted claims against generic manufacturers and never addressed whether a plaintiff could pursue an action against a branded manufacturer when the generic medication was used and allegedly caused the claimed injuries.

A number of courts have reached this very conclusion. *See, e.g., Smith*, 657 F.3d at 423–24 (following supplemental briefing, rejecting plaintiffs' contention that *Mensing* undermined *Foster* and other decisions rejecting innovator liability); *Demahy*, 2012 WL 669869, at *4 (rejecting argument that *Mensing* overruled *Foster* because *Foster* based its decision on

Maryland law and "the conclusion that a name-brand manufacturer has no duty of care to consumers that are not using the manufacturer's product."); *Phelps*, 857 F. Supp. 2d at 1119 ("[W]hile *Mensing* overrules *Foster* with respect to a generic manufacturer's ability to alter labels, it does not overrule *Foster's* holding regarding the liability of name-brand manufacturers."); *Gross*, 2011 WL 4005266, at *2 ("The Supreme Court's holding in *Mensing* neither created nor abrogated any duty under [state] law with regard to brand-name-manufacturers."); *Metz*, 830 F. Supp. 2d at 1293-95 (rejecting argument that *Mensing* undermined *Foster*'s holding because *Foster* held that "irrespective of whether consumers could recover from generic manufacturers, a brand-name manufacturer simply has no duty of care to individual consumers that did not use the named brand manufacturer's product."); *Morris v. Wyeth, Inc.*, No. 3:09-cv-00854, 2011 WL 4975317, at *2–3 (W.D. La. Oct. 19, 2011) (same). Thus, *Weeks* incorrectly concluded that *Mensing* somehow altered the reasoning and viability of *Foster*. *See* Ex. A, *Weeks*, slip op. at 39-40.

**C. Under Illinois Law, GSK Cannot Be Held Liable For Injuries Allegedly Caused By Another Manufacturer's Product.**

Plaintiff cannot prevail on her product liability claims, for the reasons set forth *supra*, and her efforts to plead around that bar under Illinois products liability law must fail as well. The gravamen of all of Plaintiff's claims is that Mylan's product caused Mr. Dolin's alleged suicide and that GSK failed in "the duty to provide the medical community and the consuming public with a true and accurate warning regarding the increased risk of suicidal behavior in adults of all ages." (P's Cmpl. ¶¶ 3, 119, Ex.1 to Stmt. of Facts.) Regardless of how Plaintiff couches her claims, they are all barred under Illinois law because GSK did not manufacture, distribute or sell the immediate-release paroxetine that allegedly caused Mr. Dolin's death. Without this fundamental predicate, Plaintiff cannot establish the necessary elements of her claims.

11

1.     **Illinois Law Requires a Product Liability**
       **Plaintiff to Prove that the Defendant Manufactured**
       <u>**or Distributed the Product that Caused the Injury.**</u>

Each of Plaintiff's claims is barred because she cannot satisfy Illinois' threshold requirement of product identification. To sustain a product liability action in Illinois, "'there *must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product*.'" *Meshes v. Warren & Sweat Mfg. Co.*, No. 98 C 50064, 2001 WL 1002410, at *3 (N.D. Ill. Aug. 28, 2001) (citing *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 328, 137 Ill. 2d 222, 148 Ill. Dec. 22 (1990)) (emphasis added) (granting summary judgment for safety belt manufacturer). A basic tenet of Illinois tort law demands that, "whether [plaintiff's claims are] based on strict liability or negligence, *the plaintiff must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product*." *Firkin v. U.S. Polychem. Corp.*, No. 91 C 3660, 1993 WL 271526, at *1 (N.D. Ill. July 19, 1993) (emphasis added) (granting summary judgment for cleaning solution manufacturer). As stated by the Illinois Supreme Court: "A fundamental principle of tort law is that the plaintiff has the burden of proving by a preponderance of the evidence that the defendant caused the complained-of harm or injury; mere conjecture or speculation is insufficient proof." *Smith v. Eli Lilly & Co.*, 560 N.E.2d at 328, 137 Ill. 2d at 232, 148 Ill. Dec. at 26 (citations omitted); *see also Zimmer v. Celotex Corp.*, 549 N.E.2d 881, 883, 192 Ill. App. 3d 1088, 1091, 140 Ill. Dec. 230, 233 (1st Dist. 1989) (affirming summary judgment for defendant manufacturer, stating that "[i]n a products liability action the plaintiff must identify the manufacturer of the product and establish a causal relationship between the injury and the product.").

