# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WENDY B. DOLIN, Individually and as Independent Executor of the ESTATE OF STEWART DOLIN, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:12-cv-06403 |
| | ) | The Honorable James B. Zagel |
| SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE, a Pennsylvania Corporation; MYLAN, INC., a Pennsylvania Corporation; and H.D. SMITH WHOLESALE DRUG CO., a Delaware Corporation with its principal place of business in Illinois, | ) ) ) ) ) ) | The Honorable Arlander Keys |
| Defendants. | ) | |

## DEFENDANT MYLAN INC.'S AMENDED MOTION TO DISMISS

## TABLE OF CONTENTS

*Table of Contents* ................................................................................................................. i

*Table of Authorities* ............................................................................................................. ii

**I. Introduction** ....................................................................................................................1

**II. Plaintiff's Allegations** ...................................................................................................2

**III. Summary of Argument** ...............................................................................................4

**IV. Standard** ........................................................................................................................6

**V. Argument** ........................................................................................................................7

      a. All claims sounding in failure to warn are preempted ........................................7

      b. Plaintiff does not state a design defect claim upon which relief can be granted ..........11

      c. Even if properly pleaded, Plaintiff's design defect claim is preempted ........................17

**VI. Conclusion** ...................................................................................................................22

TABLE OF AUTHORITIES

## Cases

Abicht v. PLIVA, Inc.,
    No. 12-1278 PAM/JJG, 2013 WL 141724 (D. Minn. Jan. 9, 2013)....................................8

Anderson v. Hyster Co.,
    385 N.E.2d 690 (Ill. App. 1979) ....................................................................14

Andrx Pharms., Inc. v. Biovail Corp. Int'l,
    256 F.3d 799 (D.C. Cir. 2001) ......................................................................21

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009)................................................................4, 5, 6, 7, 17

Aucoin v. Amneal Pharms., LLC,
    No. 11-1275, 2012 WL 2990697 (E.D. La. July 20, 2012) ................................18

Baisden v. Bayer Corp.,
    275 F. Supp. 2d 759 (S.D. W. Va. 2003) ...........................................................5

Bartlett v. Mut. Pharm. Co., Inc.,
    678 F.3d 30 (1st Cir. 2012) cert. granted, 133 S. Ct. 694 (U.S. 2012) .............20

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).............................................................................passim

Bowman v. Wyeth, LLC,
    No. 10-1946 JNE/SER, 2012 WL 684116 (D. Minn. Mar. 2, 2012)..............10, 19

Brinkley v. Pfizer, Inc.,
    No. 10-0274-CV-W-SOW, 2012 WL 1865402 (W.D. Mo. May 22, 2012)...............8

Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54,
    468 U.S. 481 (1984)....................................................................................22

Calles v. Scripto-Tokai Corp.,
    864 N.E.2d 249 (Ill. 2007) ...........................................................................14

Coney v. Mylan Pharms. Inc.,
    --- F. Supp. 2d ----, 2012 WL 170143 (N.D. Ga. Jan. 19, 2012) ..................7, 13

Demahy v. Actavis, Inc.,
    650 F.3d 1045 (5th Cir. 2011) .....................................................................10

Demahy v. Schwarz Pharma, Inc.,
    --- F.3d ----, 2012 WL 6698692 (5th Cir. Oct. 25, 2012) ..................................... 10, 18, 20

Eckhardt v. Qualitest Pharms. Inc.,
    No. M-11-235, 2012 WL 1511817 (S.D. Tex. Apr. 30, 2012) ..................................... 7, 18

Frazier v. Mylan Inc.,
    --- F. Supp. 2d ----, 2012 WL 6641626 (N.D. Ga. Dec. 18, 2012) .............................. 18, 20

Fulgenzi v. PLIVA, Inc.,
    867 F. Supp. 2d 966 (N.D. Ohio 2012) ........................................................... 8, 19

Fullington v. PLIVA, Inc.,
    No. 4:10CV00236 JLH, 2011 WL 6153608 (E.D. Ark. Dec. 12, 2011) ...................... 8, 19

Fullington v. PLIVA, Inc.,
    No. 4:10CV00236 JLH, 2012 WL 1893749 (E.D. Ark. May 23, 2012) ........................... 20

Gaeta ex rel. A.G. v. Perrigo Pharms. Co.,
    469 F. App'x. 556 (9th Cir. 2012) ............................................................... 10

Gardley-Starks v. Pfizer, Inc.,
    No. 4:10-CV-099-SA-JMV, 2013 WL 139900 (N.D. Miss. Jan. 10, 2013) ....... 9, 18, 19, 20

Geier v. American Honda Co.,
    529 U.S. 861 (2000) ........................................................................... 21, 22

General Elec. Capital Corp. v. Lease Resolution Corp.,
    128 F.3d 1074 (7th Cir. 1997) .................................................................. 11

Giles v. Wyeth, Inc.,
    500 F. Supp. 2d 1063 (S.D. Ill. 2007) .......................................................... 11

Grinage v. Mylan Pharms., Inc.,
    840 F. Supp. 2d 862 (D. Md. 2011) ............................................................. 16

Gross v. Pfizer, Inc.,
    825 F. Supp. 2d 654 (D. Md. 2011) ...................................................... 10, 19, 22

Guarino v. Wyeth LLC,
    823 F. Supp. 2d 1289 (M.D. Fla. 2011) .......................................................... 10

Haddix v. Playtex Family Prods. Corp.,
    138 F.3d 681 (7th Cir. 1998) .................................................................... 15

Heisner ex rel. Heisner v. Genzyme Corp.,
    No. 08-C-593, 2008 WL 294088 (N.D. Ill. July 25, 2008) ............................................... 11

Henderson v. Sun Pharms. Indus., Ltd.,
    No. 4:11-CV-0060-HLM, 2011 WL 4024656 (N.D. Ga. June 9, 2011) ..................... 11, 13

Henderson v. Sun Pharms. Indus.,
    809 F. Supp. 2d 1373 (N.D. Ga. 2011) ......................................................................... 10, 13

Hines v. Davidowitz,
    312 U.S. 52 (1941) ............................................................................................................. 21

Horne v. Novartis Pharms. Corp.,
    541 F. Supp. 2d 768 (W.D.N.C. 2008) ............................................................................. 10

Hunt v. Blasius,
    384 N.E.2d 368 (Ill. 1978) ..................................................................................... 12, 13, 20

In re Accutane Prods. Liab. Lit.,
    MDL No. 1626, 2011 WL 6224546 (M.D. Fla. Nov. 9, 2011) ....................................... 1, 9

In re Accutane Prods. Liab.,
    MDL No. 1626, 2012 WL 3194952 (M.D. Fla. Aug. 7, 2012) ..................................... 7, 18

In re Darvocet, Darvon and Propoxyphene Prod. Liab. Lit.,
    No. 2:11-md-2226-DCR, 2012 WL 718618 (E.D. Ky. Mar. 5, 2012) ................................ 7

In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.,
    No. 2:11-MD-2226-DCR, 2012 WL 2457825 (E.D. Ky. June 22, 2012) ................... 19, 20

In re: Fosamax (Alendronate Sodium) Prods. Liab. Lit.,
    No. 08-008 (GEB-LHG), 2011 WL 5903623 (D.N.J. Nov. 21, 2011) ........................ 18, 19

In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II),
    MDL No. 2243 JAP-LHG, 2012 WL 181411 (D.N.J. Jan. 17, 2012) ................................. 8

In re Pamidronate Prods. Liab. Litig.,
    842 F. Supp. 2d 479 (E.D.N.Y. 2012) .............................................................................. 18

In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,
    692 F. Supp. 2d 1012 (S.D. Ill. 2010) ............................................................................... 11

Jablonski v. Ford Motor Co.,
    955 N.E.2d 1138 (Ill. 2011) .............................................................................................. 12

Johnson v. Teva Pharms. USA, Inc.,
    No. 2:10 CV 404, 2012 WL 1866839 (W.D. La. May 21, 2012) ........................... 18, 19, 20

Kirk v. Michael Reese Hosp. and Medical Center,
    513 N.E.2d 387 (Ill. 1987) ................................................................................. 10

Kurns v. Railroad Friction Prods. Corp.,
    132 S. Ct. 1261 (2012) ........................................................................................ 8

Lashley v. Pfizer, Inc.,
    877 F. Supp. 2d 466 (S.D. Miss. 2012) ....................................................... 18, 20

Lawson v. G. D. Searle & Co.,
    356 N.E.2d 779 (Ill. 1976) ................................................................................ 16

Lyman v. Pfizer, Inc.,
    No. 2:09-CV-262, 2012 WL 368675 (D. Vt. Feb. 3, 2012) ......................... 18, 19

Mensing v. Wyeth, Inc.,
    658 F.3d 867 (8th Cir. 2011) ....................................................................... 10, 20

Metz v. Wyeth, LLC,
    No. 8:10–CV–2658–T–27AEP, 2011 WL 5024448 (M.D. Fla. Oct. 20, 2011) ................ 10

Metz v. Wyeth LLC,
    872 F. Supp. 2d 1335 (M.D. Fla. 2012) ....................................................... 10, 18

Mikolajczyk v. Ford Motor Co.,
    901 N.E.2d 329 (Ill. 2008) ........................................................................... 12, 14

Mohr v. Targeted Genetics, Inc.,
    No. 09-3170, 2009 WL 4021153 (C.D. Ill. Nov. 18, 2009) ............................... 16

Moore v. Mylan Inc.,
    840 F. Supp. 2d 1337 (N.D. Ga. 2012) ................................................. 11, 13, 22

Moretti v. Mutual Pharm. Co.,
    No. 10-896, 2012 WL 465867 (D. Minn. Feb. 13, 2012) ............................... 8, 19

