IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDY DOLIN, Individually and as Independent Executor of the ESTATE OF STEWART DOLIN, deceased, | Case No. 12-CV-06403 |
| | Judge James B. Zagel |
| Plaintiff, | PLAINTIFF'S RESPONSE TO THE APRIL 17, 2014 STATUS CONFERENCE STATEMENT OF DEFENDANT GLAXOSMITHKLINE, LLC |
| v. | |
| SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE, a Pennsylvania Corporation, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO
THE APRIL 17, 2014 STATUS CONFERENCE STATEMENT OF
DEFENDANT GLAXOSMITHKLINE, LLC**

Plaintiff Wendy Dolin submits this Response to Defendant GlaxoSmithKline, LLC's ("GSK") Status Conference Statement (Dkt. 120) to respond to various unsupported claims and allegations GSK included in its status conference report and to provide the Court with actual information—not argument—about the status of the litigation in this case.

**I.  Comment on GSK's Status Conference Statement**

The purpose of a status conference statement is to provide the Court with an update on the status of the litigation.[1] It is not meant to be a vehicle for arguing the merits of a case or, as GSK attempts here, to "poison the well" with out-of-context and inaccurate interpretations of the victim's medical history. The fact that GSK needed to file its statement under seal to avoid

---

[1] GSK never mentioned to Plaintiff that it would be filing such a statement nor did it discuss with Plaintiff the content of such a statement.

1

trampling on Mr. Dolin's privacy rights speaks volumes about the impropriety of the filing.[2] Much of the information GSK purports to be from Mr. Dolin's medical records is completely out of context. And, since GSK did not provide the actual underlying documentation—which would be absurd in the context of a status conference statement—GSK's claims about Mr. Dolin's medical history are just GSK's cherry-picked interpretations of the evidence. This is not a status conference statement. It is a status conference argument.

Moreover, any suggestion that the "information" GSK purports to be disclosing to the Court is relevant for understanding the status of the litigation is nonsense. As described below, the parties have engaged in numerous meet-and-confers about a discovery schedule, stipulated protective order, collection of medical records, and other issues. None of these issues have reached an impasse or require Court intervention at this time. Thus, discussions of various defenses GSK intends to raise, which all turn on the merits of the case and involve seriously disputed issues of fact, are completely irrelevant. The only conceivable reason GSK has for submitting this statement is to gain some sort of tactical advantage. GSK wants to expose the Court to *its version* of the facts before the evidence is presented in a proper format, i.e., a motion for summary judgment. Needless to say, without getting into the specifics of GSK's purported defenses, Plaintiff disputes all of GSK's unsupported allegations and is confident the evidence, when it is actually presented to the trier of fact, will show that GSK is liable.

---

[2] Despite GSK's attempt to avoid making illegal public disclosures of Mr. Dolin's private medical and therapy information, the redacted version of the Status Conference Statement filed by GSK (and made publically available on PACER and CM/ECF) still contained confidential information obtained from Mr. Dolin's therapy sessions. After Plaintiff informed GSK that this was a clear violation of various federal and state privacy laws, it agreed to seek leave to remove the offending sentence from the document. *See* Dkts. 118, 119, 120. This mishap only emphasizes how inappropriate it is to include Mr. Dolin's private medical information in a Status Conference Statement.

II.     **Prior Paxil (paroxetine) Suicidality Litigation**

GSK and Plaintiff's Counsel have engaged in substantial litigation involving Paxil and suicidality over the last decade.[3] Indeed, all of the experts Plaintiff will be using in this case have been deposed by GSK on numerous occasions and all of Plaintiff's experts have survived *Daubert* challenges in federal court. Many of the documents, expert opinions, and deposition testimony from prior litigation will likely be used in this case and the parties are presently negotiating how this prior discovery will be used in this case. Thus, much of the complicated and intensive discovery work has already been completed in this case.

III.    **Case Scheduling & Discovery**

On December 21, 2012, Plaintiff responded to GSK's First Set of Interrogatories (25 interrogatories) and GSK's First Set of Requests for Production (25 requests). Plaintiff produced all of the pharmacy, medical, and therapy records for Mr. Dolin in her possession.

