IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WENDY B. DOLIN, Individually and as Independent Executor of the ESTATE OF STEWART DOLIN, Deceased, | ) ) ) | Case No. 1:12-cv-06403 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge James B. Zagel |
| v. | ) | |
| | ) | |
| SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE, a Pennsylvania Corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GLAXOSMITHKLINE LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND ADDITIONAL DEPOSITION
TESTIMONY FROM PLAINTIFF'S EXPERT DR. DAVID HEALY**

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................................. 4

    A. Dr. Healy's Prior Public Disclosure and Discussion of the  GMC Investigation and His Testimony in the *Nieman* Deposition ............................................................................ 4

    B. GSK's Subpoena and Request for Production Of Documents ......................................... 6

    C. Dr. Healy's Deposition Testimony and Counsel's Instructions to  Dr. Healy Not To Answer Questions About the GMC Investigation ........................................................... 8

III. ARGUMENT ................................................................................................................... 10

    A. Dr. Healy Should Be Compelled to Produce Documents  Responsive to GSK's Subpoena and Document Requests ................................................................................ 11

        1. *The requested documents seek relevant information about  Dr. Healy's qualifications, bias, and credibility.* .................................................................... 11

        2. *Plaintiff failed to establish the existence of any applicable privilege.* ................ 12

        3. *There is no legal basis for the failure to  produce documents obtained through FOIA.* ................................................................................................................ 15

        4. *Plaintiff's remaining objections are meritless.* .................................................... 18

    B. Dr. Healy Should Be Compelled to Respond to Questions Relating to His Referral to the GMC and the Investigation That Led to That Referral ........................................... 20

IV. CONCLUSION ................................................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*In re Aircrash Disaster Near Roselawn, Indiana Oct. 31, 1994*,
 172 F.R.D. 295 (N.D. Ill. 1997).......................................................................11, 14

*Alexander Binzel Corp. v. Nu-Tecsys Corp.*,
 No. 91 C 2092, 2000 WL 310304, at \*9 (N.D. Ill. Mar. 24, 2000) ........................16

*Amari Co. v. Burgess*,
 No. 07-1425, 2009 WL 1269704 (N.D. Ill. Apr. 30, 2009)....................................20

*Arenson v. Whitehall Convalescent and Nursing Home, Inc.*,
 161 F.R.D. 355 (N.D. Ill. 1995)...........................................................................14

*Babych v. Psychiatric Solutions, Inc.*,
 271 F.R.D. 603, 608 (N.D. Ill. 2010) ...................................................................13

*Carrizales v. Bd. of Educ. of Rockford School Dist.*,
 No. 03 C 50459, 2004 WL 2385028 (N.D. Ill. Oct. 22, 2004)..........................12, 13

*Charter Practices Int'l v. Robb*,
 No. 12 CV 1768, 2014 WL 273855, at \*2 (D. Conn. Jan. 23, 2014) ....................17

*Contreras v. Secretary of Health & Human Services*,
 116 Fed. Cl. 472, 477-478 (Fed. Cl. 2014) ...........................................................11

*Davis v. Carmel Clay Sch.*,
 282 F.R.D. 201 (S.D. Ind. 2012)...........................................................................15

*Digan v. Euro-American Brands, LLC*,
 No. 10 C 799, 2012 WL 668993 (N.D. Ill. Feb. 29, 2012).....................................12

*E.E.O.C. v. Sears, Roebuck & Co.*,
 114 F.R.D. 615 (N.D. Ill. 1987).............................................................................11

*Expeditors Int'l of Wash., Inc. v. Vastera, Inc.*,
 No. 04 C 0321, 2004 WL 406999 (N.D. Ill. Feb. 26, 2004) (Zagel, J.) .................12

*First Time Videos, LLC v. Does 1-500*,
 276 F.R.D. 241 (N.D. Ill. 2011).............................................................................5

*Grant v. Standard Ins. Co.*,
 No. 11 CV 6454, 2013 WL 2434698 (N.D. Ill. June 4, 2013) (Zagel, J.) ...............12

*Herbert v. Lando*,
    441 U.S. 153, 175, 99 S. Ct. 1635, 1648 (1979)......................................................12

*Hill v. Asset Acceptance LLC*,
    No. 13 CV 1718, 2014 WL 3014945, at *7 (S.D. Cal. July 3, 2014)....................17

*Hill v. Gonzalez*,
    No. 11 CV 1071, 2015 WL 1657781, at *6 (E.D. Cal. Apr. 14, 2015) .................17

*Jackson v. West Virginia Univ. Hosp.*,
    No. 10 CV 107, 2011 WL 1831591, at *3-4 (N.D.W.Va. May 12, 2011) ............18

*Lenz v. Universal Music Corp.*,
    No. 5:07-cv-03783, 2010 WL 4789099 (N.D. Cal. Nov. 17, 2010)......................15

*Odongo v. City of Indianapolis*,
    No. 14-CV-710, 2015 WL 420110, at *2 (S.D. Ind. Jan. 30, 2015).....................13

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978).............................................................................................11

*Petruska v. Johns-Manville*,
    83 F.R.D. 32, 35 (E.D. Pa. Apr. 30, 1979)...........................................................17

