IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDY DOLIN, Individually and as Independent Executor of the ESTATE OF STEWART DOLIN, deceased, | Case No. 1:12-cv-06403 |
| | Hon. James B. Zagel |
|     Plaintiff, | |
|     v. | |
| SMITHKINE BEECHAM CORPORATION D/B/A GLAXOSMITHKINE, a Pennsylvania Corporation, | |
|     Defendant. | |

**PLAINITFF'S OPPOSITION TO DEFENDANT GLAXOSMITHKLINE LLC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S ILLINOIS LAW CLAIMS**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ......................................................................................................... 1

SUMMARY JUDGMENT STANDARD .................................................................... 3

ARGUMENT ................................................................................................................. 4

I.    Dr. Sachman Testified that He Did Not Know Paxil Could Increase the Risk of Adult Suicidal Behavior in Adults over 24 Because the Paxil Labeling Did Not Disclose that Risk ......................................................................................................... 4

      A.    Dr. Sachman Testified that the 2010 Paxil Label, i.e., the Label Dr. Sachman Relied Upon Before Prescribing Paxil to Mr. Dolin in 2010, Did *Not* Disclose the Risk that Paxil Increased the Risk of Suicidal Behavior Beyond the Age of 24 .... 5

      B.    Dr. Sachman Testified that He Did *Not* Have Independent Knowledge of the Risks of Paxil-Induced Suicidal Behavior in Patients over 24 .............................. 9

      C.    GSK Did Not Discharge Its Duty to Warn When It Purportedly Sent a Dear Doctor Letter to Dr. Sachman in 2006 Because Dr. Sachman Relied on the 2010 Paxil Label When He Prescribed Paxil to Mr. Dolin ........................................... 10

      D.    GSK's Claim that Dr. Sachman's Testimony "Breaks the Chain of Causation" Has No Foundation in the Record ......................................................................... 13

II.    Whether the Paxil Labeling Is Adequate Is a Disputed Issue of Fact, Not Suitable for Summary Judgment ....................................................................................................... 15

III.    GSK's Attack on Plaintiff's Misrepresentation and Consumer Fraud Claims Fail Because there Is Evidence of Reliance on GSK's Misrepresentations .......................................... 22

      A.    Plaintiff's Misrepresentation-Based Claims Survive Because There Is Evidence of Reliance on GSK's Misrepresentations ............................................................... 22

      B.    Plaintiff's Consumer Fraud Claims Survive Because There Is No Requirement that Plaintiff's Purchase a GSK Product Provided there Is Evidence of Reliance on GSK's Deception ....................................................................................... 23

IV.    GSK's Renewed Challenge of this Court's Previous Summary Judgment Ruling Is Misplaced and Inappropriate ........................................................................................ 25

CONCLUSION ........................................................................................................... 28

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*,

    216 Ill. 2d 100, 835 N.E.2d 801 (Ill. 2005) ............................................................ 23

*Bd. of Educ. of City of Chicago v. A, C & S, Inc.*,

    131 Ill. 2d 428, 546 N.E.2d 580 (Ill. 1989) ............................................................ 22

*Bennett v. Roberts,*

    295 F.3d 687 (7th Cir. 2002) .................................................................................... 3

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,

    90 F.3d 1264 (7th Cir. 1996) .................................................................................. 25

*Celotex Corp. v. Catrett,*

    477 U.S. 317 (1986) .................................................................................................. 3

*Chavda v. Swedish Covenant Hosp.*,

    No. 11 C 114, 2015 WL 1976458 (N.D. Ill. Apr. 30, 2015) ................................... 3

*Connick v. Suzuki Motor Co.*,

    174 Ill. 2d 482, 675 N.E.2d 584 (1996) ................................................................ 24

*Creek v. Vill. of Westhaven,*

    144 F.3d 441 (7th Cir. 1998) .................................................................................. 24

*De Bouse v. Bayer,*

    235 Ill. 2d 544, 922 N.E.2d 309 (Ill. 2009) ........................................................... 23

*Dolin v. SmithKline Beecham Corp.*,

    62 F. Supp. 3d 705 (N.D. Ill. 2014) ............................................................... passim

*EEOC v. Sears, Roebuck & Co.*,

233 F.3d 432 (7th Cir. 2000)..................................................................................... 3

*Engelhard Indus., Inc. v. Research Instrumental Corp.,*

324 F.2d 347 (9th Cir. 1963)................................................................................... 25

*Forst v. SmithKline Beecham Corp.,*

602 F. Supp. 2d 960 (E.D. Wis. 2009)........................................................... 4, 8, 20

*Gertz v. Robert Welch, Inc.,*

680 F.2d 527 (7th Cir. 1982)................................................................................... 24

*Hansen v. Baxter Healthcare Corp.,*

198 Ill. 2d 420, 764 N.E.2d 35 (Ill. 2002)........................................................... 4, 15

*Hornyak v. Nat'l Presto Indus.,*

No. 94 C 2193, 1995 WL 239104 (N.D. Ill. Apr. 21, 1995)................................... 15

*In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.,*

756 F.3d 917 (6th Cir. 2014)............................................................................ 26, 27

*In re Depakote,*

No. 14-CV-847-NJR-SCW, 2015 WL 4776093 (S.D. Ill. Feb. 14, 2015)........ 15, 19, 21

*In re GlaxoSmithKline, LLC,*

557 F. App'x 578 (7th Cir. 2014) ........................................................................... 25

*Keene Corp. v. Int'l Fid. Ins. Co.,*

561 F. Supp. 656 (N.D. Ill. 1982) ..................................................................... 24, 25

*Kelso v. Bayer Corp.,*

398 F.3d 640 (7th Cir. 2005).............................................................................. 15, 20

*Koncz v. Burroughs Wellcome Co.,*

No. 92 C 5797, 1994 WL 178320 (N.D. Ill. May 9, 1994)....................................... 5

*Lesch v. Crown Cork & Seal Co.,*
    282 F.3d 467 (7th Cir. 2002) ................................................................................. 3

*Lujan v. Nat'l Wildfire Fed'n,*
    497 U.S. 871 (1990) ............................................................................................... 3

*Martin by Martin v. Ortho Pharm. Corp.,*
    169 Ill. 2d 234, 661 N.E.2d 352 (Ill. 1996) ......................................................... 4

*Payne v. Pauley,*
    337 F.3d 767 (7th Cir. 2003) ................................................................................. 3

*Proctor v. Davis,*
    291 Ill. App. 3d 265, 682 N.E.2d 1203 (Ill. App. Ct. 1997) ............................. 4, 15

*Pugh v. City of Attica, Ind.,*
    259 F.3d 619 (7th Cir. 2001) ................................................................................. 3

*Refrigeration Sales Co. v. Mitchell-Jackson, Inc.,*
    605 F. Supp. 6 (N.D. Ill. 1983) ........................................................................... 24

*Shannon v. Boise Cascade Corp.,*
    208 Ill. 2d 517, 805 N.E.2d 213 (Ill. 2004) ....................................................... 23

*Soules v. Gen. Motors Corp.,*
    79 Ill. 2d 282, 402 N.E.2d 599 (Ill. 1980) ......................................................... 22

*Tucker v. SmithKline Beecham Corp.,*
    701 F. Supp. 2d 1040 (S.D. Ind. 2010) ................................................ 6, 15, 19, 20

*Walton v. Bayer Corp.,*
    643 F.3d 994 (7th Cir. 2011) ................................................................................. 4

*Ziliak v. AstraZeneca LP,*

324 F.3d 518 (7th Cir. 2003) ..................................................................................................... 15

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................................ 3

## INTRODUCTION

This case is about how Stewart Dolin, a beloved husband and father, a leader in his profession (a senior partner at Reed Smith), and a respected member of the community, abruptly left work the afternoon of July 15, 2010, walked to the Blue Line train station, and jumped in front of an oncoming L train. It is difficult to imagine what could drive a man with so much going for him to take his own life. It is hard to imagine, that is, until you learn about Paxil and the dramatic effect it can have on human behavior. For nearly two decades, GlaxoSmithKline, LLC ("GSK") has known that Paxil increases the risk of suicidal behavior in adults. And yet, for decades, GSK has deliberately concealed that risk from patients and doctors. Indeed, to this very day, the label for Paxil states that there is no increased risk of suicidal behavior beyond the age of twenty four—a statement that is directly contradicted by GSK's own clinical trial data and internal documents. This case is about holding GSK accountable for that deception and trying, somehow, to remedy the horrendous effects that deception has wrought on Stewart Dolin's family.