Put another way, in order to recover in a products liability action under Illinois law, regardless of the theory alleged, it is axiomatic that a plaintiff must show that the defendant's product *actually caused* the alleged injuries. *See Schmidt v. Archer Iron Works, Inc.*, 256 N.E.2d 6, 8-9, 44 Ill. 2d 401, 404-406 (1970) (in affirming trial court entry of judgment for manufacturer in products liability action, court ruled that manufacturer cannot be held liable for injuries caused by defective product when it did not manufacture, sell or deliver that product); *Sollami v. Eaton*, 772 N.E.2d 215, 219, 201 Ill. 2d 1, 7, 265 Ill. Dec. 177, 181 (2002) ("To recover in a product liability action, a plaintiff must plead and prove that the injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control") (citation omitted); *Torres v. Wilden Pump & Eng'g Co.*, 740 F. Supp. 1370, 1370-71 (N.D. Ill. 1990) (granting summary judgment for pump manufacturer because "[defendant] simply did not manufacture, design, or distribute the plastic plating machine that allegedly caused [plaintiff's] injuries"); *Naden v. Celotex Corp.*, 546 N.E.2d 766, 769, 190 Ill. App. 3d 410, 415, 137 Ill. Dec. 821, 824 (1st Dist. 1989) (affirming summary judgment for defendant manufacturer because "there is nothing that justifies an inference that decedent was exposed to defendants' products"); *Webber v. Armstrong World Indus., Inc.*, 601 N.E.2d 286, 290, 235 Ill. App. 3d 790, 796, 175 Ill. Dec. 889, 893 (4th Dist. 1992) (in affirming summary judgment in asbestosis case because plaintiff failed to establish that his injury was the result of exposure to any of the defendants' products, court stated, "[i]n a product liability action, plaintiffs must identify the manufacturer of the product and establish a causal relationship between the injury and the product.").

Indeed, the Illinois Supreme Court made clear over twenty years ago in *Smith v. Eli Lilly & Co.* that the plaintiff must show the defendant-manufacturer's product caused the injury. 560

N.E.2d 324, 137 Ill. 2d 222, 148 Ill. Dec. 22. In *Smith*, the plaintiff alleged that she had been injured by a prescription medication taken during her mother's pregnancy. Unable to identify the specific manufacturer of the medication that allegedly injured her, plaintiff named a host of manufacturers of the medication and argued that they were liable to her under a "market share" theory of liability. 560 N.E.2d at 326-27, 137 Ill. 2d at 226-29, 148 Ill. Dec. at 24-25. The Illinois Supreme Court rejected this attempt to conduct an end-run around the "causation in fact" requirement of Illinois tort law. In doing so, the *Smith* court stated that the fact that other companies "sold a similar product for similar purposes cannot fairly be held to have created a sufficient nexus that each company can be responsible for the injuries caused by the others' products, even under the unique facts surrounding the approval of the manufacturing of [the medication]." *Id.* at 341, 260, 39. The Illinois Supreme Court likewise outright dismissed the notion that it should "abrogate a fundamental precept of tort law" to hold the manufacturers liable. *Id.*

Plaintiff's theory in this case seeks a similar abrogation of the fundamental cornerstone of Illinois product liability law that the defendant-manufacturer's product ***must*** cause the injury. Here, Plaintiff admits that Stewart Dolin received (and allegedly ingested) a medication manufactured by another company (Mylan) and that ingestion allegedly caused his death. (P's Cmpl. ¶ 3, Ex.1 to Stmt. of Facts ("At the time of his suicide, Stewart was under the influence of the generic version of an antidepressant, Paxil, known generically as "paroxetine," manufactured by MYLAN Inc. ….").) Plaintiff makes this concession (as she must) because GSK did not manufacture, distribute or sell the immediate-release paroxetine received and allegedly ingested by Mr. Dolin. (*See* Siek Aff. ¶ 5-14, Ex.4 to Stmt. of Facts; Mylan Int. Responses, at 6-11, Ex. 8 to Stmt. of Facts.) Even though Plaintiff cannot establish any of these essential facts, Plaintiff

nonetheless seeks to side-step the fundamental requirement of *causation in fact* that the *Smith* plaintiff also sought to avoid (*i.e.*, establishing that the ingestion of **the defendant's medication**, as opposed to another company's, **caused** the alleged injury).  Plaintiff's effort to avoid this fundamental concept of Illinois law should be rejected, just as the Illinois Supreme Court rejected efforts in *Smith* to extend liability to prescription medication manufacturers when plaintiffs could not establish that the defendant's product was actually ingested and caused the alleged injury.