Moretti v. PLIVA, Inc.,
    No. 2:08-CV-00396-JCM, 2012 WL 628502 (D. Nev. Feb. 27, 2012) .............. 19

Papike v. Tambrands, Inc.,
    107 F.3d 737 (9th Cir. 1997) ............................................................................ 15

Patterson v. Rohm Gesellschaft,
608 F. Supp. 1206 (N.D. Tex. 1985) ................................................................................. 13

Phelps v. Wyeth, Inc.,
857 F. Supp. 2d 1114 (D. Or. 2012) ................................................................................. 10

Pirello v. Qualitest Pharmaceuticals, Inc.,
No. 10-298-BAJ, 2012 WL 5363243 (M.D. La. Oct. 30, 2012) ......................................... 20

PLIVA, Inc. v. Mensing,
564 U.S. ----, 131 S. Ct. 2567, reh'g denied, 132 S. Ct. 55 (2011) ............................ passim

Purvis v. Teva Pharmaceuticals, USA, Inc.,
No. 10-807-BAJ, 2012 WL 5364392 (M.D. La. Oct. 30, 2012) ......................................... 20

Reece v. Good Samaritan Hosp.,
953 P.2d 117 (Wash. App. 1998) ..................................................................................... 15

Robinson v. McNeil Consumer Healthcare,
615 F.3d 861 (7th Cir. 2010) ........................................................................................... 19

Rogers v. Clark Equipment Co.,
744 N.E.2d 364 (Ill. App. 2001) ...................................................................................... 19

Salerno v. Innovative Surveillance Tech., Inc.,
932 N.E.2d 101 (Ill. App. 2010) ...................................................................................... 13

Salvio v. Amgen, Inc.,
810 F. Supp. 2d 745, 751 (W.D. Pa. 2011) ........................................................................ 9

Schrock v. PLIVA USA, Inc.,
No. 08-453-M, 2011 WL 6122768 (W.D. Okla. Dec. 8, 2011) ......................................... 10

Smith v. Wyeth, Inc.,
657 F.3d 420 (6th Cir. 2011) ..................................................................................... 10, 20

Stevens v. PLIVA, Inc.,
No. 6:10-0886, 2011 WL 6224569 (W.D. La. Nov. 15, 2011) .......................................... 18

Strayhorn v. Wyeth Pharms., Inc.,
--- F. Supp. 2d ----, 2012 WL 3261377 (W.D. Tenn. Aug. 8, 2012) ............................ 19, 20

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007) ........................................................................................................... 9

Tillman v. Taro Pharm. Indus. Ltd.,
    No. 10-CV-04202, 2011 WL 3704762 (N.D. Ill. Aug. 17, 2011) ............................... 11, 16

Townsend v. Sears, Roebuck & Co.,
    879 N.E.2d 893 (Ill. 2007) ............................................................................................ 12

Truddle v. Wyeth, LLC,
    No. 2:11-CV-00207-GHD, 2012 WL 3338715 (N.D. Miss. Aug. 14, 2012) ...................... 7

Woodill v. Parke Davis & Co.,
    402 N.E.2d 194 (Ill. 1980) ............................................................................................ 16

**Statutes**

21 U.S.C. § 355(a) ...................................................................................................................... 18

21 U.S.C. § 355(j) ....................................................................................................................... 17

21 U.S.C. § 355(j)(2)(A)(ii)(I) .................................................................................................... 18

21 U.S.C. § 355(j)(2)(v) ............................................................................................................... 9

**Other Authorities**

71 Fed. Reg. 3,922, 3,934 (Jan. 24, 2006) ................................................................................ 15

Federal Rule of Civil Procedure 8 ........................................................................................... 4, 6

Federal Rule of Civil Procedure 9 ............................................................................................ 11

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 5, 9

H.R.Rep. No. 98-857(I), at 14–15 (1984), reprinted in 1984 U.S.C.C.A.N. 2647, 2647–48 ... 21

U.S. Const. Art. IV, cl. 2 ............................................................................................................. 20

**Secondary Sources**

David G. Owen, Inherent Product Hazards, 93 Ky. L.J. 377, 379–380 (2005) ........................ 15

RESTATEMENT (SECOND) OF TORTS § 402A cmt. h (1965) ...................................................... 16

RESTATEMENT (SECOND) OF TORTS § 402A cmt. k (1965) ...................................................... 16

## DEFENDANT MYLAN INC.'S AMENDED MOTION TO DISMISS

AND NOW comes Defendant Mylan Inc., by and through its undersigned counsel, and files this Amended Motion to Dismiss.[1,2] In support thereof, Mylan states further:

## I.    INTRODUCTION

The first paragraph of Plaintiff's Complaint tells the Court everything it needs to know to resolve this motion: "This is an **unlawful misrepresentation** . . . case arising out of the **generic** Paxil-induced suicide" of Stewart Dolin ("Decedent").[3] (Docket No. 1-1, Complaint ("Compl.") ¶ 1 (emphasis supplied).)

That is because, as of June 23, 2011, "any state-law claim involving a generic drug label or warning is preempted and must be dismissed with prejudice . . . ." In re Accutane Prods. Liab. Lit., MDL No. 1626, 2011 WL 6224546, at *2 (M.D. Fla. Nov. 9, 2011) (citing PLIVA, Inc. v. Mensing, 564 U.S. ----, 131 S. Ct. 2567, reh'g denied, 132 S. Ct. 55 (2011)). Indeed, the Supreme Court of the United States held in Mensing that federal law preempts lawsuits

---

[1] This Amended Motion to Dismiss is intended to replace Mylan Inc.'s original Motion to Dismiss (see generally Docket No. 22), which was filed on August 21, 2012 and stayed pending the Court's resolution of jurisdictional issues. (See Docket No. 47, Minute Entry (staying Mylan Inc.'s Motion to Dismiss).) Those issues have now been resolved (see Docket No. 73, Memorandum Opinion and Order, at 3 (denying Plaintiff's Motion to Remand)), and the Court authorized Mylan Inc. to supplement and amend its original Motion to Dismiss during the status conference held on January 10, 2013. (See Docket No. 74, Minute Entry.)

[2] Plaintiff suggests that Mylan Inc. manufactured the drug at issue. (Compl. ¶ 3.) This is incorrect. Mylan Inc. is a holding company; it does not manufacture or distribute any products. Instead, and without waiving or in any way conceding the issue of product identification, Mylan Pharmaceuticals Inc. ("MPI") – a wholly owned subsidiary of Mylan Inc. – manufactures immediate-release paroxetine pursuant to the U.S. Food and Drug Administration's ("FDA's") approval of Abbreviated New Drug Application ("ANDA") 78-902. (See Letter from FDA to MPI Approving ANDA 78-902, March 13, 2008, attached hereto as Exhibit "A.") For purposes of this brief, "Mylan" will refer to MPI and Mylan Inc., collectively.

[3] Mylan's original Motion to Dismiss suggested Decedent used a generic form of Paxil CR®, which is a "controlled-release" (as opposed to "immediate-release") formulation. (See Docket No. 22, at 1, 5 n.12.) This assumption was based on Plaintiff's reference to Paxil CR® in her Complaint (see Compl. ¶ 23), coupled with Plaintiff's allegation that Paxil first began marketing "paroxetine" in 2007. (Id. ¶ 25.) Presuming that Plaintiff was referring to the paroxetine formulation actually used by Decedent, and because the only formulation of Mylan's paroxetine approved in 2007 was the controlled release variety, Mylan proceeded to demonstrate that its controlled release paroxetine met the federal duty of "sameness" with respect to Paxil CR®. With the benefit of discovery, however, it is now clear that Decedent was prescribed immediate-release paroxetine. (See Docket No. 61-1, Declaration of Eddie Levin, at ¶ 5 (providing the National Drug Code ("NDC") number for Mylan's 10 mg immediate-release paroxetine).) Accordingly, the exhibits attached to this Amended Motion to Dismiss relate to Mylan's immediate-release paroxetine, which was approved by the FDA on March 13, 2008. (See Exhibit "A.")

challenging the adequacy of *warnings* provided with *generic* prescription drugs. 131 S. Ct. at 2581. Here, Plaintiff has sued Mylan – a manufacturer of *generic* drugs – alleging that the *warnings* provided with its paroxetine were somehow defective. These claims are meritless.

But controlling Supreme Court precedent categorically foreclosing Plaintiff's claims is just the beginning. In fact, even if <u>Mensing</u> were wiped from the books, Plaintiff's claims must still be dismissed for failing to meet federal pleading standards, not to mention the learned-intermediary doctrine and "purposes-and-objectives" preemption, among others. In short, and for numerous reasons, Mylan submits that even at this early stage of litigation, it is beyond doubt that Plaintiff's causes of action against Mylan are legally foreclosed. For that reason, Mylan respectfully requests that the Court dismiss them in their entirety, with prejudice.

## II.    PLAINTIFF'S ALLEGATIONS[4]

Plaintiff claims that a generic drug – ostensibly, Mylan's paroxetine – caused Decedent to commit suicide. (Compl. ¶¶ 1, 3.) Paroxetine is the generic alternative to GSK's brand-name product, Paxil®,[5] a psychotropic drug approved by the FDA for, *inter alia*, treatment of major depressive disorder. Decedent's physician wrote him a prescription for Paxil® in June 2010 to help him "deal with work[-]related anxiety and depression." (<u>Id.</u> ¶ 15.) Though the prescription was written for Paxil®, Decedent ultimately received a generic form of the drug. (<u>Id.</u>) On July 15, 2010, he committed suicide while "under the influence of [paroxetine]." (<u>See id.</u> ¶¶ 1, 3, 17.)