On January 4, 2013, GSK (along with then-defendants Mylan, Inc. H.D. Smith, Inc.) deposed Mr. Dolin's pharmacist, Eddie Levin. This deposition led to the revelation that then-defendant H.D. Smith was not the distributor of the paroxtine Mr. Dolin ingested in the days leading to his death.

No meaningful discovery occurred following Mr. Levin's deposition as the parties focused on then-defendant Mylan, Inc.'s motion to dismiss and GSK's motion for summary judgment.

The Court issued its ruling on the motions on February 28, 2014.

On March 2, 2014, Plaintiff's counsel initiated communication with GSK seeking to set up a case schedule and begin discussions of a discovery plan. GSK's counsel initially stated that

---

[3] Although many of those cases were vigorously litigated, some up to the eve of trial, i.e., motions *in limine* were briefed and ruled on, all of the cases were resolved before going to a jury.

he was unavailable to discuss the case until the week of March 31, 2014, however, after the Court denied GSK's Motion to Certify the Court's February 28, 2014 Order to the Seventh Circuit (Dkt. 114), the parties began discussing a case management schedule and discovery plan.

### A. Proposed Case Management Schedule

The parties have met and conferred on a possible case scheduling order in anticipation of the Status Conference set for April 17, 2104. As it stands, the parties agree to the following schedule:

| Event | Deadline |
|---|---|
| Plaintiff's Verified Supplemental Discovery Responses | April 30, 2014 |
| Plaintiff's Preliminary Trial Witness List | July 11, 2014 |
| GSK's Preliminary Trial Witness List | August 11, 2014 |
| Fact Discovery Cut-Off | October 31, 2014 |
| Plaintiff's Rule 26(a)(2) Expert Disclosure and Reports | November 14, 2014 |
| Plaintiff's Experts' Depositions to be Completed | December 15, 2014 |
| Defendant's Rule 26(a)(2) Expert Disclosure and Reports | January 5, 2015 |
| Defendant's Experts' Depositions to be Completed | February 6, 2015 |
| Rebuttal Expert Disclosure and Reports | February 20, 2015 |
| Rebuttal Expert Depositions to be Completed | March 6, 2015 |
| Deadline for Plaintiff to Identify Any Previously-Produced Suicidality Litigation Documents That Plaintiff Wants To Use in This Case | March 6, 2015 |
| Dispositive Motions | March 13, 2015 |
| Oppositions to Dispositive Motions | [within 14 days of receipt] |
| Replies in Support of Dispositive Motions | [within 7 days of receipt] |
| *Daubert* Motions | March 20, 2015 |
| Oppositions to *Daubert* Motions | [within 14 days of receipt] |
| Replies to *Daubert* Motions | [within 7 days of receipt] |
| Motions *in Limine* | April 3, 2015 |
| Oppositions to Motions *in Limine* | [within 14 days of receipt] |
| Replies to Motions *in Limine* | [within 7 days of receipt] |

Exchange of Deposition Designations ................................................................. April 17, 2015
Exchange of Deposition Objections and Counter-Designations.................................. May 1, 2015
Exchange of Further Deposition Objections and Counter-Designations ................... May 22, 2015

Exchange of Exhibit and Witness Lists .................................................................... May 1, 2015
Exchange of Objections to Exhibit and Witness Lists............................................... May 22, 2015

Pretrial Order ............................................................................................................ May 29, 2015
Final Pretrial Conference .......................................................................................... May __, 2015
Trial Setting .............................................................................................................. June 15, 2015

Plaintiff is optimistic that the parties will be able to submit a proposed joint scheduling order shortly after the status conference on April 17, 2014.

### B. Stipulated Proposed Protective Order

The parties are negotiating a protective order to govern confidential information produced in this case. The parties have met about this issue multiple times and are very close to having a final agreement. Plaintiff is optimistic that the parties will be able to submit a stipulated proposed protective order shortly after the status conference on April 17, 2014.

### C. Authorizations

On March 27, 2014, GSK requested that Plaintiff sign a blank authorization (i.e., with no provider, company, or treater specified) to allow GSK to collect, with no time limitations, Mr. Dolin's (1) medical records, (2) insurance records (all insurance), (3) employment records, (4) educational records, (5) psychotherapy records and notes, (6) worker's compensation records, (7) all prior federal tax returns, (8) military records, and (9) social security earnings information.