*Prasad Industries v. Flat Irons Environmental Solutions Corp.*,
    No. CV-12-08261, 2014 WL 2804276, at *8 (D. Ariz. June 20, 2014) .................19

*Provident Mutual Life Ins. v. Dumlao*,
    No. 87 C 6161, 1989 WL 2217 (N.D. Ill. Jan. 10, 1989) .......................................14

*S2 Automation LLC v. Micron Technology, Inc.*,
    No. CIV 11-0884, 2012 WL 3656454, at *37 (D.N.M. Aug. 9, 2012) .................17

*Specht v. Google, Inc.*,
    268 F.R.D. 596 (N.D. Ill. 2010)............................................................................20

*St. Paul Reinsurance Co. Ltd. v. Commercial Financial Corp.*,
    198 F.R.D. 508, 514 (N.D Iowa 2000) ..................................................................16

*United States v. York*
    933 F.2d 1343, 1365 (7th Cir. 1991) .....................................................................11

*Valero Energy Corp. v. United States*,
    569 F.3d 626, 630 (7th Cir. 2009) .........................................................................12

**Statutes**

Evidence (Proceedings in Other Jurisdictions) Act, 1975 ........................................................7, 17

Freedom of Information Act ........................................................................................5, 7, 8, 15

# I.    <u>INTRODUCTION</u>

Plaintiff Wendy Dolin alleges that her husband, Stewart Dolin, committed suicide because of his ingestion of generic paroxetine hydrochloride, a medication manufactured and sold by Mylan Pharmaceuticals.  In support of her claims, Plaintiff submitted an expert report from Dr. David Healy, a psychiatrist from Wales, England, on the issue of general causation (*i.e.,* whether paroxetine can cause suicide).

Prior to Dr. Healy's deposition, GSK learned from Dr. Healy's own publicly-available blog and his deposition testimony in another matter that an investigation into his clinical practice led to his referral (in 2014) to the General Medical Council ("GMC"), the professional organization that licenses doctors in the United Kingdom ("UK").[1]  (This investigation will be referred to as the "GMC Investigation.")  Based on this information, GSK served a subpoena *duces tecum* on Dr. Healy while he was in the United States to produce, *inter alia*, certain documents relating to the referral and the investigation that led to that referral.  (*See* Ex. 2).  GSK also served a document request as part of the Deposition Notice for Dr. Healy's deposition, requesting, *inter alia*, production of the same documents as those requested in the subpoena.  (*See* Ex. 3).  In response to the subpoena and document requests, Plaintiff's counsel served a largely identical set of objections, and Dr. Healy failed to produce any responsive documents about the GMC Investigation.  (*See* Ex. 4 and Ex. 5.)  Specifically, Plaintiff's counsel and Dr. Healy claimed, *inter alia*, that the requested documents were privileged and irrelevant to any claim or defense in this case.

---

[1]  *See The Medical Register*, Gen. Med. Council, http://www.gmc-uk.org/doctors/medical_register.asp (last visited Apr. 13, 2015); (*see also* relevant pages of Dr. Healy's Deposition in *Nieman v. Forest Labs*, at 85:4-9, No. 30-2012-00579017 (Super. Ct. Cal. Jan. 27, 2015) (acknowledging that the GMC is responsible for licensing of physicians in the UK), relevant pages attached as Ex. 1).

At his April 2, 2015 deposition in this case, Dr. Healy's United Kingdom barrister (Ms. Jacqueline Perry) and Plaintiff's counsel (Mr. Michael Baum) instructed Dr. Healy not to answer any questions relating to any details of his referral, the investigation that led to that referral, or the underlying incident(s) that started the investigation. Counsel contended that the principal basis of the objections was that the information was "privileged," and not relevant to this litigation. Plaintiff's counsel took this position even though Dr. Healy (i) extensively discussed the investigation and the resulting GMC referral on his publicly available blog and (ii) testified about these issues just a few months earlier at another deposition, where he even volunteered to make certain documents, related to these issues, available to opposing counsel. In Dr. Healy's words from that deposition, "one of the things that will probably be relatively important is for me to get those [documents] to you, to get it to both sides so you can make up your mind as to what's going on." (*See* Healy Dep. in *Nieman* (Ex. 1) at 75:6-13.)

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████[2]

GSK respectfully submits that there is no legal basis for counsel's withholding of the requested documents or instructions to Dr. Healy not to answer questions relating to his referral. The requested documents and testimony are plainly relevant to Dr. Healy's qualifications, credibility, and potential bias against GSK. Similarly, Plaintiff's counsel

---

[2] GSK has redacted portions of this brief which discuss Dr. Healy's testimony in this case because the transcript bears the designation "Confidential" which was placed on the transcript by someone other than GSK.

has not invoked any legally-cognizable privilege.  First, generic references to documents protected by the attorney-client privilege, work product doctrine, physician-patient privilege, etc. do not comply with FED. R. CIV. P. Rule 45 and 26 because they do not give GSK or this Court sufficient information to assess the claims.  Second, as counsel for GSK made clear at Dr. Healy's deposition, to the extent that Plaintiff's objections are based on any personal patient information contained in the requested documents, GSK agrees that such information could be redacted from the documents.  Nor is GSK interested in eliciting testimony as to any such patient-identifying information at a deposition of Dr. Healy.  Third, with respect to any claim of privilege by Dr. Healy -- even if any existed (which GSK disputes) -- Dr. Healy clearly waived that claim by discussing his referral, the underlying investigation, and the incident that led to that referral at length on his publicly-available blog.  This included Dr. Healy posting, *inter alia*, quotes from some of the requested documents.  Moreover, at the *Nieman* deposition (referenced *supra*) only a few months ago, Dr. Healy provided responsive answers to certain questions regarding these issues without disclosing any patient-identifying information and without asserting a claim of privilege.