In this third motion for summary judgment, GSK takes yet another shot at carving out immunity. Specifically, GSK moves for summary judgment on four grounds, each of which is contradicted by actual facts or expert testimony. First, GSK argues that Plaintiff's claims fail as a matter of law because Mr. Dolin's prescriber, Dr. Sachman, knew that Paxil increased the risks of adult suicidal behavior prior to prescribing the drug to Mr. Dolin. Second, GSK argues that the Paxil label is adequate as a matter of law. Third, GSK argues that Plaintiff's claims based on misrepresentation and consumer fraud fail because, according to GSK, there is insufficient evidence of the element of reliance. And finally, GSK attempts to rehash its arguments from its first motion for summary judgment, asking this Court to reverse its prior ruling. All of these

arguments are unavailing.

First, the record does not support GSK's interpretation of Dr. Sachman's testimony. Dr. Sachman testified that (1) he did not know that Paxil increased the risk of suicidal behavior in adult over 24 prior to prescribing Paxil to Mr. Dolin in 2010, (2) he relied upon the 2010 Paxil label before prescribing Paxil to Mr. Dolin, (3) the 2010 Paxil label does not adequately warn about the risk of suicidal behavior beyond age 24, and (4) had he known of the risk, he would never have prescribed Paxil to Mr. Dolin. GSK's assertion that Dr. Sachman knew about the risks for which Plaintiff alleges GSK failed to warn, is not supported by the record.

Second, whether the 2010 Paxil label is adequate is not suitable for summary judgment determination. The record shows that the 2010 Paxil label failed to warn doctors, including Dr. Sachman, that Paxil can increase the risk of suicidal behavior in adults older than 24. Indeed, the 2010 Paxil labeling expressly states that the risk does not extend beyond 24, conflicting with GSK's and the FDA's adult suicidality analysis of Paxil. Even Dr. Sachman, an independent third-party witness, agreed that the Paxil label was misleading after he reviewed GSK's internal communications. Moreover, Plaintiff submits the expert opinions of Dr. David Ross and Dr. Joeseph Glenmullen, who both opine that the 2010 Paxil label is misleading because it does not convey that the risk of suicidality extends to adults over 24. In the face of this evidence, summary judgment on the issue of label adequacy is not warranted.

Third, despite GSK's bold assertions to the contrary, there is clear evidence in the record that Dr. Sachman relied on the 2010 Paxil labeling in making his decision to prescribe Paxil to Mr. Dolin. Thus, for purposes of Plaintiff's misrepresentation and consumer fraud claims, there is evidence of reliance on GSK's misrepresentations concerning the risk of adult suicidality in patients over 24.

Finally, GSK's effort to re-litigate this Court's prior ruling on summary judgment is inappropriate and potentially sanctionable. GSK simply reasserts its prior arguments and has an economic "expert" parrot the various "policy considerations" that GSK raised the last time. This renewed motion is procedurally and legally improper and should be denied with prejudice. GSK's attempt to take yet another bite at the apple is inappropriate.

## SUMMARY JUDGMENT STANDARD[1]

This Court recently articulated the standard of review for summary judgment:

> Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts,* 295 F.3d 687, 694 (7th Cir. 2002).

> Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildfire Fed'n,* 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002).

*Chavda v. Swedish Covenant Hosp.*, No. 11 C 114, 2015 WL 1976458, at *3 (N.D. Ill. Apr. 30, 2015).

---

[1] Considering the Court's familiarity with this case, Plaintiff is forgoing yet another factual background section and will simply incorporate, by reference, the factual background section in Plaintiff's opposition to GSK' other motion for summary judgment (preemption). Although there are factual issues raised throughout this motion, those facts are inserted directly into the argument, with citation to the corresponding testimony or documents as needed.

# ARGUMENT

## I. Dr. Sachman Testified that He Did Not Know Paxil Could Increase the Risk of Adult Suicidal Behavior in Adults over 24 Because the Paxil Labeling Did Not Disclose that Risk

Illinois has adopted the learned intermediary doctrine, which "provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of a drug's known dangerous propensities and that physicians, in turn, using their medical judgment, have a duty to convey any relevant warnings to their patients." *Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234, 238, 661 N.E.2d 352, 354 (Ill. 1996). The learned intermediary doctrine "is an exception to the general rule that a failure to warn of a product's dangerous propensities may serve as a basis for holding a manufacturer strictly liable in tort." *Id.* The doctrine is premised on the idea that "the medical professional who, equipped with the knowledge imparted to him by the drug's manufacturer, determines, weighing benefit against risk, the drug's suitability for a particular patient." *Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011). However, the availability of the learned intermediary doctrine turns on whether the learned intermediary was, in fact, *learned*. "Doctors who have not been *sufficiently* warned of the harmful effects of a drug cannot be considered 'learned intermediaries' and the adequacy of warnings is a question of fact, not law, for the jury to determine[.]" *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 432, 764 N.E.2d 35, 43 (Ill. 2002) (quoting *Proctor v. Davis*, 291 Ill. App. 3d 265, 283, 682 N.E.2d 1203, 1215 (Ill. App. Ct. 1997)).[2] Similarly, if the prescriber was independently aware of the risks of a

---

[2] This statement was echoed in a similar Paxil suicide case:

> The court need not and will not apply the "learned intermediary" doctrine in this case. . . . [A] genuine issue of material fact exists regarding whether GSK adequately warned Dr. Todd about Paxil's risks. Therefore, the "learned intermediary" doctrine would not preclude any "failure to warn" claim, even if the court determined that the doctrine applied in this case.

*Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 968 (E.D. Wis. 2009).

drug, notwithstanding the manufacturer's failure to warn, then the learned intermediary can "break the chain of liability." *Koncz v. Burroughs Wellcome Co.*, No. 92 C 5797, 1994 WL 178320, at *3 (N.D. Ill. May 9, 1994). Here, GSK attempts to invoke the learned intermediary doctrine and argues four reasons why summary judgment is warranted. None of these "reasons" are supported by the record or the law.

### A. Dr. Sachman Testified that the 2010 Paxil Label, i.e., the Label Dr. Sachman Relied Upon Before Prescribing Paxil to Mr. Dolin in 2010, Did *Not* Disclose the Risk that Paxil Increased the Risk of Suicidal Behavior Beyond the Age of 24

GSK asserts that "Dr. Sachman testified that the Paxil labeling warned explicitly of the very side effects that Plaintiff claimed Mr. Dolin experienced." Mem. at 14. This is simply untrue. GSK selects a few out-of-context statements from Dr. Sachman's deposition and completely ignores those portions where Dr. Sachman was *explicitly* asked about the Paxil label and what it said (or did not say) regarding suicidal behavior beyond age 24, i.e., the "side effect" that is at the heart of this case. See Plaintiff Additional Proposed Findings of Fact ("PFF")[3] (Sachman Depo. at 53:12-54:4, 54:5-55:3, 55:12-56:19, 56:21-57:4, 57:13-60:25, 61:25-65:22, 66:20-69:21, 74:15-76:24.) Dr. Sachman was shown each portion of the Paxil label and was asked whether the labeling warned about Paxil inducing suicidal behavior beyond age 24. *Id.* He stated that it did *not*:

> Q.     In any of the sections of the label that I just reviewed with you, does it ever state that Paxil increases the risk of adult suicidal behavior by 6.7 times?
>
> [objection omitted]
>
> A.     No.
> . . .