Because GSK was not involved in any way with the manufacture, distribution or sale of the immediate-release generic paroxetine that Plaintiff alleges Stewart Dolin ingested that resulted in his death, GSK cannot be held liable for Plaintiff's alleged injuries.

### 2. Plaintiff's Claims Fail Under Both Negligence and Strict Liability Theories.

While Plaintiff's Complaint includes a number of different Counts, those against GSK all boil down to a products liability lawsuit.  (*See, e.g.*, P's Compl. ¶ 22, Ex.1 to Stmt. of Facts ("The paroxetine label in existence at the time of Stewart Dolin's death did not warn of the drug's association with an increased risk of suicidal behavior in adults").)  In addition to Plaintiff's failure to prove an essential element of her claims against GSK (*i.e.*, that a GSK product, as opposed to one made by another company, was ingested by Stewart Dolin and caused him to commit suicide), Plaintiff's claims against GSK fail for other reasons as well, regardless of whether they are evaluated under a theory of strict liability or negligence.[6]

---

[6]     Plaintiff's Complaint includes the following claims against GSK: wrongful death, negligent misrepresentation/ concealment (Count I); wrongful death, fraudulent misrepresentation/ concealment (Count II); violation of Illinois Consumer Fraud and Deceptive Business Practices Act (Count III); strict product liability design defect (Count IV); strict product liability design defect due to failure to warn (Count V); wrongful death negligence (Count VI); wrongful death breach of express warranty (Count VII); wrongful death breach of implied warranty of merchantability (Count VIII).  Plaintiff also asserts a survival action claim against all defendants (Counts XX-XXXVIII).  However, a survival claim is not an

a. __Strict Liability.__

Plaintiff's claims against GSK cannot survive under a theory of strict liability (Counts

IV-V).  In order to sustain a strict liability claim, a Plaintiff has the burden of showing the

following elements: "(1) a condition of the product as a result of manufacturing or design, (2)

that made the product unreasonably dangerous, (3) and that existed at the time the product left

the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the

condition."  *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345, 231 Ill. 2d 516, 543, 327 Ill.

Dec. 1, 17 (2008); *Schultz v. Hennessy Indus., Inc.*, 584 N.E.2d 235, 241, 222 Ill. App. 3d 532,

540, 165 Ill. Dec. 56, 63 (1st Dist. 1991) ("To recover in strict liability in tort, a plaintiff must

prove that his injuries resulted from an unreasonably dangerous or defective condition of the

product and that the condition existed at the time the product ***left the manufacturer's control***.")

(emphasis added).  Significantly, "[a] manufacturer which is not is the business of placing the

product into the stream of commerce cannot be held strictly liable for defects in that product."

*Torres*, 740 F. Supp. at 1370 (citations omitted).  Cases addressing strict liability contemplate

liability only for those entities in the chain of distribution of the product at issue.  *See Kirk v.*

*Michael Reese Hosp. & Medical Ctr.*, 513 N.E.2d 387, 393, 117 Ill. 2d 507, 519-20, 111 Ill. Dec.

944, 950 (1987) ("It is recognized that a legal duty is imposed under strict liability upon those in

the original production chain of a product to the benefit of those individuals to whom injury from

a defective product may reasonably be foreseen"); *see also Murphy v. Mancari's Chrysler*

*Plymouth, Inc.*, 887 N.E.2d 569, 574, 381 Ill. App. 3d 768, 772-73, 320 Ill. Dec. 425, 430 (1st

Dist. 2008) (citing *Kellerman v. Crowe,* 518 N.E.2d 116, 117, 119 Ill. 2d 111, 115 Ill. Dec. 591

---

independent, substantive cause of action, but rather a separate mechanism by which a plaintiff may assert
underlying claims.  *See Advincula v. United Blood Services*, 678 N.E.2d 1009, 1029, 176 Ill. 2d 1, 42, 223
Ill. Dec. 1, 21 (1996) (noting that a claim under the survival statute is that of the deceased which arose
during his life and survived his death, and "[a]s such, a Survival Act claim is a derivative action based on
injury to the decedent, but brought by the representative of a deceased's estate in that capacity.")