According to Plaintiff, "Paxil (paroxetine) and other similar serotonergic antidepressants called selective serotonin reuptake inhibitors [] can cause an adverse reaction called akathisia," which "has been associated with suicidal behavior for decades." (<u>Id.</u> ¶¶ 19, 20.) "[P]rior to

---

[4] This information is derived from Plaintiff's Complaint. Mylan recites Plaintiff's factual allegations solely to provide context for the Court's legal rulings and expressly denies that Plaintiff's allegations comprise a complete or accurate description of the facts relevant to her claims.

[5] <u>See</u> *supra* note 3.

[Decedent's suicide], GSK had the knowledge [and] the means . . . to provide the medical community and the consuming public with a true and accurate warning regarding the increased risk of suicidal behavior in adults of all ages." (Id. ¶ 119.) Nonetheless, GSK "concealed the risk[] and instead promoted Paxil as safe and effective." (Id. ¶ 27.)

Because GSK supposedly defrauded federal regulators, medical practitioners, and the public at large, Plaintiff alleges that the warnings provided with Paxil® – and, by necessary extension,[6] Mylan's paroxetine – were inadequate. More specifically, Plaintiff avers that "[t]he paroxetine label in existence at the time of [Decedent's] death did not warn of the drug's association with an increased risk of suicidal behavior in adults despite GSK's knowledge of a statistically significant 6.7 times greater risk in adults of all ages." (Id. ¶ 22.) "In fact, the label stated the opposite – that the suicidality risk did not extend beyond the age of 24." (Id.)

And finally, according to Plaintiff, but for GSK's decades-long scheme, Decedent would have never been prescribed paroxetine and, therefore, never committed suicide. That is because

> [a]t the time the aforesaid representations and/or omissions were made by GSK, and at the time [Decedent] ingested paroxetine, he, Plaintiff and his medical providers were unaware of the falsity of said representations and/or omissions and reasonably relied on GSK's assertions . . . that the drug was safe and effective when, in fact, it was not. In reliance upon said representations and/or omissions, [Decedent's] medical provider prescribed paroxetine and [Decedent] was induced to take paroxetine. Had [his] medical provider been made aware of paroxetine's risks, he would not have prescribed the drug, or he would have warned [Decedent] of the risk and precursor symptoms that could lead to suicide. Had [Decedent] known of the actual dangers of paroxetine, through his medical providers or otherwise, he would not have ingested paroxetine, or he would have ceased taking it or otherwise sought help once its side effects (which were known or should have been known to . . . GSK . . .) became apparent.

(Id. ¶¶ 127–29.)

Plaintiff's Complaint spans 62 pages and 270 paragraphs, but can be neatly summarized in just one (albeit compound) sentence: Paxil®/paroxetine has certain inherent risks that were

---

[6] See infra Section V, subsection a, discussing Mensing and the federal duty of "sameness."

3

known by GSK but not adequately disclosed in the product labeling, and because of this inadequacy, Decedent ingested Paxil®/paroxetine leading to his suicide. Or, as Plaintiff tells it, "[t]his is an unlawful misrepresentation . . . case[.]" (Id. ¶ 1.)

## III.   SUMMARY OF ARGUMENT

Though Mylan is identified as the manufacturer of the supposedly defective product (id. ¶ 3), Plaintiff spends nearly two-hundred paragraphs in her Complaint describing GSK's clinical trials, regulatory activity, and potential liability. (Id. ¶¶ 27–188.) Significantly, *none* of this alleged wrongdoing is attributed to Mylan. In fact, the bulk of Plaintiff's Complaint describes activity that predates the FDA's 2008 approval of Mylan's paroxetine, and information that was unavailable to Mylan, the FDA, or the general public. And after chronicling GSK's so-called concealment of the risks associated with Paxil®/paroxetine for nearly forty pages, Plaintiff baldly (and paradoxically) suggests Mylan "knew or should have known" of these risks. (See Compl. ¶¶ 28, 189–240.) Tellingly, when it came time for Plaintiff to explain what Mylan did wrong, she simply copied and pasted many of the same counts she had levied against GSK, while omitting GSK-specific facts.[7] But that's just another way of saying that Plaintiff omitted *all* facts.

Suffice it to say, the one and only allegation of fact pleaded against Mylan is that it manufactured the paroxetine used by Decedent. (Compl. ¶ 3.) That's it. The other 269 paragraphs of the Complaint are either (1) allegations against co-Defendant GlaxoSmithKline ("GSK") or former-Defendant H.D. Smith, or (2) bald legal conclusions that can be disregarded by the Court. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009) (holding that Federal Rule of Civil Procedure ("Rule") 8 "does not unlock the doors of discovery for a plaintiff armed with nothing

---

[7] Compare, e.g., Compl. ¶ 191(g) (alleging Mylan "[n]egligently and carelessly denied [p]aroxetine's association with serious or deadly thoughts or acts of self-harm"); with ¶ 125(k) (alleging GSK "[n]egligently and carelessly denied paroxetine's association with serious or deadly thoughts or acts of self-harm **when its own investigators informed GSK (and GSK determined itself) that [p]aroxetine was associated with such conditions**") (emphasis supplied).

4

more than conclusions"). When Plaintiff's Complaint is stripped of its "formulaic recitation[s] of the elements of [its] cause[s] of action" against Mylan, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), there remains little more than a caption and a prayer for relief.

And the implausibility of Plaintiff's boilerplate claims against Mylan becomes even more obvious in reference to the content of Plaintiff's specific, voluminous recitation of facts concerning GSK. See Iqbal, 129 S. Ct. at 1949–50 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Plaintiff avers GSK "concealed adverse information and provided inaccurate or biased information" relating to the safety and efficacy of Paxil®, thereby "defraud[ing] the medical profession (including [Decedent's] prescribing physician)" with the "intent of inducing the public to take paroxetine and the medical community . . . to recommend, prescribe, and dispense paroxetine." (Compl. ¶¶ 124–126.) So GSK engaged in a decades-long scheme to defraud federal regulators and the medical community, but somehow *Mylan* "knew or should have known" of the risks of paroxetine identified by Plaintiff? (Id. ¶ 28.) In these circumstances, dismissal is proper even under the *fraudulent joinder* standard, let alone Rule 12(b)(6).[8] (See also Docket No. 61, Plaintiff's Reply in Support of Motion to Remand, at 5 ("The burden on the Defendants to establish fraudulent joinder is heavier than the burden of showing that the complaint fails to sufficiently plead a cause of action.").)

Yet the impetus for Plaintiff's seemingly nonsensical pleadings is obvious: Mylan is a generic manufacturer, and, as such, cannot be held liable for Decedent's death. Just two terms ago, the Supreme Court of the United States unequivocally held that claims based on the adequacy of warnings provided with FDA-approved generic drugs are impliedly preempted by

---

[8] See, e.g., Baisden v. Bayer Corp., 275 F. Supp. 2d 759, 762 (S.D. W. Va. 2003) (finding fraudulent joinder and noting that "Defendants have provided numerous cases . . . on which courts have denied remand based on fraudulent joinder because a premise of the claim asserted against the non-diverse defendant is knowledge of the dangers posed by the drug at issue—a knowledge withheld from them by the co-defendant drug company, as the remainder of the complaint alleges").

federal law. See generally Mensing, 131 S. Ct. 2567. Based on Mensing, courts across the country have summarily dismissed the precise theories pursued by Plaintiff against Mylan.[9]

As Plaintiff's claims are both preempted and implausible, and for a plethora of additional reasons discussed at length below, Mylan respectfully requests that the Court grant Mylan's Amended Motion to Dismiss and dismiss Counts IX–XV and Plaintiff's survival claims in their entirety, with prejudice.

## IV. STANDARD

The United States Supreme Court has dispelled any notion that federal "notice pleading" principles under Rule 8 enable a plaintiff to survive a motion to dismiss by merely providing conclusory averments that recite the bare elements of a cause of action. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a *formulaic recitation of the elements of a cause of action will not do*." Twombly, 550 U.S. at 555 (internal modification omitted; emphasis supplied). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In Iqbal, the Court identified two "working principles" at the heart of Rule 8:

> *First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second, only a complaint that states a plausible claim for relief survives a motion to dismiss*. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the

---

[9] Plaintiff tacitly acknowledges the futility of her claims against Mylan, representing to the Court that its resolution of the Conte (brand-name liability) issue "directly affects . . . the ability of Illinois consumers to seek redress for wrongs arising out of the use of generic products . . . ." (Docket No. 41, Memorandum of Law in Support of Motion to Remand, at 14.) See also Mensing, 131 S. Ct. at 2581 (recognizing the "unfortunate hand that federal drug regulation has dealt" users of generic drugs).

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

129 S. Ct. at 1949–50 (internal citations, quotation marks omitted; emphasis supplied).

## V. ARGUMENT

### a. All claims sounding in failure to warn are preempted.

Though couched in various legal theories, all of Plaintiff's claims against Mylan are, in substance, boilerplate failure-to-warn claims. (Accord Compl. ¶ 1 ("This is an unlawful misrepresentation . . . case . . . .").) But don't take Mylan's word for it – Plaintiff's Complaint speaks for itself:

1. *Negligent Misrepresentation* (Count IX): Mylan "negligently omitted . . . information in its product labeling" regarding the risks associated with paroxetine. (Id. ¶ 191.)[10]
2. *Consumer Fraud* (Count X): Mylan provided "unfair, false, deceptive, and unconscionable representations and statements in its label . . . ." (Id. ¶ 200.)[11]
3. *Strict Liability Design Defect* (Count XI): "[I]nherent" dangers associated with paroxetine rendered it "unsafe," thereby "defeating ordinary consumer expectations." (Id. ¶¶ 210–211.)[12]
4. *Strict Liability Failure to Warn* (Count XII): Mylan is liable due to "inadequate warnings or instruction" provided with paroxetine. (Id. ¶ 214.)[13]
5. *Negligence* (Count XIII): Mylan failed to "adequately warn the medical community" regarding the risks associated with paroxetine. (Id. ¶ 220.)[14]
6. *Breach of Express Warranty* (Count XIV): Mylan "expressly warranted" in its "packaging" and "labeling" that paroxetine was "safe and effective." (Id. ¶ 226.)[15]

---

[10] See, e.g., In re Darvocet, Darvon and Propoxyphene Prod. Liab. Lit., No. 2:11-md-2226-DCR, MDL No. 2226, 2012 WL 718618, at *6 (E.D. Ky. Mar. 5, 2012) (granting motion to dismiss claims for design defect, inadequate warnings, negligent design, negligent failure to warn, fraudulent nondisclosure, negligent misrepresentation, **fraudulent misrepresentation**, statutory negligence, breach of express warranty, and breach of implied warranty; as well as the so-called failure-to-withdraw claim).