Regarding (1) medical, (2) insurance, and (5) psychotherapy records, Plaintiff did not agree to provide blank authorizations to GSK, but agreed to provide specific authorizations for each provider or company that GSK specified. Accordingly, in response to various requests by GSK, Plaintiff has signed thirty-two (32) separate authorizations for various healthcare and insurance providers. In addition, GSK has already submitted twenty-six (26) record requests to

5

various individuals and organizations. GSK's Status Conference Statement asks this Court to direct Plaintiff, nonetheless, to sign GSK's blank authorization forms. Putting aside whether a motion to compel Plaintiff to sign blank authorizations would be a proper motion to compel under the rules, Plaintiff continues to object to any blank authorizations and has demonstrated that requiring specific authorizations will not materially hinder GSK's record collection efforts.

Regarding (3) employment and (4) educational records, Plaintiff did not object to providing blank authorizations.

Regarding (6) worker's compensation and (8) military records, since Mr. Dolin never submitted a worker's compensation claim nor did he ever serve in the military, these authorizations are unnecessary.

Regarding (7) all prior federal tax returns,[4] Plaintiff objects to this request because Mr. Dolin's tax returns contain private information that is not relevant and will not lead to the discovery of relevant information. In an effort to compromise, however, Plaintiff produced copies of Mr. and Mrs. Dolin's 1040s for the five years preceding Mr. Dolin's death. These documents provide detailed information about Mr. Dolin's income and tax liabilities. Indeed, these documents seriously undermine GSK's claim that Mr. Dolin's suicide was financially motivated. As it stands, the parties are still negotiating whether these produced 1040s are sufficient or whether there is some other possible compromise that would satisfy GSK. Should this issue not resolve through further meet and confers, the parties may need assistance from the Court to resolve this matter.

---

[4] In GSK's Status Conference Statement, it claims that there is a dispute over Mr. and Mrs. Dolin's financial information. This is not accurate. The dispute, which is not even ripe, concerns the amount of information GSK should have access to regarding Mr. Dolin's tax returns. Plaintiff is not disputing whether GSK should have access to Mr. Dolin's general financial information. Access to Mr. Dolin's tax returns, however, is much broader and Plaintiff is attempting to provide information about Mr. Dolin's financial status without allowing GSK to overreach into other, irrelevant topics.

Regarding (9) social security earnings information, the parties are still discussing exactly what GSK is seeking access to and whether that information has any bearing on this case.

### D. Additional Depositions and Interrogatories

Plaintiff has agreed to allow, in response to GSK's request, twelve (12) additional interrogatories in this case. Similarly, Plaintiff agreed to allow GSK to take up to twenty (20) depositions in this case. Plaintiff made these concessions in good faith and with the hope that GSK will not abuse the discovery process and harass the Dolin family or their various friends and colleagues. As it stands, the parties are cooperating on this issue.

### IV. Mediation and/or Settlement

The parties have not engaged in any settlement negotiations or scheduled any mediation. Prior to filing this lawsuit, Plaintiff served a demand letter on GSK, to which GSK categorically rejected. Plaintiff's demand, accordingly, has been withdrawn.

By: /s/ R. Brent Wisner
Bijan Esfandiari, Esq. (*pro hac vice*)
Michael L. Baum, Esq. (*pro hac vice*)
Frances M. Phares, Esq. (*pro hac vice*)
R. Brent Wisner, Esq. (*pro hac vice*)
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
(310) 207-3233
(310) 207-4204 (fax)

and

Joshua L. Weisberg, Esq.
Lindsey A. Epstein, Esq.
RAPOPORT LAW OFFICES, P.C.
20 North Clark Street, Suite 3500
Chicago, IL 60602
(312) 327-9880
(312) 327-9881 (fax)

*Attorneys for Plaintiff, Wendy Dolin*

7

**CERTIFICATE OF SERVICE**

I, R. Brent Wisner, hereby certify that, on April 16, 2014, I electronically filed **PLAINTIFF'S RESPONSE TO THE APRIL 17, 2014 STATUS CONFERENCE STATEMENT OF DEFENDANT GLAXOSMITHKLINE, LLC** for Plaintiffs, with the Clerk for the United States District Court for the Northern District of Illinois, Eastern Division using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ R. Brent Wisner
R. Brent Wisner