For these and other reasons detailed below, GSK respectfully requests that the Court compel Plaintiff and Dr. Healy to provide documents responsive to the subpoena and document requests relating to Dr. Healy's referral.  GSK further requests that the Court order (1) the reconvening of Dr. Healy's deposition for an additional 90 minutes one week after Dr. Healy produces the requested documents; and (2) that Dr. Healy respond to questions relating to his referral and to the GMC Investigation.

## II.     FACTUAL BACKGROUND

### A.     Dr. Healy's Prior Public Disclosure and Discussion of the GMC Investigation and His Testimony in the *Nieman* Deposition

Dr. Healy is a psychiatrist who resides in Wales, UK. ███████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████ On this blog, Dr. Healy makes claims about purported side effects of various medications and conspiracy theories regarding pharmaceutical manufacturers generally, and GSK in particular. (*See* DR. DAVID HEALY, http://davidhealy.org/ (last visited Apr. 15, 2015).) In numerous blog posts from 2014 to 2015, Dr. Healy discussed an incident that led to the GMC Investigation.

For example, on October 2, 2014, Dr. Healy blogged about a Serious Untoward Incident ("SUI") involving the death of a patient in his care (identified as "CASE A") that led to his referral to the GMC. The blog entry included portions of email correspondence from the external investigator of the SUI, Dr. Robert Higgo, regarding the "investigation" and noted that the issue of Dr. Healy's "clinical practice had been flagged up" for the Medical Director of BCUHB, Dr. Makin.[3]

On October 27, 2014, Dr. Healy blogged that "a viscerally hostile report on Dr. A (me), landed on Dr. Makin's desk urging that my clinical practice needed to be investigated. It was

---

[3] *See Persecution of Vulnerable Adults: POVA*, DR. DAVID HEALY (Oct. 2, 2014), http://davidhealy.org/persecution-of-vulnerable-adults-pova/ (Ex. 7); *see also Persecution: SUI-Cide is Painless in Betsi*, DR. DAVID HEALY (Oct. 20, 2014), http://davidhealy.org/persecution-sui-cide-is-painless-in-betsi/ (Ex. 8).

this that led to the GMC referral."[4]  In a November 1, 2014, blog, Dr. Healy made clear that the

"viscerally hostile report" was authored by Dr. Higgo after Dr. Higgo's investigation of the SUI.

Dr. Healy further wrote that, prior to that report, Dr. Poole, the Lead for the Royal College of

Psychiatrists' Invited Review Service,[5] sent a letter to Dr. Makin, stating, in relevant part:  "The

SUI review is ongoing, but Dr. Higgo has formally expressed concern that Professor Healy's

practice and behaviour in the case fell short of GMC's standards, set out in Good Medical

Practice, on a large number of different counts."  Dr. Healy further added that "letters from him

[Dr. Poole] are in essence being written by a College committee."[6]

On January 27, 2015, Dr. Healy was deposed in an unrelated case involving another

pharmaceutical manufacturer.  At that deposition, Dr. Healy described in detail the incident

involving the "CASE A" patient that led to his referral and claimed that "the Royal College of

Psychiatrists, it would appear, have been very keen to cause problems for Healy." (*See* Healy

Dep. in *Nieman* (Ex. 1) at 88:6-93:10.)  Dr. Healy elaborated as follows:

> And they [Royal College of Psychiatrists] wrote to the health board on
> many occasions during the course of the next half year saying, what are
> you doing about Healy?  You know, we've been told that this incident
> happened with one of his patients and if this is happening, you know, it's -
> - clearly, you ought to be doing things about Healy.  You should suspend
> Healy for instance. (*Id.* at 79:6-13.)

Dr. Healy testified that he learned this and other information from the documents

he obtained from the Health Board under the United Kingdom's Freedom of Information

---

[4] *See Persecution:SUI-Cide Trick or Treat?*, DR. DAVID HEALY (Oct. 27, 2014), http://davidhealy.org/persecution-sui-cide-trick-or-treat/ (Ex.9).

[5] The Royal College of Psychiatrists is the main professional organization of psychiatrists in the UK and one with which all psychiatrists in the UK are affiliated. (*See* Healy Dep. in *Dolin* (Ex. 6) at 451:11-452:11).

[6] *See Persecution: SUI-Cide Note*, DR. DAVID HEALY (Nov. 1, 2014), http://davidhealy.org/persecution-sui-cide-note/ (Ex. 10).

Act ("FOIA"). Notably, Dr. Healy offered to share these documents with the opposing

counsel in the *Nieman* case, and even thought that it was "important" to do so:

> Well, what happened last year is that -- well, there's a lot of documents
> that I've got under Freedom of information from the health board. And
> one of the things that will probably be relatively important is for me to get
> those to you, to get it to both sides so you can make up your mind as to
> what's going on.