---

[3] Please not that in lieu of filing duplicate findings of fact, Plaintiff has combined all proposed additional facts into a single document that is applicable to both of GSK's motions for summary judgment. Any reference to PFF in either this opposition or the corresponding opposition to GSK's other motion for summary judgment, refer to the same document.

Q.      Okay.  Do you agree that this information is something that you would
        have liked to have known about the drug prior to prescribing it to a
        patient?

        [objection omitted]

A.      Yes.
. . .

Q.      In any of the sections of the label that I reviewed with you, does it ever
        plainly state that Paxil itself as a drug increases the risk of adult suicidality
        beyond the age of 24?

        [objection omitted]

A.      No.

PFF 153 (Sachmen Depo. at 76:9-76:15).   While being shown the label, Dr. Sachman explained

that the label contained general warning language about the link between suicidal behavior and

*depression*, but he stated the label did not link the *drug* to increased suicidal behavior in patients

over the age of 24.   *E.g.*, Sachman Depo. at 66:25-68:8 ("[I]t's a warning about some of the

behaviors that may be associated with increasing depression, possibly suicidality" not that "Paxil

increases the risk of adult suicidality beyond the age of 24[.]").   And, Dr. Sachman stated,

unequivocally, that had he known that Paxil, itself, could induce suicidal behavior in patients

over age 24, he "wouldn't have prescribed it."  PFF 155 (Sachman Depo. at 142:10-142:19; *id.* at

196:1-197:18 (Dr. Sachman reiterated that he would not have prescribed Paxil to Mr. Dolin in

2010 if the Paxil label disclosed the adult suicidality information contained in GSK's 2006

briefing document).  Thus, summary judgment is not appropriate.  *See e.g.*, *Tucker v. SmithKline

Beecham Corp.*, 701 F. Supp. 2d 1040, 1067 (S.D. Ind. 2010) (denying summary judgment in

Paxil suicide case because prescribing doctor "testified that he was unaware that Paxil itself was

or could be associated with an increased risk of suicide in adults when he prescribed Paxil" and

that "he would have considered those warnings in deciding whether or not to prescribe Paxil.").

GSK does not address these portions of Dr. Sachman's testimony. Instead, GSK selectively quotes Dr. Sachman's deposition where he agreed that initiation of an antidepressant can lead to worsening depression, and that worsening depression can, in turn, lead to increased suicidality. *See* Mem. at 15-16 (citing GSK's Undisputed Fact No. 68). But, Dr. Sachman explained that he knew that depression could worsen when initiating therapy, as with *any* antidepressant, but he did not know that Paxil, itself, could induce suicidal behavior in adults over age 24:

> Q.  During the testimony that you gave when Mr. Davis was asking you questions, he asked questions about conveying risks of suicidality to patients because they're taking an antidepressant in a general sense.
>
> You are aware that depression is itself a risk for -- poses a risk for causing suicidal behavior, right?
>
> [objection omitted]
>
> A.  Yes
>
> Q.  And you understand that when you take an antidepressant it's possible that it could worsen your depression?
>
> A.  That -- yes, but that would be just short term.
>
> Q.  Sure. And you also understand – you also understand that worsening depression can in fact lead to suicidal behavior?
>
> A.  Yes.
>
> Q.  Independent of that risk that is associated with all antidepressants, were you aware in 2010 that ***Paxil specifically increased -- significantly increased the risk of adult suicidal behavior caused by the drug, not by the underlying condition?***
>
> [objection omitted]
>
> A.  No.

PFF 157 (Sachman Depo. at 348:21-350:4.)  Dr. Sachman did *not* know, when he prescribed Paxil to Mr. Dolin in 2010, that Paxil could induce suicidal behavior in adults over age 24. GSK's argument simply glosses over the distinction between worsening depression—a risk associated with any depressed patient—and Paxil-induced suicidal behavior.  As the *Forst* Court explained in denying a nearly identical motion brought by GSK in an earlier Paxil suicide case: "General awareness that a period of increased suicidality may result from initiating treatment for depression with an antidepressant is different from knowledge that a particular drug may directly increase suicidality."  *Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 968 (E.D. Wis. 2009).  On this record, particularly if viewed in a light most favorable to Plaintiff, Dr. Sachman was not aware of the risk that is relevant here, i.e., whether Paxil could induce suicidal behavior in adults over 24.

GSK also points out that Dr. Sachman knew that Paxil initiation could induce akathisia, and, thus, Dr. Sachman was "explicitly warned of the very side effects that Plaintiff claimed Mr. Dolin experienced."  Mem. at 14-15.  Once again, this glosses over the important warning that was *not* given.  When Dr. Sachman was shown the portion of the 2010 Paxil label mentioning akathisia, he was asked the relevant question: "Does that paragraph in any way indicate whether or not akathisia is associated with an increased risk of suicidal behavior?"  PFF 158 (Sachman Depo. at 69:6-69:8.)  He responded "[i]t does not imply that."  *Id*.  Thus, while the Paxil label makes a general statement about akathisia, it does not link akathisia to suicide, a link that would have changed Dr. Sachman's prescribing behavior.

Finally, GSK argues that, in 2004 and 2005, when Mr. Dolin was prescribed Paxil for the first time, the Paxil labeling *at that time* contained a general suicide warning relating to antidepressants.  Mem. at 15.  GSK claims that Dr. Sachman conveyed the risks of suicide to Mr.

Dolin in 2005.[4]  This argument, however, has no bearing here.  First, the warnings in 2005, which existed five years before the Paxil prescription at issue here, did not contain the risk information from GSK's 2006 suicide analysis.  Second, and more importantly, Dr. Sachman testified that the Paxil labeling from 2006 was materially different than the labeling from 2010, because the labeling from 2010 stated that the risk of Paxil-induced suicidality did not extend beyond age 24 (whereas the 2006 label did).  PFF 159 (Sachman Depo. at 341:9-342:25).  And, when Dr. Sachman prescribed Paxil to Mr. Dolin in 2010, shortly before his suicide, Dr. Sachman relied on the labeling from 2010, not 2006.  PFF 160 (Sachman Depo. at 343:5-344:19) ("Q. When you relayed the risk information to Stewart Dolin in 2010, were you relying on the then existing label?  A. Yes.").  Thus, when Dr. Sachman prescribed Paxil to Mr. Dolin in 2010, he was not aware that Paxil increased the risk of adult suicidal behavior because the label, *at that time*, did not convey those risks. PFF 161 (Sachman Depo. at 349:19-350:4).

## B. Dr. Sachman Testified that He Did *Not* Have Independent Knowledge of the Risks of Paxil-Induced Suicidal Behavior in Patients over 24

Remarkably, GSK next claims that Dr. Sachman "testified unequivocally that he had knowledge of paroxetine's association with both akathisia and suicidality."  Mem. at 17.  And, according to GSK, if the prescriber has independent knowledge of the risks, then it has no duty to warn.  This argument finds no support in the record.  Dr. Sachman clearly testified that he did not know that Paxil could induce suicidal behavior beyond the age of 24:

> Q.    [W]ere you aware in 2010 that Paxil specifically increased -- significantly increased the risk of adult suicidal behavior caused by the drug, not by the underlying condition?
>
> [objection omitted]
>
> A.    No.

---

[4] GSK also notes that Dr. Sachman may have conveyed risk information to Plaintiff directly, but that has no bearing on this analysis, since the duty to warn runs to the patient, not the patient's spouse.