(1987)) ("Under common law, all entities in the distributive chain of an allegedly defective product, including manufacturers, sellers, wholesalers, distributors and lessors of the product, are strictly liable in product liability actions for injuries resulting from that product.").  Otherwise, "strict" liability becomes "absolute liability".  *See Kirk*, 513 N.E.2d at 394, 117 Ill. 2d at 521, 111 Ill. Dec. at 951 (citing *Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 199, 79 Ill. 2d 26, 37 Ill. Dec. 304 (1980)).

Here, GSK cannot be held strictly liable for Mr. Dolin's injuries simply because GSK was not in the chain of distribution; never had control of the immediate-release paroxetine Mr. Dolin allegedly took; and in no way "manufactured, promoted, distributed, [or] marketed" this competitor's product.  (P's Compl. ¶ 23, Ex.1 to Stmt. of Facts; Siek Aff. ¶ 5-14, Ex.4 to Stmt. of Facts; Mylan Int. Responses, at 6-11, Ex.8 to Stmt. of Facts.)

### b. **Negligence.**

Plaintiff cannot maintain a claim for negligence (Count VI) against GSK because the alleged injuries resulted from the use of a competitor's product.  To be legally sufficient, a complaint for negligence "must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach."  *Kirk*, 513 N.E.2d at 395-96, 117 Ill. 2d at 525, 111 Ill. Dec. at 952-53; *see also Northern Trust Co. v. Upjohn,* 572 N.E.2d 1030, 1037, 213 Ill. App. 3d 390, 401, 157 Ill. Dec. 566, 573 (1st Dist. 1991) ("When a plaintiff attempts to prove that a drug manufacturer failed to adequately warn, he must first demonstrate that there was a duty to warn.") (citation omitted). Whether a defendant owes a duty to plaintiff "is an issue of law to be determined by the court." *Kirk*, 513 N.E.2d at 396, 117 Ill. 2d at 525, 111 Ill. Dec. at 953.

No "duty" is imposed upon a manufacturer that did not manufacture the product at issue. "The ***manufacturer has the duty*** of due care to design and manufacture a product that will be reasonably safe for its intended and any reasonably foreseeable uses." *Nat'l Bank of Bloomington v. Westinghouse Elec. Corp.*, 600 N.E.2d 1275, 1283-84, 235 Ill. App. 3d 697, 708, 175 Ill. Dec. 817, 825-26 (4th Dist. 1992) (emphasis added); *see Kirk*, 513 N.E.2d at 393, 117 Ill. 2d at 520, 111 Ill. Dec. at 950 ("the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen") (citation omitted). Indeed, as the Illinois Supreme Court made clear in *Smith v. Eli Lilly & Co.*, while a "manufacturer owes a duty to plaintiffs who will use its drug . . . the duty is not so broad as to extend to anyone who uses the type of drug manufactured by a defendant." 560 N.E.2d at 343, 137 Ill. 2d at 265, 148 Ill. Dec. at 41. GSK is aware of no Illinois case law imposing a duty of care on the manufacturer of a product where the plaintiff's alleged injuries resulted from a competitor's product. Rather, as discussed above, Illinois courts, including the Illinois Supreme Court, have rejected efforts to expand liability to manufacturers where it could not be established that the manufacturer's product caused the alleged injury.

Here, GSK —which did not manufacture the medication allegedly ingested— owed no duty of care to Stewart Dolin. It is axiomatic that a manufacturer has no duty to warn about a different manufacturer's product. To hold GSK responsible under these circumstances would improperly make brand-name manufacturers responsible for every injury caused by equivalent products made by every generic manufacturer in the United States. *See Smith v. Eli Lilly & Co.*, 560 N.E.2d at 344, 137 Ill. 2d at 266, 148 Ill. Dec. at 42 ("Abrogation of these concepts [of causation in fact] would also result in violating the principle that manufacturers are not insurers

of their industry.")  As discussed *supra*, such an inequitable, unprecedented, and illogical result would have a devastating impact on the entire pharmaceutical industry.