[11] See, e.g., Coney v. Mylan Pharms. Inc., --- F. Supp. 2d ----, No. 6:11-cv-00035-BAE, 2012 WL 170143, at *7 (N.D. Ga. Jan. 19, 2012) (dismissing claims for strict liability failure to warn, strict liability defective design/manufacture, negligence, **fraud**, breach of implied warranty, gross negligence, joint and several liability, punitive damages, and loss of consortium, pursuant to Mensing and the pleading rules).

[12] See, e.g., In re Accutane Prods. Liab., MDL No. 1626, 2012 WL 3194952, at *3 (M.D. Fla. Aug. 7, 2012) ("Plaintiff's **design defect** claim is also preempted [by Mensing].").

[13] See, e.g., Eckhardt v. Qualitest Pharms. Inc., No. M-11-235, 2012 WL 1511817 (S.D. Tex. Apr. 30, 2012) (holding that **failure-to-warn**, manufacturing-defect, "failure-to-provide-any-information," "failure-to-update-labeling," failure-to-withdraw, design-defect, and fraud claims are preempted or insufficiently pled and therefore granting the generic manufacturers' motion to dismiss).

[14] See, e.g., Truddle v. Wyeth, LLC, No. 2:11-CV-00207-GHD, 2012 WL 3338715, at *2–7 (N.D. Miss. Aug. 14, 2012) (dismissing claims for **negligence**, strict liability, breach of warranties, misrepresentation and fraud, and negligence *per se* against manufacturer of FDA-approved generic drug).

7. *Breach of Implied Warranty of Merchantability* (Count XV): "Mylan represented and warranted to physicians . . . that paroxetine was safe and effective." (Id. ¶ 234.)[16]

Court after court has recognized that each of these theories is, at its core, premised on allegedly defective warnings.[17] In fact, just last week, two more courts joined the ranks. First, the District Court for Minnesota wrote, "to be sure, most of Plaintiffs' claims . . . are just the sort of failure-to-warn claims that Mensing prohibits, whether couched as strict liability, breach of warranties, negligence, misrepresentation, fraud, negligence per se, Minnesota Deceptive Trade Practices Act, Minnesota Prevention of Consumer Fraud Act, or negligent infliction of emotional distress, and those claims must be dismissed as preempted by Mensing." Abicht v. PLIVA, Inc., No. 12-1278 PAM/JJG, 2013 WL 141724, at *2 (D. Minn. Jan. 9, 2013) (dismissing all claims with prejudice). Then, the following day, the District Court for the Northern District of Mississippi noted that "state law tort claims asserted against generic drug manufacturers, **no matter how styled**, are ultimately based on a failure-to-warn and therefore preempted under

---

[15] See, e.g., In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II), MDL No. 2243 JAP-LHG, 2012 WL 181411 (D.N.J. Jan. 17, 2012) (holding that the plaintiff's claims – which "emanated from a general theory of failure to warn, but also included claims based upon various state law products liability theories, including, *inter alia,* defective design, negligence, fraud, misrepresentation, breach of **express** and implied **warranties**, violation of consumer protection statutes, restitution, and loss of consortium" – are preempted under Mensing and therefore granting the generic manufacturer's motion for judgment on the pleadings).

[16] See, e.g., Fullington v. PLIVA, Inc., No. 4:10CV00236 JLH, 2011 WL 6153608 (E.D. Ark. Dec. 12, 2011) (holding that the plaintiff's strict-liability, negligence, gross-negligence, fraudulent-misrepresentation, negligent-misrepresentation, fraudulent-concealment, and **breach-of-implied-warranties** claims fail post-Mensing and therefore granting the generic manufacturer's motion to dismiss).

[17] See, e.g., Brinkley v. Pfizer, Inc., No. 10-0274-CV-W-SOW, 2012 WL 1865402, at *3–6 (W.D. Mo. May 22, 2012) (granting motion for judgment on the pleadings on strict liability design defect, breach of express and implied warranties, violations of Missouri Merchandising Practices Act, failure to communicate warnings, failure to update warnings, and failure to withdraw or stop selling the product, holding "**that plaintiff is simply trying to backdoor claims against [the generic manufacturer] that the Supreme Court . . . found to be preempted**" and noting that, "**at its core**," the plaintiff's case is nothing more than a failure-to-warn claim) (emphasis supplied); Fulgenzi v. PLIVA, Inc., 867 F. Supp. 2d 966, 975 (N.D. Ohio 2012) (holding that all of the plaintiff's claims "are, **at the core, failure-to-warn claims** that are clearly preempted by Mensing" and therefore granting the generic defendant's motion to dismiss) (emphasis supplied); Moretti v. Mutual Pharm. Co., No. 10-896, 2012 WL 465867, at *4 (D. Minn. Feb. 13, 2012) (granting motion for judgment on the pleadings on claims of negligence, misrepresentation, constructive fraud, violations of state statutes, negligent infliction of emotional distress, negligent misrepresentation, fraud by concealment, failure-to-communicate, failure-to-conduct-and-report-post-market-safety-surveillance, and failure-to-withdraw, and holding that "[d]espite the different 'labels' given these claims, **the essence of these claims is that important safety information as to [a generic drug] was not disseminated, or made clear, to the public or to the medical community**") (emphasis supplied). See also Kurns v. Railroad Friction Prods. Corp., 132 S. Ct. 1261, 1268 n.4 (2012) (observing that failure-to-warn and design claims are closely related).

Mensing." Gardley-Starks v. Pfizer, Inc., No. 4:10-CV-099-SA-JMV, 2013 WL 139900, at *7 (N.D. Miss. Jan. 10, 2013) (dismissing negligence, strict liability, breach of warranties, misrepresentation, fraud, suppression of evidence, and gross negligence claims) (emphasis supplied).

But "any state-law claim involving a generic drug label or warning is preempted and must be dismissed with prejudice under Mensing." In re Accutane Prods. Liab. Lit., 2011 WL 6224546, at *2. The United States Supreme Court in Mensing held that state law failure-to-warn claims against manufacturers of generic pharmaceutical products are preempted, because it is "impossible" for generic manufacturers to simultaneously meet both state and federal law. 131 S. Ct. at 2572. That is because regulations promulgated by the FDA pursuant to the Food, Drug, and Cosmetic Act ("FDCA") require that warnings provided with generic drugs be the "same" as those of the brand-name product. See 21 U.S.C. § 355(j)(2)(v).

Here, Plaintiff seeks to impose a state law duty upon Mylan to change the content of the warnings provided with paroxetine. However, to the extent Plaintiff can prove Decedent used paroxetine manufactured by Mylan, it is undisputed that it is a generic drug.[18] Accordingly, any attempt by Mylan to change its warnings would have run contrary to the federal requirement of "sameness," which Mylan met.[19] Whether grounded in a theory of strict liability failure to warn,

---

[18] See Compl. ¶ 3; and Exhibit "A" (approving MPI's paroxetine as "bioequivalent" to the reference listed drug ("RLD"), Paxil®). See, also Mensing, 131 S. Ct. at 2574 n.2 ("As we use it here, 'generic drug' refers to a drug designed to be a copy of a [RLD] (typically a brand-name drug), and thus identical in active ingredients, safety, and efficacy.").

[19] Compare MPI Paroxetine Label (revised 2009), attached hereto as Exhibit "B," with Paxil® Label (revised 2009), attached hereto as Exhibit "C." These were the labels distributed at the time Decedent was allegedly prescribed paroxetine. (See Compl. ¶ 15 (alleging Decedent was prescribed paroxetine in June 2010 and died the following month).) The Court may properly consider these FDA-approved labels, as well as the letter approving ANDA 78-902, in ruling on a motion to dismiss, because they are incorporated by reference in the Complaint, they are publicly available governmental documents, and as such, their authenticity cannot reasonably be questioned. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); Salvio v. Amgen, Inc., 810 F. Supp. 2d 745, 751 (W.D. Pa. 2011) (holding that, where a plaintiff's

strict liability design defect, negligence, warranty, consumer fraud, or otherwise, all of Plaintiff's causes of action purport to enforce a state-law duty requiring Mylan to change the allegedly inadequate warnings to warn of a supposed heightened risk of suicidality. But controlling Supreme Court precedent makes clear that federal law foreclosed such action. All of these theories, therefore, are preempted.[20, 21]

---

complaint "incorporates by reference" the labeling provided with an FDA-approved product, the "actual warning" provided by the manufacturer should be considered in ruling upon a motion to dismiss); Horne v. Novartis Pharms. Corp., 541 F. Supp. 2d 768, 776–77 (W.D.N.C. 2008) ("[T]he Court may take judicial notice of and consider the public records of the FDA . . . without transforming this motion into a motion for summary judgment.").