(*Id.* at 75:6-13.) Dr. Healy further testified that the investigation that led to his referral

was evidence of harassment and persecution, potentially by the pharmaceutical industry

generally or GSK specifically. (*See* Healy Dep. in *Nieman* (Ex. 1) at 84:17-22; 178:22-

179:3.)

### B.     GSK's Subpoena and Request for Production Of Documents

On March 19, 2015, GSK served a subpoena *duces tecum* on Dr. Healy, in person,

in Seattle, Washington. (*See* Ex. 2.) The subpoena requested Dr. Healy to produce, in

relevant part:

1.  All records of communications with the Hergest Unit, or with any other person or entity, on the subject of whether Dr. Healy's right to see patients at that facility should be terminated, suspended, or otherwise limited.

2.  All documents (including, but not limited to, reports, paper and email correspondence, and any other electronic communications) related to Dr. Healy's referral to the General Medical Council and the Serious Untoward Incident(s) in 2013-2014, including, but not limited to:
    i.    Dr. Robert Higgo's report(s) regarding investigation of Dr. Healy's clinical practice;
    ii.   all correspondence between Dr. Robert Poole and Dr. Healy regarding the Serious Untoward Incident and Dr. Healy's referral;
    iii.  all correspondence between the General Medical Council and Dr. Healy regarding the status of the referral;
    iv.   all documents obtained by Dr. Healy from the Betsi Cadwaladr University Health Board or its employees;

v.    all documents sent by, or on behalf of, Dr. Healy to the Betsi Cadwaladr University Health Board or its employees;

vi.    all correspondence or documents from the Royal College of Psychiatrists relating to Dr. Healy;

vii.    all correspondence or documents sent by, or on behalf of, Dr. Healy to the Royal College of Psychiatrists;

viii.    all documents obtained by Dr. Healy under Freedom of Information Act from the Betsi Cadwaladr University Health Board.

On March 24, 2015, GSK served on Plaintiff the Notice of Videotaped Deposition of Dr. David Healy, which included requests for production of documents. Among these, Requests No. 7 and No. 8 were identically-worded to subpoena items 1 and 2 above. (*See* GSK's Notice of Videotaped Deposition, Ex. 3.)

On April 1, 2015, the day before Dr. Healy's deposition, counsel for the Plaintiff served a laundry list of objections to the subpoena, including objections on the grounds of relevance, confidentiality, and provisions of the Evidence (Proceedings in Other Jurisdictions) Act, 1975, c. 34, §§ 2, 3 (U.K.),[7] (the "Evidence Act"). (*See* Objections by Dr. David Healy to GSK's Non-party Subpoena ("Objections to Subpoena"), Ex. 4.) The next day, counsel for the Plaintiff served Objections and Responses by Plaintiff And Her Expert, Dr. David Healy, To The Document Requests Served With GSK's Notice Of Videotaped Deposition Of Dr. Healy, with a set of objections to Requests No. 7 and No. 8 largely identical to objections to items 1 and 2 of the subpoena. (*See* Plaintiff and Dr. David Healy Objections to Document Requests ("Objections to Document Requests"), Ex. 5.)

---

[7] *Available at* http://www.legislation.gov.uk/ukpga/1975/34/contents (Ex. 11).

### C.    Dr. Healy's Deposition Testimony and Counsel's Instructions to Dr. Healy Not To Answer Questions About the GMC Investigation

On April 2, 2015, GSK deposed Dr. Healy in London, England.  Mr. Michael

Baum appeared on behalf of the Plaintiff and a UK barrister, Ms. Jacqueline Perry,

appeared on behalf of Dr. Healy.  █████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

---

[8] This is a reference to a manuscript co-authored by Dr. Healy titled "Restoring Study 329: A randomized, controlled trial of the efficacy and harms of paroxetine and imipramimne in the treatment of adolescent depression."  The manuscript purports to be a re-analysis of Study 329, which the authors claim "is an example of a misreported trial in need of restoration," allegedly because the article reporting the results was ghostwritten and scientifically inaccurate. GSK vigorously disputes Dr. Healy's claims about the article.



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[9] *See Persecution: SUI Cide or HomiCide?*, DR. DAVID HEALY (Nov. 10, 2014), http://davidhealy.org/persecution-sui-cide-or-homicide/ (Ex. 12).



Following Dr. Healy's deposition, GSK's counsel conducted a meet and confer with Plaintiff's counsel about the substance of this motion. (*See* Declaration of Todd P. Davis ("Davis Decl.") (Ex. 14) at 1-2.) As part of that discussion, GSK's counsel requested that Plaintiff's counsel or Dr. Healy's counsel prepare a privilege log to identify what was being withheld and to provide the documents Dr. Healy obtained under the FOIA provisions. Plaintiff's counsel did not agree to do so. (*Id*. at 2.) Contrary to their previous assertions, Plaintiff's counsel also now claimed that "[i]f GSK were to request [the FOIA] documents, it is our understanding access would be denied based on personal, employment, and patient privacy privileges." (*See* Davis Decl. (Ex. 14); April 19, 2015 email from Mr. Baum, attached to Davis Decl. as Ex. A.)