PFF 162 (Sachman Depo. at 348:21-350:4). Indeed, Dr. Sachman agreed that "[a]t the time I prescribed Paxil to Stewart Dolin, I did not know that Paxil was associated with suicidal behavior by adults over age 24[.]" PFF 163 (Sachman Depo. at 140:17-141:11). And, when GSK's counsel pressed the issue on cross examination, Dr. Sachmam expressly stated that he would not have prescribed Paxil to Mr. Dolin if he had known it could induce suicidal behavior in adults over 24 and that he "was ***not informed***, neither was the medical community informed." PFF 164 (Sachman Depo. at 197:17-197:18 (emphasis added)).

GSK's bald assertion that Dr. Sachman knew about the risks of Paxil-induced suicidal behavior in adults over 24 is simply not supported by Dr. Sachman's testimony—indeed, it is contradicted. At the very least, Dr. Sachman's testimony raises a disputed issue of fact, rendering summary judgment inappropriate.

### C. GSK Did Not Discharge Its Duty to Warn When It Purportedly Sent a Dear Doctor Letter to Dr. Sachman in 2006 Because Dr. Sachman Relied on the 2010 Paxil Label When He Prescribed Paxil to Mr. Dolin

In May 2006, GSK sent out a "Dear Healthcare Provider" ("DHCP") letter that contained some of the results of GSK's 2006 suicidality analysis for Paxil. Exh. 38. GSK claims that it sent a copy of this letter to Dr. Sachman in 2006 and, thus, "provided Dr. Sachman with the very information that he testified was essential to his prescribing decision." Mem. at 22.[5] This argument fails for three reasons.

First, the DHCP letter does not, itself, adequately apprise doctors of the risks of Paxil-induced suicidal behavior for patients over 24. The May 2006 DHCP letter stated, in part:

---

[5] There is an inherent contradiction in GSK's argument. GSK claims that Paxil, itself, does not induce suicidal behavior in adults over 24. How then could GSK have warned about that risk in 2006, unless GSK is claiming that it warned about a risk that, in its view, does not exist? GSK cannot have it both ways. Either GSK takes the position that Paxil does not induce adult suicidal behavior over age 24, in which case it was not obliged to warn about the risk *or* GSK concedes that there is such a risk but that it appropriately warned about the risk. It is inappropriate for GSK to argue that there is no risk but, if there is, it warned about it.

10

> [I]n the analysis of adults with MDD (all ages), the frequency of suicidal behavior was higher in patients treated with paroxetine compared with placebo (11/3455 [0.32%] versus 1/1978 [0.05%]). This difference was statistically significant; however as the absolute number and incidence of events are small, these data should be interpreted with caution. All of the reported events of suicidal behavior in the adult patients with MDD were non-fatal suicide attempts, and the majority of these attempts (8 of 11) were in younger adults aged 18-30. These MDD data suggest that the higher frequency observed in the younger adult population across psychiatric disorders may extend beyond the age of 24.

> . . .

> It is difficult to conclude a causal relationship between paroxetine and suicidality due to the small incidence and absolute number of events, the retrospective nature of this meta- analysis, and potential for confounding by the fact that the events of interest are a symptom of the psychiatric illnesses themselves.

PFF 165 (Exh. 38). When Dr. Sachman was shown the letter during his deposition, having already reviewed GSK's underlying 2006 analysis, he explained that he "did not feel that it" accurately conveyed the risks because "[t]here is a statement of increased risk but at the same -- the same paragraph there is a statement minimizing the significance of it." PFF 166 (Sachman Depo. at 90:21-91:10). Indeed, Dr. David Ross, Plaintiff's FDA and labeling expert, explains that GSK's representation that "the majority of these attempts (8 of 11) were in younger adults aged 18-30" is misleading because there were suicidality events in all ages. PFF 167 (Ross Decl., Exh. 1, Report). Dr. Ross explains:

> Thus, these data do not provide a basis for concluding that the Paxil-associated increase in suidicde attempt risk is restricted to any particular extreme of age or age grouping.

> However, the sponsor chose to do just that, stating htat 8/11 of the patient were 30 or younger, implying that an increased risk of suicidal behavior was restricted to this younger group. The choice of an age cutoff of 30 was completely arbitrary. The sponsor could have said with equal accuracy that 8/11 of the patients were 25 or older, implying that the increased risk was primarily in older patients.

> Of course, both of these conclusions cannot be true. In fact, the data do not support the conclusion that the increased risk associated with Paxil is restricted to any age group.

11

PFF 168 (Ross Decl., Exh. 1, Report at 16-17). Thus, in the context of Dr. Sachman's and Dr. Ross' opinions, even if GSK had sent the 2006 DHCP to Dr. Sachman in 2006, that letter was not sufficient to warn Dr. Sachman of the risk in older adults. GSK's claim that it "provided Dr. Sachman with the very information that he testified was essential to his prescribing decision" is not supported by the record, particularly when viewed in a light most favorable to the Plaintiff.

Second, there is no evidence that Dr. Sachman ever received, read, understood, or considered the information in the 2006 DHCP letter when he prescribed Paxil to Mr. Dolin. Dr. Sachman has no recollection of receiving the DHCP letter in 2006. PFF 169 (Sachman Depo. at 345:7-346:21). He testified he had not read the letter until just prior to the deposition.[6] PFF 170 (Sachman Depo. at 89:29-90:16). Dr. Sachman also testified that he did not know about the information in the 2006 DHCP letter in 2010 when he prescribed Paxil to Mr. Dolin and, if he had known about the information, he would not have prescribed the drug. PFF 171 (Sachman Depo. at 197:17-197:180). Thus, there is no evidence that GSK actually warned Dr. Sachman about the risks at issue prior to Dr. Sachman prescribing Paxil to Mr. Dolin using the 2006 DHCP letter.

Third, and most importantly, even if GSK had sent the 2006 DHCP letter to Dr. Sachman in 2006, GSK ultimately retracted the warning in 2007, thereby resulting in Dr. Sachman being ill-informed in 2010 when he prescribed Paxil to Mr. Dolin. Dr. Sachman, while having no recollection of the 2006 DHCP letter, testified that, when he prescribed Paxil to Mr. Dolin in 2010, he relied on the 2010 Paxil labeling—labeling Dr. Sachman stated did not warn about the risks of Paxil-induced suicidal behavior in adults over 24. PFF 172 (Sachman Depo. at 343:5-

---

[6] He also testified that, if had received it in 2006, he would not have conveyed the information to Mr. Dolin at that time because it would not have been appropriate to raise such issues with a patient that was already doing well on the drug. (*Id.* at 345:7-346:21.)

344:19). When Dr. Sachman was asked to compare the 2010 Paxil labeling to the information contained in the 2006 DHCP letter, he agreed that the information was in conflict. PFF 173 (Sachman Depo. at 341:10-342:9). And, Dr. Sachman explained that his practice was to rely on a drug's most recent labeling before he prescribed it. PFF 174 (Sachman Depo. at 343:14-344:9). Thus, the record shows that, even if Dr. Sachman had received the DHCP letter in 2006 (a disputed issue since Dr. Sachman does not recall receiving the letter) and even if the letter contained an appropriate warning (another disputed issue considering Dr. Sachman's and Dr. Ross' testimony), Dr. Sachman would not have considered the information in the DHCP letter because he relied on the most recent 2010 Paxil labeling. In other words, GSK cannot hide behind the fact that it sent out a DHCP letter in 2006 because GSK retracted that warning from the Paxil labeling in 2007, rendering the label in 2010, i.e., the label that guided Dr. Sachman's understanding of the risks when he prescribed Paxil to Mr. Dolin, inadequate and misleading. This fact is corroborated by Dr. Sachman's testimony that he did not know Paxil could induce suicidal behavior in patients over 24 when he prescribed Paxil to Mr. Dolin. Thus, even if GSK had sent the 2006 DHCP letter *in 2006*, it would not have apprised Dr. Sachman of the risks when he prescribed Paxil to Mr. Dolin *in 2010* because Dr. Sachman relied on the 2010 labeling which did not contain any information from the 2006 DHCP letter.