>    **3.**      **Plaintiff Cannot Succeed on Her Remaining Claims.**

Because GSK did not manufacture, distribute, supply, or sell the medication that Stewart Dolin allegedly ingested in the days preceding his death, any remaining claims asserted by Plaintiff must also fail.

Specifically, Plaintiff's warranty claims (Counts VII-VIII) fail as a matter of law because GSK did not sell the paroxetine that allegedly caused Plaintiff's injuries.  Illinois warranty law requires that claims for either breach of express or implied warranty be brought against the ***seller*** of the product at issue.  *See* 810 Ill. Comp. Stat. Ann. 5/2-313(1) (West 1961) (addressing "[e]xpress warranties ***by the seller***.") (emphasis added); *id.* at 5/2-314(1) ("a warranty that the goods shall be merchantable is implied in a contract for their sale if ***the seller*** is a merchant…") (emphasis added).  Here, no warranty claims can stand against GSK because it was not the seller of the immediate-release paroxetine that allegedly caused Plaintiff's injuries.

Similarly, Plaintiff cannot circumvent the flaws in her products liability claims by couching those claims in terms of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III).  *See, e.g.*, *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 219-20, 208 Ill. 2d 517, 528-29, 281 Ill. Dec. 845, 851-52 (2004) (affirming summary judgment for manufacturer where manufacturer's alleged deceptive advertising did not proximately cause plaintiff's damages); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 201 Ill. 2d 134, 267 Ill. Dec. 14 (2002) (affirming dismissal of plaintiff's deceptive advertising claim).  Again, where GSK did not manufacture or sell the product that caused Plaintiff's alleged injuries, there can be no liability. Moreover, nowhere does Plaintiff allege in her Complaint that Stewart Dolin viewed any

information about immediate-release paroxetine or Paxil, much less that this information caused

him to ingest generic paroxetine.  This failure alone requires dismissal of Count III.  *Oliveira v.*

*Amoco Oil Co.*, 776 N.E.2d at 155, 201 Ill. 2d at 163, 267 Ill. Dec. at 26 (dismissing claim under

Illinois Consumer Fraud and Deceptive Business Practices Act where plaintiff failed to allege

that he ever saw, heard or read any of the defendant's advertisements).

Similarly, Plaintiff's misrepresentation and concealment claims (Counts I-II) are merely

another attempt to disguise the fact that this is a products liability lawsuit.  Plaintiff makes this

clear in both Counts I and II where she alleges that "As a pharmaceutical company . . ., GSK has

and had an affirmative duty to warn the public and medical community regarding known risks

associated with its pharmaceutical products."  (*See* P's Compl. at Count I, ¶ 123; Count II, ¶ 134

(same).)   Indeed, the allegations in both of those Counts underscore that the gravamen of

Plaintiff's claims is that Mr. Dolin's alleged ingestion of paroxetine caused his death and that

GSK failed to warn about Paxil's alleged risks.  If Plaintiff were allowed to proceed under a

claim of misrepresentation or concealment, the basic tenets of Illinois products liability law

would be turned on their head.

Regardless of how Plaintiff couches her products liability claim, she cannot avoid the

fundamental principle that it is impermissible to punish a brand-name manufacturer for injuries

allegedly caused by a direct competitor.  In fact, a number of courts confronting this very issue in

cases such as this one have seen through transparent attempts to recast products liability claims

into ones of "misrepresentation" or "fraud".  *See, e.g.*, *Foster*, 29 F.3d at 168 ("Although actions

for negligent misrepresentation arise in many contexts other than products liability, in this case

the allegations of negligent misrepresentation are an effort to recover for injuries caused by a

product without meeting the requirements the law imposes in products liability actions" . . . "[A]

plaintiff seeking to recover for an injury by a product [must] demonstrate that the defendant manufactured the product at issue."); *Moretti*, 2009 WL 749532 at *4 ("Plaintiff's claims against [the brand name drug manufacturers] fail because neither defendant manufactured the product that injured Plaintiff . . . [t]his result remains the same regardless of whether Plaintiff characterizes her claims as misrepresentation/fraud or claims arising in product liability.") (citations omitted); *Metz*, 830 F. Supp.2d at 1292-93 (granting summary judgment because plaintiffs never ingested the defendant's branded medication despite argument that claims based on alleged "misrepresentations" by the branded manufacturer "fall outside" this "general rule"). Therefore, Plaintiff's misrepresentation and concealment claims (Counts I and II) also fail as a matter of law and must be dismissed.