[20] See, e.g., Demahy v. Schwarz Pharma, Inc., --- F.3d ----, 2012 WL 6698692 (5th Cir. Oct. 25, 2012) (affirming dismissal of all claims against generic manufacturer, including, inter alia, design defect); Smith v. Wyeth, Inc., 657 F.3d 420, 423 (6th Cir. 2011) cert. denied, 132 S. Ct. 2103 (2012) (affirming dismissal of all claims against generic manufacturer and rejecting argument that "failure-to-withdraw theory is viable); Mensing v. Wyeth, Inc., 658 F.3d 867 (8th Cir. 2011) (vacating opinion pursuant to Supreme Court's decision; i.e., dismissing claims against generic manufacturers); Demahy v. Actavis, Inc., 650 F.3d 1045 (5th Cir. 2011) (per curiam) (holding that failure-to-warn claims against generic manufacturers are preempted and therefore granting generic manufacturer's motion to dismiss); Gaeta ex rel. A.G. v. Perrigo Pharms. Co., 469 F. App'x. 556 (9th Cir. 2012) (unpublished) (vacating prior decision and affirming grant of summary judgment on claims for defective design, marketing defect, breach of express warranty, breach of implied warranty, negligence, gross negligence, and deceit by concealment); Phelps v. Wyeth, Inc., 857 F. Supp. 2d 1114, 1128 (D. Or. 2012) (holding that failure-to-warn, "misbranding," "failure-to-communicate-drug-safety-information," and "failure-to-test-and-monitor" claims fail under Mensing); Metz v. Wyeth LLC, 872 F. Supp. 2d 1335, 1345 (M.D. Fla. 2012) (holding that strict-liability, misrepresentation, fraud, and negligence-per-se claims are preempted or insufficiently pled and that the failure-to-effectively-communicate claim is barred by the learned-intermediary doctrine and therefore granting the generic defendant's motion to dismiss and motion for summary judgment); Bowman v. Wyeth, LLC, No. 10-1946 JNE/SER, 2012 WL 684116, at *7 (D. Minn. Mar. 2, 2012) (granting motion for judgment on the pleadings as to claims for negligence, negligent misrepresentation, and fraud; and rejecting assertion that failure-to-withdraw claim survives Mensing); Schrock v. PLIVA USA, Inc., No. 08-453-M, 2011 WL 6122768, at *2 (W.D. Okla. Dec. 8, 2011) (holding that a breach-of-warranties claim is preempted under Mensing and therefore granting the generic manufacturer's motion to dismiss); Gross v. Pfizer, Inc., 825 F. Supp. 2d 654, 659 (D. Md. 2011), reconsideration denied (Jan. 27, 2012) (holding that Mensing barred failure-to-stop-selling-drug, failure-to-test-and-inspect-the-drug, warranty, and misrepresentation claims and therefore granting the generic manufacturer's motion for judgment on the pleadings); Guarino v. Wyeth LLC, 823 F. Supp. 2d 1289 (M.D. Fla. 2011) (holding that the plaintiffs' failure-to-warn and "failure-to-properly-communicate" claims are preempted by Mensing and therefore granting the generic manufacturer's motion to dismiss or, in the alternative, motion for judgment on the pleadings); Metz v. Wyeth, LLC, No. 8:10–CV–2658–T–27AEP, 2011 WL 5024448, at *4 (M.D. Fla. Oct. 20, 2011) (holding that the plaintiff's failure-to-warn, warranty, fraud, negligence per se, failure-to-notify-the-FDA, and failure-to-monitor claims fail post-Mensing and therefore granting the generic manufacturers' motion to dismiss); Henderson v. Sun Pharms. Indus., 809 F. Supp. 2d 1373, 1382 (N.D. Ga. 2011) (holding that failure-to-warn, design-defect, manufacturing-defect, and negligence claims are preempted or insufficiently pled and therefore granting denying the plaintiff's motion to amend the complaint).

[21] Because the claims are patently preempted, Mylan will not spend a significant amount of time addressing the sufficiency of Plaintiff's pleadings in support of her claims for negligent misrepresentation, consumer fraud, failure to warn, negligence, and warranty. Nevertheless, for the sake of completeness, Mylan notes the following. First, throughout her Complaint, Plaintiff suggests that Mylan breached a duty to warn Decedent, the "medical community," or the "general public" regarding the risks associated with paroxetine. (See, e.g., Compl. ¶ 220(e).) However, Mylan had no such duty, as Illinois has adopted the learned intermediary doctrine. See Kirk v. Michael Reese Hosp. and Medical Center, 513 N.E.2d 387, 393 (Ill. 1987). Accordingly, beyond the fact that such theories

### b. Plaintiff does not state a design defect claim upon which relief can be granted.

Plaintiff's design defect claim centers upon the "inherent" risks associated with paroxetine (Compl. ¶ 211), and is properly considered a disguised failure-to-warn claim. (See *supra* Section V, subsection a, and note 17.) Once again, the essence of this "misrepresentation" case is that paroxetine has a supposedly heightened risk of suicidality, for which it did not have adequate warnings. (Id. ¶ 1.) As such, it falls squarely within the holding of <u>Mensing</u> and must be dismissed. Nevertheless, even if the claim had anything to do with paroxetine's design, it still fails on multiple levels.

In order to establish a strict liability design defect claim under Illinois law,[22] a plaintiff must establish: (1) a defect in the product that results from the design; (2) the defect made the

---

are unquestionably preempted, they fail for this additional reason. Next, Plaintiff's "rote recitation of the elements" of her negligent misrepresentation count fails to put Mylan on notice of, *inter alia*, its "carelessness or negligence in ascertaining the truth of the statement by the party making it," given that GSK is alleged to have withheld safety information from the public. <u>Tillman v. Taro Pharm. Indus. Ltd.</u>, No. 10-CV-04202, 2011 WL 3704762, at *6 (N.D. Ill. Aug. 17, 2011). Similarly, as to Plaintiff's fraud-based claims, the Complaint does not apprise Mylan of "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff," as required by Rule 9. <u>General Elec. Capital Corp. v. Lease Resolution Corp.</u>, 128 F.3d 1074, 1078 (7th Cir. 1997) (citations omitted). More specifically, Plaintiff "fails to identify when or how these alleged false representations were made" or "to plead that [Mylan] was aware that any information that [it was] presenting to the medical community or to others was not correct." <u>Tillman</u>, 2011 WL 3704762, at *6–7. <u>See also</u> <u>Moore v. Mylan Inc.</u>, 840 F. Supp. 2d 1337 (N.D. Ga. Jan. 5, 2012) (dismissing similar fraud claim against Mylan for failure to meet Rule 9's requirements); <u>and</u> <u>Henderson v. Sun Pharms. Indus., Ltd.</u>, No. 4:11-CV-0060-HLM, 2011 WL 4024656, at *6 (N.D. Ga. June 9, 2011) (same). Moreover, given the widespread deception attributed to GSK, it is implausible to attribute to Mylan an intention to defraud simply by selling an FDA-approved drug with an FDA-approved label. <u>See</u> <u>In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.</u>, 692 F. Supp. 2d 1012, 1023–24 (S.D. Ill 2010) <u>aff'd sub nom. Walton v. Bayer Corp.</u>, 643 F.3d 994 (7th Cir. 2011). As to her warranty claims, Plaintiff fails to explain how Decedent relied on Mylan's representations when the paroxetine was chosen and prescribed by his physician. Further, Plaintiff does nothing to explain for what reason Decedent used paroxetine, or how she believes the drug was defective. <u>See</u> <u>Tillman</u>, 2011 WL 3704762, at *8. Finally, Plaintiff's empty suggestion that Mylan warranted that its paroxetine is "safe and effective" falls woefully short of Rule 8's standards. <u>See</u> <u>Heisner ex rel. Heisner v. Genzyme Corp.</u>, No. 08-C-593, 2008 WL 294088 (N.D. Ill. July 25, 2008) (rejecting argument that the plaintiff's generalized allegation that a pharmaceutical manufacturer warranted that its product was "safe, effective, fit and proper for its intended use" was sufficient to state a warranty claim); <u>Giles v. Wyeth, Inc.</u>, 500 F. Supp. 2d 1063, 1070–71 (S.D. Ill 2007) (holding that the plaintiff's generalized allegation that a pharmaceutical manufacturer warranted that its product was "safe" and "efficacious" is insufficient to state a breach of express warranty claim). For all these additional reasons, Plaintiff's claims fail.

[22] For purposes of this Motion to Dismiss, Mylan assumes that Illinois substantive law governs Plaintiff's claims, based on Plaintiff's assertion that Decedent lived in Illinois, was prescribed paroxetine in Illinois, used

product unreasonably dangerous; (3) the defect existed at the time the product left the defendant's control; (4) the plaintiff suffered an injury; and (5) the injury was proximately caused by the defect. <u>Mikolajczyk v. Ford Motor Co.</u>, 901 N.E.2d 329, 335 (Ill. 2008).[23]

Though there are *five* elements to her so-called design defect claim, Plaintiff's allegations against Mylan span only *four* sentences. First, Plaintiff suggests Mylan designed paroxetine, even though, as a generic drug, Mylan's paroxetine is simply a copy of GSK's Paxil®. (<u>See</u> *supra* note 18.) This suggestion is especially dubious – as in, not "plausible" – since Plaintiff *herself* concedes GSK "originally designed" paroxetine. (Compl. ¶ 4.) Undeterred by her internal inconsistency, Plaintiff proceeds to parrot the language from the "consumer expectations" and "risk–utility" tests adopted by Illinois courts, with no factual support whatsoever. (<u>Id.</u> ¶¶ 210–211.) Finally, Plaintiff includes stock language relating to causation. (<u>Id.</u> ¶¶ 212.)