## III.  <u>ARGUMENT</u>

A.    **Dr. Healy Should Be Compelled to Produce Documents
Responsive to GSK's Subpoena and Document Requests**

1.    *The requested documents seek relevant information about
Dr. Healy's qualifications, bias, and credibility.*

It is well settled that discovery of "any matter relevant to the subject matter involved in

the [pending] action" is proper. *See* FED. R. CIV. P. 26(b)(1); *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 351 (1978); *In re Aircrash Disaster Near Roselawn, Indiana Oct. 31,*

*1994*, 172 F.R.D. 295 (N.D. Ill. 1997). Broad discovery is encouraged under the Federal Rules

such that relevancy is construed to encompass any matter that bears on, or could reasonably lead

to other matters that could bear on, any issues in the case. *In re Aircrash*, 172 F.R.D. at 303.

Here, the documents sought bear on Dr. Healy's background, bias and credentials, which are

indisputably relevant to his credibility as a purported expert witness.

As an initial matter, it is axiomatic that an expert witness must have the requisite

qualifications to provide expert testimony. FED. R. EVID. 702. Licensure problems or

investigations by professional licensing bodies (that relate to the credentials pertinent to the

expert's testimony) are patently relevant to the expert's qualifications to testify. *See, e.g.,*

*E.E.O.C. v. Sears, Roebuck & Co.*, 114 F.R.D. 615, 623 (N.D. Ill. 1987) (defendant's inquiries

into the background of the plaintiff's expert witnesses "were obviously necessary to the

preparation of [the defendant's] defense"); *Contreras v. Secretary of Health & Human Services*,

116 Fed. Cl. 472, 477-478 (Fed. Cl. 2014) (expert's licensure problems were relevant to his

qualifications to testify). For example, in *United States v. York*, the Seventh Circuit held that it

was appropriate to conduct a voir dire of an expert forensic pathologist that "focused on several

instances of *allegedly* unprofessional conduct he committed while he was the chief medical

examiner." 933 F.2d 1343, 1365 (7th Cir. 1991) (emphasis added; reversed on other grounds)). The court reasoned as follows:

> Under Rule 702, a witness must qualify as an expert in order to testify about "scientific, technical, or other specialized" matters. To that end, the defense introduced evidence of Dr. Spitz's professional qualifications, including his lengthy stint as the chief medical examiner of Wayne County, Michigan. The prosecution had a right to challenge the adequacy of those qualifications. **Its questions about Dr. Spitz's professional conduct while he held the office of chief medical examiner were relevant to the weight to be accorded that credential by the district court. If, as the prosecution maintained, Dr. Spitz conducted some of his official duties in an unprofessional manner, the district judge and the jury could have reasonably discounted the value of that service for establishing Dr. Spitz's professional qualifications.**

*Id.* (emphasis added; internal citations omitted). For similar reasons, the documents requested by GSK are relevant to Dr. Healy's qualifications to provide expert testimony in this matter.

No less importantly, the documents are relevant to the potential bias Dr. Healy may have against GSK based on his claims that GSK specifically, or the pharmaceutical industry generally, may be behind his referral to the GMC. *Grant v. Standard Ins. Co.*, No. 11 CV 6454, 2013 WL 2434698, at *1 (N.D. Ill. June 4, 2013) (Zagel, J.) (granting motion to compel discovery of evidence related to potential bias of physicians retained to assess plaintiff's medical condition); *Expeditors Int'l of Wash., Inc. v. Vastera, Inc.*, No. 04 C 0321, 2004 WL 406999, at *2 (N.D. Ill. Feb. 26, 2004) (Zagel, J.) (ordering production of materials relevant to expert's credibility); *Digan v. Euro-American Brands, LLC*, No. 10 C 799, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012) (finding that information on potential witnesses' bias is relevant and therefore discoverable).

## 2. *Plaintiff failed to establish the existence of any applicable privilege.*

It is well-established that "whoever asserts a privilege has the burden of proving that the information sought by the subpoena is privileged." *Carrizales v. Bd. of Educ. of Rockford School Dist.*, No. 03 C 50459, 2004 WL 2385028, at *1 (N.D. Ill. Oct. 22, 2004).

Under Rule 45, a party withholding documents based on a claim of privilege must "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FED. R. CIV. P. 45(e)(2)(A)(ii). Rule 26 contains a similar provision. FED. R. CIV. P. at 26(b)(5)(A)(ii). "As such, when a subpoenaed party seeks to withhold information believed to be privileged, the party must expressly claim the privilege and describe the nature of the documents, communications, or things not produced in sufficient detail that the court and parties can assess the privilege." *Carrizales*, 2004 WL 2385028, at *1. "In the Seventh Circuit, this requirement demands the use of a 'proper privilege log,' which requires 'a document-by-document description of the privilege asserted and the facts supporting it." *Odongo v. City of Indianapolis*, No. 14-CV-710, 2015 WL 420110, at *2 (S.D. Ind. Jan. 30, 2015). Indeed, this Court has emphasized that "a timely and adequate privilege log is required by the federal rules, and [] *failure to serve an adequate privilege log may result in waiver of any protection from discovery*." *Babych v. Psychiatric Solutions, Inc.,* 271 F.R.D. 603, 608 (N.D. Ill. 2010) (emphasis added).