**D.   GSK's Claim that Dr. Sachman's Testimony "Breaks the Chain of Causation" Has No Foundation in the Record**

Finally, GSK argues that Dr. Sachman's testimony severs "any chain of causation" between GSK's failure to warn and Dr. Sachman's decision to prescribe Paxil. Mem. at 22-23. GSK claims that Dr. Sachman would not have prescribed Paxil if he had known that the 2006 Paxil-specific language concerning adult suicidality had been removed from the labeling and, thus, "Dr. Sachman's failure, until late 2010, to recognize that the paroxetine-specific language

13

was removed . . . breaks any chain of causation." *Id.* at 23. This, however, is a gross misreading of Dr. Sachman's testimony. During Dr. Sachman's deposition, GSK's counsel was asking Dr. Sachman about GSK's 2006 suicide analysis and whether Dr. Sachman would have still prescribed Paxil to Mr. Dolin even if the FDA had decided to remove the Paxil-specific information after 2007. PFF 175 (Sachman Depo. at 250:19-250:25). Dr. Sachman stated that, if Paxil did, in fact, induce suicidal behavior in adults over 24, as Dr. Sachman could see from GSK's internal documents, he would not have prescribed Paxil to Mr. Dolin, regardless of whether the FDA had made a determination about what should or should not be in the label. *Id.* GSK's counsel then proceeded to re-ask the same question over and over again, and Dr. Sachman continued to give the same answer, even commenting at one point: "You know what? I am getting more confused every time you ask. You don't like my answer, but every time you try to revise your question I'm getting more confused." PFF 176 (Sachman Depo. at 256:4-256:7). Indeed, Dr. Sachman continued to reassert his position despite the confusing and ambiguous questions:

> A. My answer is still no. You can say it 100 times . . . Mr. Davis.
>
> Q. No what?
>
> A. No, I would still not prescribe Paxil if the FDA changed their label.
>
> Q. Okay.
>
> A. Based on knowledge of this [referring to GSK's 2006 suicidality analysis].

*Id.* (Scahman Depo. at 260:5-260:19). Then, within this context, the following colloquy occurred:

> Q. And if you found out that the Paxil-specific data had been taken out of the Paxil labeling before you prescribed Paxil to Stewart Dolin for the last time, either in June or July or 2010, you would not have prescribed it to him?

14

[objection omitted]

A.      With the understanding that I saw this data in this -- in these communications, the answer is still no.

PFF 177 (Sachman Depo. at 260:20-261:4). GSK's "interpretation" of Dr. Sachman's testimony is incorrect. Dr. Sachman never stated that, if he knew that the Paxil-specific language had been removed, he would never have prescribed Paxil. Rather, he testified that, based on what he understood from the internal communications shown to him at his deposition, even if the FDA had removed the Paxil-specific language from the label in 2007, he would still have refused to prescribe Paxil to Mr. Dolin in 2010 because of the risks. There is no severing of causation. This is simply a statement by Dr. Sachman that he exercises medical judgment independent of what the FDA determines is appropriate for a drug label.

## II.      Whether the Paxil Labeling Is Adequate Is a Disputed Issue of Fact, Not Suitable for Summary Judgment

In prescription drug cases, it is black-letter law that "the adequacy of warnings is a question of fact, not law, for the jury to determine." *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 432, 764 N.E.2d 35, 43 (Ill. 2002) (quoting *Proctor v. Davis*, 291 Ill. App. 3d 265, 283, 682 N.E.2d 1203, 1215 (Ill. Ct. App. 1997)); *In re Depakote*, No. 14-CV-847-NJR-SCW, 2015 WL 4776093, at *4 (S.D. Ill. Feb. 14, 2015) (quoting *Proctor*). Only when the warning is "plain, clear and unambiguous" about the particular risk at issue, can the issue of label adequacy be resolved on summary judgment. *Kelso v. Bayer Corp.*, 398 F.3d 640, 642 (7th Cir. 2005); *see Hornyak v. Nat'l Presto Indus.*, No. 94 C 2193, 1995 WL 239104, at *4 (N.D. Ill. Apr. 21, 1995) (summary judgment on label adequacy only available when "movant conclusively demonstrates that there remains no triable question."). "To be adequate, at least as a matter of law, the warning must warn of the precise risk of which the plaintiff complains." *Tucker v. SmithKline*

15

*Beecham Corp.*, 701 F. Supp. 2d 1040, 1067 (S.D. Ind. 2010) (citing *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 521 (7th Cir. 2003)).  If, however, there is evidence that the label is deficient or lacking, or reasonable experts dispute the issue, then the question must be submitted to the jury. *E.g.*, *In re Depakote*, 2015 WL 4776093, at *5-6 (refusing to find label adequate as a matter of law because warning "left out significant information" and jury could conclude that the label was misleading relying on plaintiffs' expert testimony).

Here, Plaintiff alleges that GSK failed to warn Mr. Dolin's prescriber, Dr. Sachman, that ingestion of Paxil is associated with a significant increase in suicidal behavior in adults beyond the age of 24.  This failure to warn was part of a lengthy and well-documented effort by GSK to conceal and downplay the risks of adult suicidality, starting in the late 1980s and extending through to the present.[7]  PFFs 1-120.  Without rehashing the decades-long fraud perpetuated by GSK with regard to Paxil suicide research and disclosure, put simply, the Paxil label Dr. Sachman relied on in 2010 when he prescribed Paxil to Mr. Dolin did not plainly, clearly, or unambiguously state that ingestion of Paxil is associated with an increased risk of suicidal behavior in patients older than 24.  In fact, the Paxil label goes out of its way to tell physicians that there is no known risk of Paxil-induced suicidal behavior in patients beyond age 24.  In the black box warning, it states:

> Antidepressants increased the risk compared to placebo of suicidal thinking and behavior (suicidality) in children, adolescents, and young adults in short-term studies of major depressive disorder (MDD) and other psychiatric disorders. Anyone considering the use of PAXIL or any other antidepressant in a child, adolescent, or young adult must balance this risk with the clinical need.  ***Short-term studies did not show an increase in the risk of suicidality with antidepressants compared to placebo in adults <u>beyond age 24</u>***; there was a reduction in risk with antidepressants compared to placebo in adults aged 65 and older.  Depression and certain other psychiatric disorders are themselves associated with increases in the risk of suicide.  Patients of all ages who are started on antidepressant therapy should be monitored appropriately and observed

---

[7] As Senator Chuck Grassley explains it, "Essentially, it looks like GlaxoSmithKline bamboozled the FDA. . . .

16

closely for clinical worsening, suicidality, or unusual changes in behavior. Families and caregivers should be advised of the need for close observation and communication with the prescriber. PAXIL is not approved for use in pediatric patients.

PFF 178 (Exh. 82 (emphasis added)). Then, in the first paragraph of the "Warnings" section of

the Paxil label, under the section "Clinical Worsening and Suicide Risk," it states:

Patients with major depressive disorder (MDD), both adult and pediatric, may experience worsening of their depression and/or the emergence of suicidal ideation and behavior (suicidality) or unusual changes in behavior, ***whether or not they are taking antidepressant medications***, and this risk may persist until significant remission occurs. ***Suicide is a known risk of depression and certain other psychiatric disorders, and these disorders <u>themselves</u> are the strongest predictors of suicide.*** There has been a ***long-standing concern***, however, that antidepressants ***may have a role in inducing worsening of depression and the emergence of suicidality in certain patients during the early phases of treatment***. Pooled analyses of short-term placebo-controlled trials of antidepressant drugs (SSRIs and others) showed that these drugs increase the risk of suicidal thinking and behavior (suicidality) in children, adolescents, and young adults (ages 18-24) with major depressive disorder (MDD) and other psychiatric disorders. ***Short-term studies did <u>not</u> show an increase in the risk of suicidality with antidepressants compared to placebo in adults <u>beyond age 24</u>***; there was a reduction with antidepressants compared to placebo in adults aged 65 and older.