Moreover, Plaintiff's claims for negligent misrepresentation (Count I) and fraudulent misrepresentation (Count II) fail for the same reason as Plaintiff's other tort-based claims: GSK had no relationship of any kind with, and thus owed no legal duty to, the users of its competitor's product. And GSK obviously derived no economic benefit from the alleged misstatements at issue when Mr. Dolin elected to purchase *Mylan's* product. Thus, Plaintiff's misrepresentation theories are not only legally deficient because Mr. Dolin had no relationship with GSK but are implausible on their face because he was not even the target of the alleged fraud.

Finally, there is no way around the fact that Mr. Dolin *elected* to purchase and allegedly use *Mylan's* product (not GSK's). Accordingly, both Plaintiff and he lack standing to complain about alleged misstatements that were supposedly designed to induce Mr. Dolin to buy and ingest *GSK's* product (not Mylan's). At the very least, Mr. Dolin's voluntary decision to purchase and allegedly ingest Mylan's product instead of GSK's represents a break in the chain

of causation between the alleged misrepresentations and any alleged injury. Plaintiff's

misrepresentation claims therefore fail as a matter of both law and common sense.

**D.      Holding GSK Liable For Injuries Allegedly Caused by Another
         Manufacturer's Product Would Violate the Fourteenth Amendment.**

Fourteenth Amendment due process principles require that a defendant not be held liable

for acts committed by others. *See Philip Morris USA v. Williams*, 549 U.S. 346 (2007); *State

Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). In *State Farm*, for example, the

Court ruled that substantive due process bars a court from punishing a defendant for conduct

unrelated to the plaintiff's actual harm. Specifically, the Court held that "[a] defendant's

dissimilar acts, independent from the acts upon which liability was premised, may not serve as

the basis for punitive damages. *A defendant should be punished for the conduct that harmed the

plaintiff*, not for being an unsavory individual or business." 538 U.S. at 422-23 (emphasis

added). Similarly, in *Philip Morris*, the Court stressed its finding that awarding punitive

damages to a plaintiff based on harm caused to non-parties violates the defendant's substantive

due process rights. 549 U.S. at 356-57 ("We did not previously hold explicitly that a jury may

not punish for the harm caused others. But we do so hold now."). And in 2010, faced with

determining liability of defendant paint manufacturers on a state-law market share liability

theory, the court in *Gibson v. American Cyanamid, Inc.* read *State Farm* and *Philip Morris* to

"stand for the principle that it violates due process to impose damages for the wrongful conduct

of others." 719 F. Supp. 2d 1031, 1052 (E.D. Wisc. 2010). Plaintiff's cause of action here,

lacking any nexus connecting GSK's product to the Plaintiff's alleged harm, must fail.

### III.    CONCLUSION

For the foregoing reasons, GSK respectfully requests that this Court grant summary

judgment for GSK; dismiss Plaintiff's Complaint with prejudice; and grant GSK such other and

further relief as it deems just and proper.


Dated:  January 18, 2013                    Respectfully submitted,

                                            By:  /s/  Christopher R. Benson
                                            Alan S. Gilbert (No. 953210)
                                            Melissa Economy (No. 6282802)
                                            SNR DENTON US LLP
                                            233 S. Wacker Drive, Suite 7800
                                            Chicago, Illinois  60606-6404
                                            Telephone:  (312) 876-8000
                                            Facsimile:  (312) 876-7934

                                            Andrew T. Bayman (*pro hac vice*)
                                            Todd P. Davis (*pro hac vice*)
                                            David F. Norden (*pro hac vice*)
                                            Christopher R. Benson (*pro hac vice*)
                                            KING & SPALDING LLP
                                            1180 Peachtree Street, N.E.
                                            Atlanta, GA 30309-3521
                                            Telephone:  (404) 572-4600
                                            Facsimile:  (404) 572-5100

                                            *Attorneys for GlaxoSmithKline LLC*

## CERTIFICATE OF SERVICE

It is hereby certified that on January 18, 2013, I electronically filed the foregoing DEFENDANT GLAXOSMITHKLINE LLC'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

/s/ Christopher R. Benson
Counsel for Defendant GSK