Mylan submits that this is the *epitome* of a "formulaic recitation of the elements of a cause of action" – a practice expressly barred by the Supreme Court. <u>Twombly</u>, 550 U.S. at 555. While Plaintiff's threadbare allegations do not even come close to satisfying federal pleading standards for *any* element of her design defect claim, the most glaring shortcoming of Plaintiff's design defect claim is that she doesn't allege a *defect* at all. She simply states that paroxetine is unreasonably dangerous due to its "inherent" risks. (Compl. ¶ 211.)

But, for over thirty years, the Illinois Supreme Court has emphasized that "defect" and "unreasonably dangerous" are separate elements to be proven by a plaintiff. <u>See, e.g.</u>, <u>Hunt v.</u>

---

paroxetine in Illinois, and died in Illinois. <u>See</u> <u>Townsend v. Sears, Roebuck & Co.</u>, 879 N.E.2d 893, 905–07 (Ill. 2007) (discussing choice-of-law considerations). Mylan reserves the right to revisit this choice-of-law issue.

[23] Though Mylan refers to strict liability, the same analysis would apply to the extent Plaintiff suggests defectiveness in the design of paroxetine – *e.g.*, negligence. <u>See</u> <u>Jablonski v. Ford Motor Co.</u>, 955 N.E.2d 1138, 1154–55 (Ill. 2011) (indicating that strict liability and negligent design claims are "essentially identical").

Blasius, 384 N.E.2d 368, 369–70 (Ill. 1978).[24] The plaintiffs in Hunt were passengers in a car that struck a road sign post. In support of their design defect claim, they alleged that the "design of the exit sign post was defective because it was not reasonably safe in the event that automobiles left the paved portion of the highway and collided with the post." Id. at 372.[25] That is, the plaintiffs argued the product was defective *because* it was unreasonably dangerous. But this analysis improperly conflates two separate elements: "**The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an unreasonable risk of harm.**" Id. (emphasis supplied).[26]

Here, Plaintiff's Complaint suffers from the identical shortcoming highlighted in Hunt: she has failed to allege any defect and, therefore, cannot satisfy the first element of her design defect claim. See also Coney, 2012 WL 170143, at *6 (S.D. Ga. Jan. 19, 2012) (dismissing the plaintiff's design- and manufacturing-defect claims because "a complaint is deficient if it fails to allege a specific design or manufacturing defect" and the plaintiff "ha[d] failed to allege a specific design or manufacturing defect"); Moore, 840 F. Supp. 2d at 1344 (holding that the "[p]laintiff's allegations in her complaint fail to . . . meet the pleading standard required by Twombly" because "[she] has not alleged any specific design or manufacturing defect in . . . Mylan's products"); Henderson, 809 F. Supp. 2d at 1379 (dismissing the plaintiff's design- and manufacturing-defect claims because the "[p]laintiff [] does not allege that any specific design or manufacturing defect proximately caused [him] to develop [any injury]"); Henderson, 2011 WL 4024656, at *5 (holding that the "[p]laintiff's allegations are insufficient to state a claim"

---

[24] Accord Salerno v. Innovative Surveillance Tech., Inc., 932 N.E.2d 101, 108–09 (Ill. App. 2010) ("The key inquiry is whether the allegedly defective condition made the product unreasonably dangerous.") appeal denied, 942 N.E.2d 461 (Ill. 2010).

[25] This is almost identical to the language used by Plaintiff. (See Compl. ¶ 210.)

[26] See also Patterson v. Rohm Gesellschaft, 608 F. Supp. 1206, 1210–11 (N.D. Tex. 1985) (describing as "delightfully nonsensical" the plaintiff's argument "**that a product which does not have a defect can nevertheless, under the law, be defective**") (emphasis in original).

13

because "[he] does not allege any specific design or manufacturing defect that proximately caused [him] harm" but, "[i]nstead, [] merely restates the elements of the claim and alleges that [the drug's] 'foreseeable risks exceeded the benefits associated with the designs or formulations of the product'").

Moreover, Plaintiff does not include sufficient factual information in support of the second element of her so-called design defect claim – *i.e.*, unreasonable dangerousness. There are two "*methods of proof* by which a plaintiff 'may demonstrate' that the element of unreasonable dangerousness is met." Mikolajczyk, 901 N.E.2d at 348 (emphasis in original). Those are the risk–utility test and the consumer expectations test. Id.

A plaintiff operating under the risk–utility test may carry her burden by proving "the availability and feasibility of alternate designs at the time of its manufacture, or that the design used did not conform with the design standards of the industry, design guidelines provided by an authoritative voluntary association, or design criteria set by legislation or governmental regulation." Anderson v. Hyster Co., 385 N.E.2d 690, 692 (Ill. App. 1979). On the other hand, "[u]nder the consumer-expectation test, a plaintiff must establish what an ordinary consumer purchasing the product would expect about the product and its safety." Calles v. Scripto-Tokai Corp., 864 N.E.2d 249, 254–56 (Ill. 2007).

The viability of Plaintiff's one-sentence consumer-expectations proof can be quickly dispatched. As already discussed, federal law barred Mylan from altering its label, and, of course, consumer expectations are necessarily guided by a product's warnings. Therefore, when warnings are adequate as a matter of law (because of preemption or otherwise), a plaintiff cannot then backdoor a collateral attack on the warnings under the guise of design claim:

> [Defendant's] warnings met the federal requirements and [plaintiff's] design defect claim therefore fails the "consumer expectation" test. To rule otherwise

14

would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate.

Papike v. Tambrands, Inc., 107 F.3d 737, 743 (9th Cir. 1997). Accord Haddix v. Playtex Family Prods. Corp., 138 F.3d 681, 683–86 (7th Cir. 1998) (interpreting Illinois law and holding that, when a consumer is adequately warned of risks associated with a product, the plaintiff cannot recover via the consumer–expectations test in connection with a design defect claim); Reece v. Good Samaritan Hosp., 953 P.2d 117, 123 (Wash. App. 1998) ("[T]he 'consumer expectation' test, cannot be met where, as here, a manufacturer has adequately warned consumers of the risks associated with using a product.").

Plaintiff's risk–utility proof fares no better. The product before the Court – paroxetine – has only one active ingredient: paroxetine. Mylan's inclusion of *paroxetine* in its *paroxetine* product is the only possible design. Plaintiff makes no suggestion whatsoever that there is an alternative design to this product, nor does she explain how Mylan failed to conform to industry or governmental standards. To the contrary, the pharmaceutical industry is heavily regulated, the FDA approved Mylan's ANDA to manufacture paroxetine, and the product remains on the market today with the ongoing approval of federal regulators.

Instead, Plaintiff avers that there are certain "inherent" risks associated with paroxetine, such that the risks cannot be "designed out."[27] (Compl. ¶ 211.) These are the same alleged risks (increased suicidality) that form the basis for Plaintiff's failure-to-warn claims.[28] But when a

---

[27] The scholars who crafted the doctrine of strict products liability recognized that some products, regardless of their design, are unsafe. David G. Owen, Inherent Product Hazards, 93 Ky. L.J. 377, 379–380 (2005). In an attempt to "avoid the possibility that the new 'strict liability' doctrine might be stretched further, to prevent it from being misconstrued as permitting a challenge to the design of products possessing such inherent dangers, Dean Prosser and the [American Law Institute] explicitly excluded such an obligation from the new strict tort doctrine." Id. at 380.

[28] Labeling is "[t]he centerpiece of risk management for prescription drugs" and the "FDA's principal tool for educating health care professionals about the risks and benefits of the approved product to help ensure safe and effective use." Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3,922, 3,934 (Jan. 24, 2006).

product has certain identifiable-but-inherent risks, Illinois law does not recognize design claims based thereon. See RESTATEMENT (SECOND) OF TORTS § 402A cmt. h (1965) (stating that ingredients which are "characteristic of the product itself either as to presence or quantity" are not properly considered defects); id. at cmt. k (stating that an "unavoidably unsafe" product – and expressly including prescription drugs as an example – "properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous"; that is, the only avenues of relief when a product's danger cannot be "designed out" are claims for manufacturing defects or failure-to-warn); see also Lawson v. G. D. Searle & Co., 356 N.E.2d 779, 783 (Ill. 1976) (citing cmt. k with approval and noting: "[T]he question of the adequacy of the warning given in strict liability cases involving drugs may be the central issue in determining whether the product is unreasonably dangerous within the concept of strict liability as set forth in section 402A of the Restatement.").

In these circumstances, Plaintiff's use of "magic words" in place of factual allegations fails to elevate her design claim beyond the speculative level. Accordingly, federal courts construing Illinois law have properly dismissed complaints featuring similar threadbare allegations.[29] Otherwise, strict liability becomes absolute liability, which is contrary to Illinois law. See Woodill v. Parke Davis & Co., 402 N.E.2d 194, 199 (Ill. 1980) ("Strict liability is not the equivalent of absolute liability.").[30] Because Rule 8 "demands more than an unadorned, the-

---

[29] See, e.g., Tillman, 2011 WL 3704762, at *4 (dismissing design defect claim which included only formulaic recitations of the elements with no "specific facts" regarding purported defects in the product); Mohr v. Targeted Genetics, Inc., No. 09-3170, 2009 WL 4021153, at *2–3 (C.D. Ill. Nov. 18, 2009) (granting motion to dismiss, because "the complaint includes little more than the 'magic words' which are typically used to support a product liability claim" and the plaintiff "alleged no specific facts which establish tortious conduct" on behalf of the moving defendant).

[30] The District Court for the District of Maryland addressed a nearly identical scenario and dismissed the plaintiff's design defect claims under Mensing and Twombly in favor of Mylan. See Grinage v. Mylan Pharms., Inc., 840 F. Supp. 2d 862, 870 (D. Md. 2011) (dismissing the consumer expectations portion of the plaintiff's design defect claim, because "if [a generic drug] is dangerous beyond the expectations of the ordinary consumer, that can only be a symptom of Mylan's failure to update its label or communicate effectively with doctors"; dismissing the

defendant-unlawfully-harmed-me accusation," Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted), dismissal is proper.