Plaintiff's claims of privilege are too vague and undefined to even be addressed by GSK. Plaintiff's generic references to documents protected by the attorney-client privilege, work product doctrine, physician-patient privilege, or "confidentiality provisions of the [unspecified] institution in question"[10] are plainly insufficient to invoke any privilege as they do not comply

---

[10] *See* Objections to Subpoena (Ex. 4) at 4-5; Objections to Document Requests (Ex. 5) at 7-8.

with Rule 45 or 26 and do not give GSK or this Court sufficient information to assess the claims.

As this Court wrote under identical circumstances:

> The discovery opponent must state the [privilege] claim expressly and describe the nature of the document so withheld in a manner that will enable the other parties to assess the claim of privilege. The aircraft defendants have not done so and this is fatal to this objection and claim. **The mere naked claim of privilege, as occurs in this case, does not justify a refusal to identify or produce the information and documents requested. The aircraft defendants have proceeded improperly in their objections based on privilege, since they have not identified the documents for which the claim is made nor supplied the information required under Fed.R.Civ.P. 26(b)(5).** Accordingly, any claims of privilege made by defendants to plaintiffs' First Requests for Production are denied.

*In re Aircrash Disaster*, 172 F.R.D. at 307 (emphasis added; internal citations omitted).

For the same reasons, Plaintiff's naked claims of privilege must be denied here as well.

Importantly, to the extent that Plaintiff's objections are based on any personal patient information contained in the requested documents, GSK has made it amply clear that it has no interest in such information and has no objection if personally-identifiable information is redacted from such documents. Indeed, this court routinely allows disclosure of relevant documents subject to redaction of personally-identifiable information in order to protect non-parties. *See Provident Mutual Life Ins. v. Dumlao*, No. 87 C 6161, 1989 WL 2217, at *2 (N.D. Ill. Jan. 10, 1989) (ordering defendant physician to produce patient medical and billing histories and finding that deletion of patient names, addresses, phone numbers, and similar identifying information was sufficient to protect patient confidentiality); *Arenson v. Whitehall Convalescent and Nursing Home, Inc.,* 161 F.R.D. 355 (N.D. Ill. 1995) (disclosure of documents listing names and prescription drugs taken by non-party patients permitted after redaction because of presumption in favor of discovery). This is particularly true where, as here, redaction of personal information is a sufficient safeguard against any potential invasion of privacy, and there is no

claim, much less evidence, that GSK seeks to disseminate the contents of the documents.  *Davis v. Carmel Clay Sch.*, 282 F.R.D. 201, 204 (S.D. Ind. 2012) (holding redaction sufficient when there is no allegation or likelihood that the insurance company would disclose confidential information to third parties); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011) (holding that "subpoenas can compel production even of the most widely-accepted forms of privileged and confidential information, such as journalistic privilege or doctor-patient confidentiality").

Lastly, any claim that the information sought is privileged is belied by Dr. Healy's own actions.  Dr. Healy has discussed this information at length on his publicly-available blog, and has even quoted from documents that GSK seeks.  Thus, any claim of "privilege" by Dr. Healy has patently been waived.  *See, e.g., Lenz v. Universal Music Corp.*, No. 5:07-cv-03783, 2010 WL 4789099, at *4-5 (N.D. Cal. 2010) (plaintiff's postings on her blog waived the attorney-client privilege on related subject matter).  This is true even under English law.  (*See* Declaration of Jane Player ("Player Decl.") (Ex. 15) at ¶¶ 9-10.)  Thus, no claim of privilege prevents the production of the documents sought.

**3.      *There is no legal basis for the failure to produce documents obtained through FOIA.***

Plaintiff's initial refusal to produce the documents Dr. Healy has obtained from the UK Health Board pursuant to FOIA, on the grounds that they are equally available to GSK, is entirely improper.  As an initial matter, once documents are produced under the United Kingdom Freedom of Information Act (2000) ("FOIA") by a United Kingdom public authority either with or without redactions, there are no further restrictions on the receiving or requesting person's use of the documents or information received.  (Player Decl. (Ex. 15) at ¶ 4.)  Thus, nothing prohibits or impairs Dr. Healy's production of the documents he received pursuant to that Act.

15

Additionally, the proposition that GSK could obtain the same documents through FOIA is uncertain at best, given that Dr. Healy is obviously in the best, and perhaps only, position to know which documents to request. By contrast, without guidance as to which documents Dr. Healy requested, GSK may have to make repeated requests, unnecessarily burdening public resources and risking a finding that the requests are "vexatious" within the meaning of Section 14 of the Act.[11]  (*See* Player Decl. at ¶¶ 5-7.)  Secondly, even if the same documents could be obtained by GSK, obtaining these documents from the UK would involve substantial delay. Indeed, GSK may not be able to obtain these documents in time for trial.