PFF 179 (Exh. 82 (emphasis added)). Thus, the Paxil warning specifically raises the issue at the

heart of this litigation, i.e., whether Paxil can induce "suicidality in certain patients during the

early phases of treatment[,]" and specifically states that the data "did not show an increase in the

risk of suicidality . . . in adults beyond age 24[.]" *Id.* This representation is in *direct* conflict

with GSK's internal 2006 analysis, and accompanying DHCP letter, which stated "that the

higher frequency" of suicidality "observed in the younger adult population across psychiatric

disorders may extend beyond the age of 24." PFF 165 (Exh. 38).

The Paxil label clearly states, in the face of contrary data, that Paxil does not increase the

risk of adult suicidality beyond age 24. In fact, when Dr. Sachman was shown all the sections of

the Paxil labeling addressing suicidality, he agreed that the label does not disclose the risk that

Paxil ingestion increases the risk of adult suicidal behavior beyond age 24. CITE. And, when Dr. Sachman was asked whether the Paxil label, without the relevant suicidality warning was misleading, he agreed that it was:

> Q.  So, this section is giving general warnings about the risks of the medication, is that right?
>
> [objection omitted]
>
> A.  Yes.
>
> Q.  Under the "Suicide" section it doesn't actually state that the drug increases --
>
> A.  I got you.
>
> Q.  -- the risk of suicide, does it?
>
> A.  It does not. I understand your question.
>
> Q.  And, so, if in fact GSK knew at this time that Paxil increased the risk of suicidality but didn't include that information under the section "Suicide" in the label, is that misleading?
>
> A.  Yes, it is.

PFF 180 (Sachman Depo. at 50:14-51:6). This is corroborated by the fact that GSK attempted to insert warning language about suicidality risks extending beyond age 24 into the class labeling portions of the label in 2007. PFF 109. GSK knew that its label was deficient without the language in 2007, and it remained deficient after the language was not included.

Plaintiff has also submit the expert report of David Ross, M.D., Ph.D., M.B.I., a Director at the Veterans Health Administration and a former Director of Regulatory Science and Drug Evaluation at the FDA. Dr. Ross reviewed the regulatory history of Paxil and examined the published literature relating to Paxil and suicidality, GSK's internal analyses, and the FDA's analysis from late 2006. Dr. Ross utilized the same methods and procedures he used when he

18

reviewed drug labeling at the FDA.  PFF 181 (Ross Decl., Exh.1, Report at 4).  He concluded

that:

> The approved Paxil label in use in 2010 label falsely stated that the risk was
> restricted to patients less than 25 years of age, and did not provide any
> information on Paxil-specific suicide-related risks, particularly for patient 25 and
> older.

PFF 182 (Ross Decl., Exh.1, Report at 4).  Dr. Ross explains, in the context of FDA regulation,

that:

> Since 2006, the sponsor has been able to submit a [Changes Being Effected]
> supplement proposing additional warning about this Paxil-specific risk to the
> label, but failed to do so, creating a false impression that Paxil does not increase
> the risk of suicidal behavior in patients aged 25 and older.

PFF 183. (Ross Decl., Exh.1, Report at 26).  To be sure, GSK opposes Dr. Ross's opinions and

has even sought to exclude his testimony under *Daubert*.  Notwithstanding, Dr. Ross's opinion—

in addition to a plain reading of the 2010 Paxil label and the testimony of Dr. Sachman—creates

a disputed issue of fact because "a jury could reasonably rely on [his] testimony to conclude that

this was misleading."  *In re Depakote*, 2015 WL 4776093, at *5.

Similarly, Plaintiff submits the expert testimony of Joseph Glenmullen, M.D., a Harvard-

trained psychiatrist who has conducted significant research into the relationship between Paxil

and adult suicidal behavior.  His expert opinions about Paxil-induced suicidality risks, which

have been vetted by prior courts, *see, e.g.*, *Tucker*, 701 F. Supp. 2d at 1051-56, are outlined in

three reports he submitted in this case.  See Glenmullen Decl., Exhs. 1-3.  In Dr. Glenmullen's

case-specific report, he explains what was wrong with the 2010 Paxil label:

> When Stewart took Paxil in 2010, GlaxoSmithKline did not have a warning in
> their prescribing guidelines that Paxil may make adult patients suicidal.  Still
> worse, GlaxoSmithKline's warning states "short-term studies did not show an
> increase in the risk of suicidality with antidepressants compared to placebo in
> adults beyond age 24…."  As detailed in my general causation reports,
> GlaxoSmithKline's studies have repeatedly shown Paxil increases the risk of

suicidality in adults. GlaxoSmithKline's warning also states "depression and certain other psychiatric disorders are themselves associated with increases in the risk of suicide. Patients of all ages who are started on antidepressant therapy should be monitored appropriately and observed closely for clinical worsening, suicidality, or unusual changes in behavior." Since GlaxoSmithKline's warning falsely states Paxil does not increase the risk of suicidality in adults over age 24, the warning *misleads doctors to assume treatment-emergent suicidality in adults is due to the patient's underlying depression or other psychiatric condition, and not consider the possibility that it is due to the drug.*[8] This encourages doctors to increase the dose of Paxil if patients deteriorate, worsening the problem if the deterioration was, in fact, drug-induced. *The labeling of Paxil for adults like Stewart was wholly inadequate at the time of his suicide.*

PFF 184 (Glenmullen Decl., Exh. 2, Case-Specific Report at 9). Again, this testimony raises

serious questions of fact about whether the 2010 Paxil label is adequate. Summary judgment is

not appropriate.

GSK argues that various portions of the Paxil label suggest that suicidality might be

associated with antidepressant use and worsening depression. But, again, this is just an attempt

to gloss over the important and material distinction between a warning label that makes a general

warning about the suicidality risks associated with depression treatment and a warning that

makes a specific warning about the use of a drug. Other courts in other Paxil suicide litigation,

have noted this very point, consistently refusing to find a generalized and non-drug specific

warning sufficient. *E.g.*, *Tucker*, 701 F. Supp. 2d at 1067 ("[A] reasonable jury could find that

the label was inadequate to warn of Paxil's association with an increased risk of suicide"

notwithstanding the "fact that suicide is a risk with all patients suffering from MDD" because the

label did not specifically "warn that taking Paxil could increase that risk."); *Forst*, 602 F. Supp.

2d at 968 (Refusing to find that prescriber was adequately warned by the labeling because a

---

[8] Indeed, this is how Dr. Sachman read the Paxil label. Dr. Sachman testified that when he reviewed the 2010 Paxil label, he understood the label to simply be stating "a general statement as to the fact that anybody with depression is at risk of suicide and need to be observed." PFF 185 (Sachman Depo. at 55:22-55:24). Later, Dr. Sachman explained, while reading other portions of the Paxil label, that "it's a warning about some of the behaviors that may be associated with increasing depression, possibly suicidality." PFF 186 (Sachman Depo. at 67:24-68:1). And, when Plaintiff's counsel clarified whether "that paragraph indicate[s] to you that Paxil increases the risk of adult suicidality beyond the age of 24" Dr. Sachman confirmed: "No." *Id.* (Sachman Depo. at 68:3-68:8).

"[g]eneral awareness that a period of increased suicidality may result from initiating treatment for depression with an antidepressant is different from knowledge that a particular drug may directly increase suicidality."). GSK cannot seek refuge in a label that does not plainly link the use of the drug to increased suicidality in adults over 24.