### c. Even if properly pleaded, Plaintiff's design defect claim is preempted.

#### i. It is "impossible" to independently satisfy both state and federal law.

Even if the Court were to ignore the fact that Plaintiff's "design" claim is nothing more than a thinly veiled failure-to-warn claim, and even if Court were to determine Plaintiff adequately pleaded all five elements of her design defect claim in just four sentences, Mylan submits that the claim must still be dismissed as preempted. On the topic of impossibility preemption, Mensing holds that "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." Mensing, 131 S. Ct. at 2579. "[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." Id. at 2580–81. Plaintiff's design defect claim is based on a supposed duty for Mylan to change the design of paroxetine. The question then becomes whether Mylan could have satisfied that duty unilaterally. Clearly it could not.

The Hatch–Waxman Amendments sets forth the standards by which generic drugs are approved by the FDA. See 21 U.S.C. § 355(j). The ANDA applicant must show, inter alia, that (1) its warning label is the same as the RLD's and that (2) its drug's active pharmaceutical ingredient is bioequivalent to the RLD's. The FDA approved MPI's ANDA 78-902 to market paroxetine based on the federal agency's determination that the generic product is "bioequivalent" to the RLD, Paxil®. (See Exhibit "A," at 1.) As such, the FDA would have never

---

risk-utility portion of the plaintiff's design defect claim because the "plaintiff alleges nothing with regard to the utility of [the generic drug] or availability of less dangerous alternatives," and, therefore, has not satisfied federal pleading standards) (citing Twombly, 550 U.S. at 555).

approved Mylan's ANDA had MPI submitted for consideration a product with a different active ingredient. See 21 U.S.C. § 355(j)(2)(A)(ii)(I). Similarly, if Mylan unilaterally changed the active pharmaceutical ingredient in paroxetine after its ANDA was approved, Mylan would have been in violation of federal law. See 21 U.S.C. § 355(a).

Thus, Plaintiff's design defect claims fail for the same reason as the failure-to-warn claims in Mensing:

> The FDCA . . . prevented the Generic Defendants from altering unilaterally the design of the drug itself. A generic drug manufacturer must ensure that its product has the same active ingredient, route of administration, dosage form, and strength as the reference listed drug already approved by the FDA, unless the manufacturer has received special permission from the FDA to alter any of the drug's characteristics. See 21 U.S.C. § 3550. In Mensing, the Court held that "impossibility preemption" exists where federal law prohibits a private party from taking an action required by state law without first obtaining special approval from the federal government . . . . Accordingly, [a plaintiff] cannot show that an alternative drug design was available to the Generic Defendants, and her design defect claims will be dismissed as preempted.

Johnson v. Teva Pharms. USA, Inc., No. 2:10 CV 404, 2012 WL 1866839, at *4 (W.D. La. May 21, 2012) (citations omitted). The vast majority of courts to address this issue agree.[31]

---

[31] See, e.g., Demahy, 2012 WL 6698692, at *6 ("[S]tate-law tort claims against generic drug manufacturers, including design defect claims, are preempted after Mensing."); In re Pamidronate Prods. Liab. Litig., 842 F. Supp. 2d 479, 484 (E.D.N.Y. 2012) (holding that the duty of "sameness" also preempts design defect claims); Gardley-Starks, 2013 WL 139900, at *12 ("[T]o the extent Plaintiff is pursuing a design defect against the Generic Defendants, the Court finds that such claims are also preempted."); Frazier v. Mylan Inc., --- F. Supp. 2d --- -, No. 1:11-CV-03037-MHS, 2012 WL 6641626, at *6 (N.D. Ga. Dec. 18, 2012) ("Just as in Mensing, conflict preemption applies because Mylan cannot comply with both a state law duty to make a safer design and the federal requirement that the generic drug design be the equivalent of the brand name drug."); In re Accutane Prods. Liab., 2012 WL 3194952, at *2–3 (same); Aucoin v. Amneal Pharms., LLC, No. 11-1275, 2012 WL 2990697, at *9 (E.D. La. July 20, 2012) (holding that design claims are preempted under Mensing's rationale); Lashley v. Pfizer, Inc., 877 F. Supp. 2d 466, 478 (S.D. Miss. 2012) ("Because [the generic manufacturer] could not have altered their package inserts without FDA approval, Plaintiffs' claim based upon defective design is preempted by federal law."); Eckhardt, 2012 WL 1511817, at *6–7 (holding that design defect claim is preempted, because "Generics were required to produce a drug that was equivalent to the brand-name drug"); Metz, 872 F. Supp. 2d at 1341 ("A claim that Actavis should have redesigned metoclopramide to alleviate the risks associated with its long-term use would be preempted under Mensing."); Lyman v. Pfizer, Inc., No. 2:09-CV-262, 2012 WL 368675, at *4 (D. Vt. Feb. 3, 2012) (holding that design-defect claims "are preempted as well by Mensing's logic" and the duty of "sameness"); In re: Fosamax (Alendronate Sodium) Prods. Liab. Lit., No. 08-008 (GEB-LHG), 2011 WL 5903623, at *6 (D.N.J. Nov. 21, 2011) (holding that design defect claims are preempted, "because FDA requires generic Fosamax to have the same active ingredient as Fosamax …."); and Stevens v. PLIVA, Inc., No. 6:10-0886, 2011 WL 6224569, at *2 (W.D. La. Nov. 15, 2011) (holding that "federal law pre-empts state laws imposing the duty to change a drug's

Moreover, because the practical import of Plaintiff's theory would necessitate the withdrawal of Mylan's paroxetine from the market altogether, Plaintiff's allegations amount to a "failure-to-withdraw" claim.[32] However, Illinois does not recognize a duty to withdraw or recall an allegedly defective product, so the Court needn't reach the question of preemption.[33]

And in any event, the option of withdrawing a product from the market does not provide Plaintiff an end-run around <u>Mensing</u>. First, as recognized over and over again, the Supreme Court and several federal appellate courts have already settled the question of whether failure-to-withdraw claims can survive <u>Mensing</u>. They do not.[34] What is more, if the ability to withdraw a product from the market were sufficient to defeat impossibility preemption, "it is unclear when,

---

design upon generic drug manufacturers") <u>report and recommendation adopted</u>, 2011 WL 6224556 (W.D. La. Dec. 2, 2011).

[32] <u>See</u> <u>Robinson v. McNeil Consumer Healthcare</u>, 615 F.3d 861, 867 (7th Cir. 2010) (Posner, J.) (observing that a design defect claim applied to an FDA-approved drug implies "that the drug should be taken off the market").

[33] <u>See</u> <u>Rogers v. Clark Equipment Co.</u>, 744 N.E.2d 364, 370 (Ill. App. 2001) ("[A]bsent a statutory obligation or voluntary undertaking to retrofit, no Illinois case has imposed upon a manufacturer a duty to retrofit or recall where the allegedly dangerous condition was not discovered until after the product was sold."). Once again, Mylan reiterates that Plaintiff's central theory is GSK withheld safety information from the general public, including Mylan. It is implausible that Mylan was simultaneously kept in the dark regarding paroxetine's risks, yet also knowingly distributing a defective product.

[34] <u>See, e.g.</u>, <u>Gardley-Starks</u>, 2013 WL 139900, at *9 ("The Court finds, consistent with the great weight of authority, that any claims related to the Generic Defendants' failure to withdraw [a drug] from the market are preempted."); <u>Strayhorn v. Wyeth Pharms., Inc.</u>, --- F. Supp. 2d ----, No. 11-2058-STA-CGC, 2012 WL 3261377, at *16 (W.D. Tenn. Aug. 8, 2012) ("[A]ll of Plaintiffs' assorted claims raising allegations that the Generic Defendants failed to remove metoclopramide from the market are invalid due to <u>Mensing</u> and <u>Smith</u>'s rejection of this theory."); <u>In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.</u>, No. 2:11-MD-2226-DCR, 2012 WL 2457825, at *1 (E.D. Ky. June 22, 2012) (observing that the plaintiffs' failure-to-withdraw claims "failed to persuade either the Supreme Court or the Eighth Circuit on remand in <u>Mensing,</u> and the Sixth Circuit in <u>Smith</u>"); <u>Johnson</u>, 2012 WL 1866839, at *4–5 (rejecting failure-to-withdraw argument based, <i>inter alia</i>, on Supreme Court and Eighth Circuit's rejection of the precise argument); <u>Fulgenzi</u>, 867 F. Supp. 2d at 974 n.5 (noting that the failure-to-withdraw argument was "overruled" by the Supreme Court in <u>Mensing</u>); <u>Bowman</u>, 2012 WL 684116, at *6 (dismissing failure-to-withdraw claim, because it was already rejected by both the Supreme Court and the Eighth Circuit); <u>Moretti v. PLIVA, Inc.</u>, No. 2:08-CV-00396-JCM, 2012 WL 628502, at *5–6 (D. Nev. Feb. 27, 2012) (dismissing failure-to-withdraw theory based on, <i>inter alia</i>, the Sixth and Eighth Circuits' rejection of this very theory); <u>Moretti</u>, WL 465867, at *5 (rejecting proposition that a generic defendant can circumvent <u>Mensing</u> preemption by simply withdrawing from the market, because this argument was rejected by the Eighth Circuit on remand); <u>Lyman</u>, 2012 WL 368675, at *4 n.5 (recognizing that the Eighth Circuit rejected the failure-to-withdraw theory upon remand in <u>Mensing</u>); <u>Gross</u>, 825 F. Supp. 2d at 658–59 (noting that the proposition that the ability to withdraw a product serves as an end around <u>Mensing</u> was rejected by the Supreme Court, Eight Circuit, and Sixth Circuit); <u>Fullington</u>, 2011 WL 6153608, at *6 (noting that plaintiff's suggestion that preemption could be avoided by removing the drug from the market had been "overruled" by the Supreme Court and the Eighth Circuit on remand in <u>Mensing</u>); <u>and In re Fosamax</u>, 2011 WL 5903623, at *6 n.5 (recognizing that the plaintiffs' arguments regarding an alleged failure to withdraw are "essentially a re-argument of <u>Mensing</u>," such that dismissal of these claims is necessitated by "binding law").