Moreover, it is well-settled that a party's obligation to produce documents is not obviated by the fact that the same documents may be discoverable through other means, unless production would be unduly burdensome.  As summed up by one district court:

> The plaintiffs' fifth objection to [defendant's] request is based on the ground that it seeks information and documents equally available to the propounding parties from their own records or from records which are equally available to the propounding parties. **However, with respect to this objection, courts have unambiguously stated that this exact objection is insufficient to resist a discovery request. . . . Nevertheless, plaintiffs assert this meritless ground as a basis for their objection.**

*St. Paul Reins. Co. Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D Iowa 2000) (emphasis added; citations omitted); *see also, Alexander Binzel Corp. v. Nu-Tecsys Corp.*, No. 91 C 2092, 2000 WL 310304, at *9 (N.D. Ill. Mar. 24, 2000) ("The court recognizes that a party seeking discovery 'is not limited to facts exclusively or peculiarly within the knowledge of the opponent. This is true even where the interrogator has at his disposal an adequate or even better source of information.'"); *Hill v. Gonzalez,* No. 11 CV 1071, 2015 WL 1657781, at *6 (E.D. Cal.

---

[11] *See* Freedom of Information Act, Dealing with vexatious requests (section 14), https://ico.org.uk/media/for-organisations/documents/1198/dealing-with-vexatious-requests.pdf (Ex. 16).

Apr. 14, 2015) ("Defendant's objection that some of these documents may be equally available to Plaintiff also is overruled. . . . [T]he Court finds that requiring Defendant to produce any and all documents relating to the events at issue is not unduly burdensome."); *Charter Practices Int'l v. Robb*, No. 12 CV 1768, 2014 WL 273855, at *2 (D. Conn. Jan. 23, 2014) ("The defendant objects to producing the requested documents because they are 'available online' and as such, equally available to the plaintiffs. This objection is insufficient to resist a discovery request); *Hill v. Asset Acceptance LLC*, No. 13 CV 1718, 2014 WL 3014945, at *7 (S.D. Cal. July 3, 2014) ("Defendant's additional objection that the court records are publicly available to Plaintiff is not persuasive."); *S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884, 2012 WL 3656454, at *37 (D.N.M. Aug. 9, 2012) ("Automation must produce any responsive documents that are within S2 Automation's control, using the Court's interpretation of the term control. As a general matter, parties cannot avoid their discovery obligations by stating that 'the discovery sought ... can be obtained from some other source.'"); *Petruska v. Johns-Manville*, 83 F.R.D. 32, 35 (E.D. Pa. Apr. 30, 1979) ("Defendants argue that Quebec Asbestos Mining Association records can be secured directly from the Association. But it is 'not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.' Here, plaintiff may have difficulty obtaining records from a foreign association, and the records sought are only those in defendant's possession." (citation omitted)).

Indeed, under virtually identical circumstances, another district court rejected plaintiff's objection to defendant's document request, aptly characterized by the court as "*If I had to go to the trouble of getting this information from the internet, from EEOC and through a FOIA request, you Defendant can get it just as easily as or easier than I did using the same sources and therefor you don't have a right to have me hand it to you.*" *Jackson v. West Virginia Univ.*

*Hosp.*, 2011 WL 1831591, at *3-4 (N.D.W.Va. May 12, 2011) (emphasis in the original). Emphasizing that "production through discovery as opposed to FOIA, EEOC or internet search promotes clarity in the litigation context," and that there was no evidence that producing the requesting documents was unduly burdensome, the court granted defendant's motion to compel. *Id.* Similarly here, it is undisputed that Dr. Healy is in possession of these documents and can readily produce them without undue burden or delay. ***As set forth supra, he has offered to produce these documents to opposing counsel in another case and even testified that it was "important" to do so.***

Notably, in an apparent about-face -- in an email exchange subsequent to Dr. Healy's deposition -- counsel for Plaintiff claimed that the FOIA documents were privileged and that "[i]f GSK were to request [the FOIA] documents, it is our understanding access would be denied based on personal, employment, and patient privacy privileges." (*See* Davis Decl. (Ex. 14); April 19, 2015 email from Mr. Baum, attached to Davis Decl. as Ex. A.) However, there is no legal basis for this claim; indeed, the fact that the documents were provided to Dr. Healy through FOIA reflects that they are not, in fact, privileged.[12] (*See* Player Decl. (Ex. 15) at ¶¶ 9-10.)

### 4. *Plaintiff's remaining objections are meritless.*

Plaintiff's objection that the document requests invade Dr. Healy's "constitutional or other rights of personal privacy" has no basis in law. Dr. Healy is voluntarily participating in these proceeding as a paid expert, and GSK has a right to discover information directly pertinent to his qualifications and potential bias. In any event, any right to "privacy" relating to the documents in question was clearly waived when Dr. Healy discussed them, and quoted portions from them, in his publicly-available blog.

---

[12] As set forth in Section III(A)(2), *supra*, Plaintiff's "naked" claims of privilege also fail to comply with Rules 45 and 26 of the Federal Rules of Civil Procedure.

18

Plaintiff's reliance on the provisions of the Evidence Act, is similarly meritless. Plaintiff cites to Section 3 of the Act; however, both Sections 2 and 3 of the Act make clear that the Act's provisions only apply when testimony is compelled by an order of a UK court.[13] Since Dr. Healy voluntarily insinuated himself into U.S. proceedings by participating as a paid expert witness ████████████████████████████████████████████████████████ ████████████.[14] Finally, the provisions of the Act are not applicable and cannot be relied upon by Dr. Healy. (Player Decl. (Ex. 15) at ¶ 11.)