Remarkably, GSK also argues that, because the 2010 Paxil label was approved by the FDA, "Plaintiff 'cannot challenge the adequacy of the [FDA-approved paroxetine] warning." Mem. at 25 (quoting *Kelso*, 398 F.3d at 643 (brackets in GSK's memorandum)). This is *not* the law. GSK simply misquotes *Kelso*. The full quote reads: "Bayer maintain that because its warning, excerpted above, complied with the FDA-required warning, Kelso cannot challenge the adequacy of the warning. For this added reason, we conclude that the warning provided was adequate as a matter of law." *Kelso*, 398 F.3d at 643. The court, thus, did not hold that FDA-approval establishes adequacy; rather, the court simply considered that fact in making an adequacy finding. More importantly, *Kelso* was decided before *Wyeth v. Levine*, wherein the Supreme Court held that drug manufacturers, not the FDA, bear responsibility for the adequacy and content of a drug label at all times. 555 U.S. 555, 570–571 (2009). And, with specific reference to Illinois law, while "[c]ertain states establish a rebuttable presumption that a drug warning approved by the FDA is adequate . . . Illinois is *not* one of those states." *In re Depakote*, 2015 WL 4776093, at *5 (emphasis added). Simply because the FDA approved a label does not, itself, render a label adequate as a matter of law.

Here, the record does not support a finding that the 2010 Paxil label is adequate as a matter of law. There is a mountain of evidence and testimony indicating that the 2010 Paxil label failed to provide a "plain, clear and unambiguous" warning that Paxil can increase the risk of adult suicidal behavior beyond age 24. In the face of such evidence, summary judgment on the issue

21

of label adequacy is not appropriate.

## III. GSK's Attack on Plaintiff's Misrepresentation and Consumer Fraud Claims Fail Because there Is Evidence of Reliance on GSK's Misrepresentations

GSK also moves for summary judgment on Plaintiff's "claims sounding in misrepresentations and consumer fraud[.]" Mem. at 27. GSK makes two arguments. First, GSK argues that Plaintiff's misrepresentation-based claims fail because there is no evidence of reliance on GSK's alleged misrepresentations. Second, GSK argues that Plaintiff's consumer fraud claims fail because Mr. Dolin did not ingest a product manufactured by GSK and, separately, there is no evidence that Mr. Dolin specifically relied on any misrepresentations. Both of these arguments fail.

### A. Plaintiff's Misrepresentation-Based Claims Survive Because There Is Evidence of Reliance on GSK's Misrepresentations

Plaintiff asserts claims for negligent misrepresentation and fraudulent misrepresentation. Each of these claims has, as an element, proof of reliance. *See Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (Ill. 1989). Specifically, Plaintiff must establish "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Id.* (citing *Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601 (Ill. 1980)). GSK argues that there is no evidence of the fourth element, i.e., there was no reliance on GSK's misrepresentation or material omission about the risks of Paxil causing suicidal behavior in adults over 24.

GSK's first argument is that there is no evidence that Mr. Dolin, personally, relied on any misrepresentations by GSK. This, however, is not relevant. As this Court previously held, to

establish reliance in the pharmaceutical context Plaintiffs need only show that the treating physician, here Dr. Sachman, relied on a misrepresentation. *Dolin v. SmithKline Beecham Corp.*, 62 F. Supp. 3d 705, 719 (N.D. Ill. 2014). To hold otherwise would turn the "principles undergirding the learned intermediary doctrine on their head." *Id.* Thus, whether there is evidence that Mr. Dolin relied on GSK's misrepresentation is immaterial.

GSK, recognizing that Mr. Dolin's reliance is not the relevant inquiry, then turns to Dr. Sachman, and boldly asserts that "[t]here exists no evidence that Dr. Sachman acted in reliance on any of the laundry-listed 'representations and/or omissions' in Plaintiff's Complaint." Mem. at 29. This, again, is simply not true. Dr. Sachman clearly stated that he did not know that Paxil could increase suicidal behavior in adults over 24 based on his reading of the 2010 Paxil label. Dr. Sachman also stated that *had he known such information*, i.e., had such information been in the 2010 Paxil label, he would not have prescribed the drug to Mr. Dolin. Thus, there is clear evidence of Dr. Sachman relied on the 2010 Paxil label—a document containing misrepresentations and material omissions—in deciding to prescribe Paxil to Mr. Dolin. On this record, there is sufficient evidence for a jury to find reliance. Summary judgment is not warranted.

**B. Plaintiff's Consumer Fraud Claims Survive Because There Is No Requirement that Plaintiff's Purchase a GSK Product Provided there Is Evidence of Reliance on GSK's Deception**

GSK argues that "Plaintiff cannot sustain a claim under the Illinois Consumer Fraud Act because Mr. Dolin was not a consumer of GSK's Paxil, but instead filled his prescription with Mylan's paroxetine." Mem. at 30. This is the same argument that GSK raised in its first motion for summary judgment—an argument the Court already rejected.

At base, GSK's argument misapprehends Illinois law. To sustain a claim for consumer

fraud, Plaintiff must establish "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 180, 835 N.E.2d 801, 850 (Ill. 2005). Plaintiff does not need to show that the money spent in reliance on the deception went to GSK, nor does Plaintiff have to show that the product that was purchased was manufactured by GSK. The Illinois Supreme Court has explained that "an alleged deception need not always be direct between the defendant and the plaintiff. Instead, '[i]t is enough that the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage.'" *De Bouse v. Bayer*, 235 Ill. 2d 544, 556, 922 N.E.2d 309, 316 (Ill. 2009) (quoting *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 526, 805 N.E.2d 213, 218 (Ill. 2004)); *see Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996) ("Plaintiff's reliance is not an element of statutory consumer fraud . . . but a valid claim must show that the consumer fraud proximately caused plaintiff's injury."). Thus, so long as GSK intended for Dr. Sachman to rely on its representations regarding Paxil—a fact that is undisputed—it does not matter if the injury that occurred as a result of the deception was also caused by GSK's product. The only inquiry is whether the *deception* proximately caused the injury. As the Court previously noted, this case concerns "tortious conduct by someone other than the product's manufacturer" that "caused or contributed to the injury." *Dolin*, 62 F. Supp. 3d at 716. And here, there is evidence that GSK's misrepresentations and omissions about the risk of Paxil-induced suicidality in patients over 24 proximately caused Dr. Sachman to prescribe Paxil to Mr. Dolin. Summary judgment is not warranted.

## IV.  GSK's Renewed Challenge of this Court's Previous Summary Judgment Ruling Is Misplaced and Inappropriate

"On any issue in a summary judgment motion, as on any issue at trial, each party is entitled to one bite at the apple." *Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 605 F. Supp. 6, 9 (N.D. Ill. 1983).  This basic rule, which is grounded in "sound policy" is known as the law of the case.  "[W]hen an issue is once litigated and decided, that should be the end of the matter." *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (quoting *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 532 (7th Cir. 1982)).  No party is permitted to move for summary judgment, lose, and then move again for summary judgment on the *same* issue.  *Cf. Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 666 (N.D. Ill. 1982) *aff'd sub nom. Keene Corp. v. Int'l Fid. Ins. Co.*, 735 F.2d 1367 (7th Cir. 1984) and *aff'd,* 736 F.2d 388 (7th Cir. 1984) ("Fidelity seeks essentially to reopen matters as though the Opinion had not issued.").  Such conduct is vexatious. On this ground alone, the Court should deny GSK's second motion for summary judgment on the very issues this Court has already resolved.[9]

In truth, GSK's second motion for summary judgment amounts to another motion for reconsideration, asking this Court to change its previous ruling.  Motions for reconsideration, however, "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264,

---

[9] Indeed, after the Court's summary judgment ruling, GSK filed a motion seeking to have the Court's order certified for interlocutory appeal.  The Court, recognizing the denial of summary judgment is not appropriate for appellate review, denied GSK's motion.  GSK then filed a motion for reconsideration of the Court's denial of interlocutory certification.  And again, the Court denied the request, explaining that its ruling was not suitable for interlocutory review.  Then, GSK moved for a writ of mandamus with the Seventh Circuit, arguing that this Court ursurped its authority in denying summary judgment, and asked for the Seventh Circuit to issue a writ of mandamus to this Court forcing it to grant summary judgment.  The Seventh Circuit rejected this petition, because "[m]andamus is appropriate to rectify a district court's usurpation or grave misuse of power, when an appeal from final judgment would be an inadequate remedy.  That standard has not been met.  A district court does not abuse its power by taking one view, rather than another, of a debatable legal issue." *In re GlaxoSmithKline, LLC*, 557 F. App'x 578, 579 (7th Cir. 2014).  This second motion for summary judgment on this very issue is, at this point, vexatious and frivolous.  It is a clear violation of Federal Rule of Civil Procedure 11(b)(1) and (b)(2).