outside of express preemption, the Supremacy Clause would have any force." <u>Mensing</u>, 131 S. Ct. at 2579. But <u>Mensing</u> bars "an approach to pre-emption that renders conflict pre-emption all but meaningless." <u>Id.</u>

In sum, then, Plaintiff's "design" claim is contrary to <u>Mensing</u>'s rationale and has been rejected literally dozens of times by federal courts across the country. Regardless of how Plaintiff wants to frame the issue, her design claim is ultimately premised on the notion that there is a state law duty for Mylan to have made its paroxetine **<u>safer</u>** than Paxil®, while federal law required that it be **<u>identical</u>**. Fortunately for the Court, when federal and state duties conflict – as they most certainly do here – the analysis is simple – so simple that Constitution itself dictates the result: Plaintiff's claims are preempted. <u>See</u> U.S. CONST. Art. IV, cl. 2 (stating that federal law is "the supreme law of the land . . . anything in the constitution or laws of any state to the contrary notwithstanding").[35]

---

[35] The First Circuit's decision in <u>Bartlett v. Mut. Pharm. Co., Inc.</u>, 678 F.3d 30 (1st Cir. 2012) <u>cert. granted,</u> 133 S. Ct. 694 (U.S. 2012), does not change this analysis. First, due to differences between Illinois and New Hampshire law, <u>Bartlett</u> bears no relation to the case <i>sub judice</i>. That is because – according to <u>Bartlett</u>, at least – New Hampshire has merged the separate elements of defect and "unreasonably dangerous," allowing a plaintiff to recover simply on a showing that a product's risks outweigh its benefits. But the Illinois Supreme Court has expressly rejected such an argument, rendering <u>Bartlett</u> distinguishable and wholly irrelevant. <u>See</u> <u>Hunt</u>, 384 N.E.2d at 372. But even more importantly, <u>Bartlett</u> was wrongly decided, stands as a severe outlier, and, as it is not binding on this Court, should not be followed here. <u>See, e.g.</u>, <u>Demahy</u>, 2012 WL 6698692, at *6 ("[S]tate-law tort claims against generic drug manufacturers, including design defect claims, are preempted after <u>Mensing</u>."); <u>Mensing</u>, 658 F.3d at 867 (vacating portion of pre-remand opinion embracing the failure-to-withdraw theory despite the plaintiff's argument that the theory survived); <u>Smith</u>, 657 F.3d at 423 (rejecting the failure-to-withdraw theory); <u>Gardley-Starks</u>, 2013 WL 139900, at *9 (rejecting <u>Bartlett</u> as inconsistent with "the great weight of authority"); <u>Strayhorn</u>, 2012 WL 3261377, at *10 (distinguishing and refusing to follow <u>Bartlett</u> while dismissing all claims against the generic manufacturer); <u>Fullington v. PLIVA, Inc.</u>, No. 4:10CV00236 JLH, 2012 WL 1893749, at *5 (E.D. Ark. May 23, 2012) (distinguishing and refusing to follow <u>Bartlett</u>); <u>Frazier</u>, 2012 WL 6641626, at *6 (rejecting <u>Bartlett</u> and dismissing all claims against Mylan); <u>In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.</u>, 2012 WL 2457825, at *1 (rejecting <u>Bartlett</u> and observing that the argument advanced in <u>Bartlett</u> had "failed to persuade either the Supreme Court or the Eighth Circuit on remand in <u>Mensing</u>, and the Sixth Circuit in <u>Smith</u>" and "is no more availing now"); <u>Pirello v. Qualitest Pharmaceuticals, Inc.</u>, No. 10-298-BAJ, 2012 WL 5363243, at *4 n.3 (M.D. La. Oct. 30, 2012) (granting judgment on the pleadings and stating that "[t]he Court is not persuaded by [<u>Bartlett</u>]"); <u>Lashley</u>, 877 F. Supp. 2d at 480 (rejecting <u>Bartlett</u> as "unpersuasive"); <u>Purvis v. Teva Pharmaceuticals, USA, Inc.</u>, No. 10-807-BAJ, 2012 WL 5364392, at *4 n.3 (M.D. La. Oct. 30, 2012) (rejected <u>Bartlett</u> because the court was "not persuaded" by its reasoning – or lack thereof); <u>and Johnson</u>, 2012 WL 1866839, at *5 n.13 (W.D. La. May 21, 2012) (distinguishing <u>Bartlett</u> and granting the defendant's motion for judgment on the pleadings). Finally, Mylan notes that the Supreme Court has granted the defendant's petition for writ of certiorari in <u>Bartlett</u>, <u>see</u> 133 S. Ct. 694,

> *ii. Design defect claims are preempted, as they would frustrate the purposes of Hatch–Waxman.*

Plaintiff's design defect claim also fails pursuant to purposes-and-objectives preemption. In passing the Hatch–Waxman Amendments, Congress could not have stated its purpose more clearly:

> THE PURPOSE OF TITLE I OF THE [HATCH–WAXMAN AMENDMENTS] IS TO MAKE AVAILABLE MORE LOW COST GENERIC DRUGS BY ESTABLISHING A GENERIC DRUG APPROVAL PROCEDURE FOR PIONEER DRUGS FIRST APPROVED AFTER 1962.

H.R.Rep. No. 98-857(I), at 14–15 (1984), reprinted in 1984 U.S.C.C.A.N. 2647, 2647–48 (capitals in original).[36] The lynchpin of so-called purpose preemption is whether a state's "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941). A state-law duty is not cognizable if it frustrates the purpose of federal law, regardless of "whether that 'obstacle' goes by the name of 'conflicting; contrary to; . . . repugnance; difference; irreconcilability; inconsistency; violation; curtailment; . . . interference,' or the like." Geier v. American Honda Co., 529 U.S. 861, 873 (2000) (quoting Hines, 312 U.S. at 67).

With the purposes of the Hatch–Waxman Amendments in mind, it is clear that claims that either expressly or impliedly mandate the removal of generic drugs from the market cannot stand. In the first section of Hatch–Waxman, Congress stated its purpose to make available more generic drugs to decrease costs for consumers and payers. Assuming compliance with Plaintiff's purported duty on Mylan to withdraw its paroxetine from the market, the cost-saving goals of

---

such that its days as "good law" are likely numbered. Cf. Smith, 132 S. Ct. 2103 (denying certiorari where the Sixth Circuit had affirmed dismissal of all claims).

[36] See also Andrx Pharms., Inc. v. Biovail Corp. Int'l, 256 F.3d 799, 809 (D.C. Cir. 2001) (Hatch-Waxman's purpose is "to get generic drugs into the hands of patients at reasonable prices – fast.").

Hatch–Waxman would be jeopardized.[37] See Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54, 468 U.S. 481, 501 (1984) (state law is "pre-empted by direct operation of the Supremacy Clause" where it prevents the "exercise of . . . federally protected rights); and Exhibit "A" (authorizing Mylan to market paroxetine in interstate commerce). On one hand, we have Congress carefully crafting federal law to "make available" generic drugs; on the other hand, Plaintiff advocates a state law duty which would take those generic drugs off the market. It is difficult to imagine a more blatant conflict between the express purposes of a federal statute and the practical effects of purported state-law duty.

The District Court for the District of Maryland agreed:

> [T]he Court finds unavailing Plaintiff's argument that [a generic manufacturer] could have simply stopped manufacturing [a drug] and thus avoided violating either federal or state law. The Court is aware of no state law duty that would compel generic manufacturers to stop production of a drug that under federal law they have the authority to produce. Nor could such a state law duty exist, as it would directly conflict with the federal statutory scheme in which Congress vested sole authority with the FDA to determine whether a drug may be marketed in interstate commerce.

Gross, 825 F. Supp. 2d at 659 (citation omitted).[38]

## VI.  CONCLUSION

Mylan respectfully requests that the Court dismiss Counts IX–XV and the related survival actions of Plaintiff's Complaint in their entirety, with prejudice. To the extent Plaintiff's Complaint contains *any* facts in support of her claims against Mylan, they relate only to a failure-to-warn theory. As the Supreme Court has foreclosed such claims, Mylan respectfully requests that the Court grant its Amended Motion to Dismiss.

---

[37] In making this determination, the Supreme Court's "pre-emption cases ordinarily *assume* compliance with the state-law duty in question." Geier, 529 U.S. at 882 (emphasis in original).

[38] Accord Moore, 840 F. Supp. 2d at 1352 n.14 (N.D. Ga. 2012) (holding that any state law duty mandating the withdrawal of an FDA-approved drug is preempted, because it "would directly conflict with the federal statutory scheme in which Congress vested sole authority with the FDA to determine whether a drug may be marketed in interstate commerce.").

Dated: January 18, 2013          Respectfully submitted,

By:    *s/ Clem C. Trischler*        

Robert E. Haley, Esq.
SWANSON, MARTIN & BELL, LLP
330 N. Wabash, Suite 330
Chicago, IL 60611
P: (312) 321-9100
F: (312) 321-0990
rhaley@smbtrials.com

and

Clem C. Trischler, Esq. (*Pro Hac Vice*)
Jason M. Reefer, Esq. (*Pro Hac Vice*)
PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
P: (412) 263-2000
F: (412) 263-2001
cct@pietragallo.com
jmr@pietragallo.com