Lastly, Plaintiff's objection to GSK's subpoena on the ground of purported non-compliance with the geographical limits specified in FED. R. CIV. P. 45(C)(2)(A) is nothing but a red herring. As noted *supra*, the same document requests were served on Plaintiff's counsel as part of GSK's Notice of Videotaped Deposition of Dr. Healy, and GSK received nothing but the same laundry list of objections in response. Notably, Plaintiff raised no objection on the ground that the document requests were not directed to Dr. Healy specifically and, indeed, interposed objections on both her and Dr. Healy's behalf. Moreover, if it is unduly burdensome for Dr. Healy to send the documents to the United States, GSK will arrange to have them collected at the location in the UK most convenient for Dr. Healy. *See, e.g., Prasad Industries v. Flat Irons Environmental Solutions Corp.,* No. CV-12-08261, 2014 WL 2804276, at *8 (D. Ariz. June 20, 2014) (refusing to quash the subpoena that required production of documents from a non-party more than 100 miles from his residence or place of business, stating that the requesting party's willingness -- expressed in response to the motion to quash -- to accept the documents at a location 3 miles away "renders any argument pursuant to Rule 45(d)(3)(A)(ii) moot.")

---

[13] *See* Evidence (Proceedings in Other Jurisdictions) Act, 1975, c. 34, §§ 2, 3 (U.K.), *available at* http://www.legislation.gov.uk/ukpga/1975/34/contents (Ex. 12).
[14] ████████████████████████████████████████

**B.     Dr. Healy Should Be Compelled to Respond to Questions Relating to His Referral to the GMC and the Investigation That Led to That Referral**

As set forth in detail in the factual background section *supra*, counsel for Plaintiff directed Dr. Healy not to answer pages of questions relating to his referral to the GMC and the investigation that led to that referral.

As an initial matter, to the extent that the instruction not to answer was based on the lack of relevance or any ground other than privilege, such an instruction is plainly contrary to the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 30(c)(2) ("A person may instruct a deponent not to answer *only when necessary to preserve a privilege*, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)") (emphasis added).  "The gist of this rule is simple: unless the attorney claims the question calls for privileged information, the attorney must only state his objection and allow the client to answer."  *Amari Co. v. Burgess*, No. 07-1425, 2009 WL 1269704, at *1 (N.D. Ill. Apr. 30, 2009).  "Thus, a party who wishes to object to a question must do so concisely, and the deponent must still answer the question."  *Specht v. Google, Inc.*, 268 F.R.D. 596, 598 (N.D. Ill. 2010).

Secondly, Plaintiff's counsel's nonspecific and inchoate claims of privilege are insufficient to prevent GSK from discovering information relevant to Dr. Healy's qualifications and credibility. For the reasons set forth above, Dr. Healy waived any assertion of privilege by his voluntary and deliberate discussion of these issues on his publicly available blog and any concern about patient confidentiality can be obviated by withholding names and other information identifying specific patients. (*See also* Player Decl. (Ex. 15) at ¶¶ 9-10.)  Indeed, at the *Nieman* deposition, Dr. Healy proved to be perfectly capable of discussing the information at issue without revealing any patient-identifying details.

Accordingly GSK respectfully requests that Dr. Healy be compelled to respond to questions relating to his referral to the GMC and the investigation that led to that referral. GSK requests that it be permitted to depose Dr. Healy for an additional 90 minutes on these issues after Dr. Healy produces documents responsive to GSK's subpoena and requests for production.

## IV.    CONCLUSION

For the foregoing reasons, GSK respectfully requests that the Court order Plaintiff and Dr. Healy to provide documents responsive to items 1 and 2 of GSK's subpoena and/or the identical Requests 7 and 8 in GSK's Requests for Production of Documents. GSK further respectfully requests that the Court order the reconvening of Dr. Healy's deposition for an additional 90 minutes and direct Dr. Healy to respond to questions relating to his referral to the GMC and the investigation that led to that referral.


Dated: April 29, 2015

Respectfully submitted,


By: /s/ Alan S. Gilbert

Alan S. Gilbert (No. 953210)
Mary B. Anderson (No. 6282441)
DENTONS US LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606-6404
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Andrew T. Bayman (*pro hac vice*)
Todd P. Davis (*pro hac vice*)
Heather M. Howard (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Robert E. Glanville (*pro hac vice*)
Tamar P. Halpern (*pro hac vice*)
Eva Canaan (*pro hac vice*)
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
Telephone: (716) 847-8400
Facsimile: (716) 852-6100

*Attorneys for GlaxoSmithKline LLC*

- **<u>CERTIFICATE OF SERVICE</u>**

It is hereby certified that on April 29, 2015, I caused to be electronically filed the

foregoing **DEFENDANT GLAXOSMITHKLINE LLC'S MEMORANDUM IN SUPPORT**

**OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ADDITIONAL**

**DEPOSITION TESTIMONY FROM PLAINTIFF'S EXPERT DR. DAVID HEALY** with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

registered parties.


/s/  Alan S. Gilbert
Counsel for Defendant GSK