1269 (7th Cir. 1996). "Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion." *Id.* (quoting *Keene*, 561 F. Supp. at 665). "To support a motion for reconsideration based on newly discovered evidence, the moving party must 'show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion].'" *Caisse Nationale*, 90 F.3d at 1269-70 (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.,* 324 F.2d 347, 352 (9th Cir. 1963), *cert. denied*, 377 U.S. 923 (1964)).

GSK has submitted a report by Ernst Berdt, Ph.D., a frequent economic expert for pharmaceutical companies.[10] Dr. Berdt makes generalized claims about the misfortunes that would befall brand name pharmaceutical companies if they could be liable for failing to warn after the company loses a monopoly over the drug. Dr. Berdt makes sweeping assertions about how the Court's ruling would stifle innovation and hurt patients. Putting aside the simple fact that none of these "horrors" has transpired since the Court's ruling, Dr. Berdt's opinions are, by their very nature, speculative and improper. He is simply parroting the policy arguments that GSK's attorneys raised previously—this time with *imprimatur* of an expert. The Court should

---

[10] GSK claims that the Court invited GSK "to supplement the record to establish the negative impact its ruling would have on GSK and the pharmaceutical industry more generally." Mem. at 34. GSK cites the Court's ruling, where the Court noted:

> The third and fourth considerations, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant, are closely related. Guarding against the injury alleged here, however, could be as simple as updating the warning label. There may well be something to be said for "over-warning," and the problem of inadvertently deterring consumers from talking medication that would genuinely help them. But there is nothing yet in the record here to suggest that this problem is so grave as to warrant finding that GSK owed no duty of care to Plaintiff. And GSK does not make the argument.

*Dolin*, 62 F. Supp. 3d at 715. At no time did this Court invite GSK to supplement the record about economic considerations. At best, the Court pointed out that there was no evidence in the record that "over-warn" would deter "consumers from taking medication that would geninuely help them." But, GSK has not provided evidence about over-warning. Instead, GSK has used Dr. Berdt as a mouthpiece to make the same *economic* policy arguments that GSK raised the first time around.

26

disregard this testimony in its entirety. First, in the context of a motion for reconsideration, nothing prevented GSK from obtaining Dr. Berdt's testimony the first time GSK moved for summary judgment, so it is improper for it to be considered now. *See, e.g.*, *Caisse Nationale*, 90 F.3d at 1270 (refusing to consider "new" evidence because the evidence "could have been adduced earlier.") Second, even if the Court were to consider Dr. Berdt's opinions, they are not supported by any actual evaluation or analysis—they are simply hypothetical fears about what could happen. Such unsubstantiated opinions are insufficient grounds for this Court to overturn its prior ruling.

Finally, GSK quotes a paragraph from *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 944 (6th Cir. 2014), where the court disagreed with this Court's earlier ruling. That decision, however, is not binding, and it, quite frankly, engages in the same incorrect and misplaced analysis this Court identified in its order:

> Yet to suggest that the question actually raised here is simply whether GSK may be held liable for injuries caused by a product that Mylan manufactured is incomplete and misleading. The question is whether GSK, though not the pill's manufacturer, may nevertheless be held liable for tortious conduct that was extrinsic to the manufacturing process and that contributed to Plaintiff's injury. Plaintiff has not failed to identify the "true" manufacturer of the product in question. The claim is not brought against GSK in lieu of the company that actually manufactured the pill Mr. Dolin ingested. The claim is brought against GSK because GSK—not Mylan—was actually responsible for the pill's design and warning label.

*Dolin*, 62 F. Supp. 3d at 718. Despite criticizing this Court's order, the Sixth Circuit did not even attempt to address the issues raised by the Court, i.e., the issue that is at the heart of this legal dispute. Instead, the Sixth Circuit drew a bright line rule that all claims against a drug manufacturer are products liability claims, and a drug manufacturer can only be liable under products liability if it manufactured the drug. *In re Darvocet*, 756 F.3d at 944. The Sixth Circuit never addressed how a drug manufacturer could be liable for negligence that is "extrinsic" to the

manufacturing process and, in so doing, misapprehended the fundamental reasoning of this Court's order. In truth, this Court's ruling was considered, thoughtful, and parsed several complicated legal doctrines. GSK's effort to undermine the order by citing to *In re Darvocet* should be disregarded.

## **CONCLUSION**

This motion for summary judgment is largely meritless. Instead of being forthright about the underlying testimony, GSK elected to present a single "side" of the evidence, ignoring the mountain of evidence that contradicts GSK's version of the facts. In truth, there are substantial issues of disputed fact that preclude summary judgment on all the issues raised in this motion. For the foregoing reasons, Plaintiff respectfully requests that the Court deny GSK's Motion for Summary Judgment on Plaintiff's Illinois State Law Claims.

Respectfully submitted,

Dated: September 14, 2015

By:     /s/ R. Brent Wisner
R. Brent Wisner, Esq. (*pro hac vice*)
Michael L. Baum, Esq. (*pro hac vice*)
Bijan Esfandiari, Esq. (*pro hac vice*)
Frances M. Phares, Esq. (*pro hac vice*)
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
(310) 207-3233
(310) 207-4204 (fax)

and

David E. Rapaport, Esq.
Lindsey A. Epstein, Esq.
RAPOPORT LAW OFFICES, P.C.
20 North Clark Street, Suite 3500
Chicago, IL 60602
(312) 327-9880
(312) 327-9881 (fax)

*Attorneys for Plaintiff, Wendy Dolin*

## CERTIFICATE OF SERVICE

I, R. Brent Wisner, hereby certify that on September 14, 2015, I served a copy of the foregoing **PLAINITFF'S OPPOSITION TO DEFENDANT GLAXOSMITHKLINE LLC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S ILLINOIS LAW CLAIMS** on the following counsel via electronic mail:

Todd P. Davis, Esq.
Heather Howard, Esq.
KING & SPAULDING, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
E-Mail: tdavis@kslaw.com
E-Mail: hhoward@kslaw.com

*Pro Hac Counsel for Smithkline
Beecham Corp., d/b/a/ Glaxosmithkline*

David E. Rapaport, Esq.
Lindsey A. Seeskin, Esq.
RAPOPORT LAW OFFICES
20 N. Clark Street, Suite 3500
Chicago, IL 60602
E-Mail: drapaport@rapoportlaw.com
E-Mail: lseeskin@rapoportlaw.com

*Co-Counsel for Plaintiff, Wendy Dolin*

Alan Scott Gilbert, Esq.
Melissa Angelica Economy, Esq.
SNR DENTON US, LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606
E-Mail: Alan.Gilbert@snrdenton.com
E-Mail: Melissa.Economy@snrdenton.com

*Attorneys for Glaxosmithkline*

/s/ R. Brent Wisner
R. Brent Wisner